1  D. EDWARD HAYS, #162507
ehays@marshackhays.com
2  **MARSHACK HAYS LLP**
5410 Trabuco Road, Suite 130
3  Irvine, California 92620-5749
Telephone:  (949) 333-7777
4  Facsimile:  (949) 333-7778

5  Attorneys for Defendant and Counterclaimant,
KAREN S. NAYLOR in her capacity as Chapter 7 Trustee of
6  COASTAL EMPLOYERS, INC., a California corporation

7

8          UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

10

11  In re:                           | Bankruptcy Case No.  8:07-bk-10992-RK
                                       (Jointly Administered and Substantively
12  CONSOLIDATED EMPLOYER            | Consolidated with
MANAGEMENT SOLUTIONS, INC., a        | Case No. 8:07-bk-10994-RK and
13  California corporation, COASTAL  | Case No. 8:07-bk-10995-RK)
EMPLOYERS, INC., a New York corporation,
14  and COASTAL EMPLOYERS, INC., a   | Chapter 7
California corporation,
15                                   | Adversary Case No. 8:07-ap-01105-RK
            Debtor(s).
16  ─────────────────────────────── | NOTICE OF MOTION AND MOTION FOR
                                       LEAVE TO FILE FIRST AMENDED
17  REAL TIME STAFFING, INC., a California  | COUNTERCLAIM; MEMORANDUM OF
corporation; KOOSHAREM CORPORATION, a      | POINTS AND AUTHORITIES AND
18  California corporation; NEW STAFF, INC., a  | DECLARATION OF D. EDWARD HAYS
California corporation; KT, INC., a California  | IN SUPPORT
19  corporation; PAY SERVICES, INC., a California
corporation; PBT, INC., a California corporation;  | Date:   December 1, 2009
20  D. STEPHEN SORENSEN, an individual,  | Time:  2:30 p.m.
                                       Ctrm:  5D
21
                Plaintiffs,
22  vs.

23  COASTAL EMPLOYERS, INC., a California
corporation; ROBERT J. ANDERSON, an
24  individual, and DOES 1 through 100, inclusive,

25                         Defendants.

26  ───────────────────────────────

27  AND RELATED CROSS-ACTION

28
                                 1

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 1, 2009, Karen S. Naylor in her capacity as Chapter 7 Trustee ("Trustee"), will and hereby does move the Court For Leave To File a First Amended Counterclaim ("Motion").  As set forth in the Motion, the Counterdefendants will not be prejudiced by the filing of the First Amended Complaint and the Trustee is not acting in bad faith or with dilatory motive in seeking leave.

The Motion is based on this Notice, the Memorandum of Points and Authorities, the Declarations of D. Edward Hays and Robert J. Anderson, Jr., the proposed First Amended Counterclaim, all pleadings and other materials on record in this case, and all other evidence that may be presented at or before the hearing on the Motion.

If you do not oppose the Motion, you need take no further action.  If you object to the Motion, pursuant to Local Bankruptcy Rule 9013-1(a)(7), objections must be filed with the Court no later than 14 days prior to the hearing on this Motion.  You must file your objection with the clerk of the United States Bankruptcy Court located at 411 West Fourth Street, Santa Ana, California 92701.  You must serve a copy of your objection to the Motion on the moving party's counsel at the address indicated in the upper left-hand corner of this Notice, and upon the Office of the United States Trustee located at 411 West Fourth Street, Suite 9041, Santa Ana, California 92701, as well as all counsel of record pursuant to the attached Service List.  Any failure to timely file and serve objections may result in any such objections being waived.


DATED:  November 6, 2009                    **MARSHACK HAYS LLP**


By:___/s/   D. Edward Hays_____
     D. EDWARD HAYS
     Attorneys for Defendant and Counterclaimant,
     KAREN S. NAYLOR in her capacity as Chapter
     7 Trustee of COASTAL EMPLOYERS, INC., a
     California corporation

10226v1/1005-001

## MEMORANDUM OF POINTS AND AUTHORITIES

1. **INTRODUCTION**

Defendant and Counterclaimant, Karen S. Naylor in her capacity as Chapter 7 Trustee of Coastal Employers, a California corporation ("Trustee") hereby moves the Court for leave to file a First Amended Counterclaim ("FAC"). A true and correct copy of the FAC is attached as Exhibit "3." The FAC seeks to conform the factual allegations of the pleadings to the evidence that has been discovered by the Trustee during the prosecution of this case. Importantly, the Counterdefendants will not suffer any prejudice if leave is granted, and the Trustee is not acting in bad faith or with dilatory motive in seeking to amend the pleadings in this case. The proposed FAC contains the following substantive changes:

2. **STATEMENT OF FACTS**

On April 4, 2007, Consolidated Employer Management Solutions, Inc. ("Consolidated") commenced the underlying bankruptcy case by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code. On November 14, 2007, the case was converted to one under Chapter 7 of Title 11 of the United States Code.

Plaintiff, Karen S. Naylor, is the duly appointed and acting Chapter 7 Trustee of the Consolidated bankruptcy estate (the "Estate").

On April 19, 2007, an action filed in state court by Real Time Staffing, Inc., Koosharem Corporation, New Staff, Inc., RT, Inc., PBT, Inc., D. Stephen Sorenson, and Pay Services, Inc. (collectively referred to herein as "The Select Companies") against Coastal Employers, Inc., a California corporation ("Coastal") was removed, commencing this adversary action. A true and correct copy of the original complaint, without exhibits, is attached hereto as Exhibit "1."

On July 27, 2007, Coastal filed a Counter-Claim against the Select Companies. A true and correct copy of the counterclaim, without exhibits, is attached as Exhibit "2."

During the prosecution of this case, Coastal became aware of additional facts which it supplied to the Trustee. These additional facts form the basis of substantial claims that the estate holds against the Select Companies as follows:

3

A.      Under the 2005 agreement, investigation and discovery revealed that the total actual payroll for the contract period was $161,337,334.65, which is $57,337,334.65 over the minimum $104,000,000 contracted for.  As a result, the Select Companies owe Coastal an additional $1,003,403 pursuant to the Agreement as program service fees;

B.      Also under the 2005 agreement, investigation and discovery have revealed that The Select Companies owe a total of $9,276,896.74 for the Workers' Compensation collateral fund.  To date, the Select Companies have paid only $5,980,000 for the collateral fund, leaving a balance still due of $3,296,896.74;

C.      Pursuant to all the contracts between the parties, The Select Companies withheld federal income taxes from employees' compensation, and incurred liability for California unemployment taxes. In the past, The Select Companies routinely forwarded those amounts to Debtor, who in turn paid the amounts due to the California Employment Development Department and the IRS.  In 2006, The Select Companies improperly failed to turn over these funds, or to remit them to the taxing authorities, and claims, interest and penalties have been assessed against Debtor.  As of July 31, 2009, the interest and penalties due to the California EDD have increased the amount due to $1,130,640.44;

D.      The Debtor has learned that The Select Companies routinely underestimated and under reported the classification codes for its Workers' Compensation employees, thus inducing Debtor to negotiate and accept lower fees for providing more expensive coverage.  If The Select Companies had not engaged in these misrepresentations, Debtor would have contracted for and collected an additional $2,695,000 in program fees and $2,695,000 in Workers' Compensation collateral for 2004, and additional $2,258,723 in program service fees and $7,421,517 in Workers' Compensation collateral for 2005, and an additional $1,347,191 in program service fees and an additional $4,251,042 in Workers' Compensation collateral for 2006;

If the foregoing allegations can be proven, the Trustee believes that the Estate may recover significant damages against the Select Companies.  As such, good cause exists to grant the motion and allow the Trustee to file the FAC.

4

10226v1/1005-001

A.    The Claims for Relief in the Pending Amended Counterclaim

In the current Counterclaim, there are the following claims for relief:

1.    The First Claim for Relief is for breach of contract for the 2004 agreement for additional owed and unpaid program fees.

2.    The Second Claim for Relief is for breach of contract for additional unpaid collateral for the 2004 contract. (It should be noted, however, that damages sought in this claim for relief in the Counterclaim on file were originally pled at $2,039,273.00. Those should be corrected and now have been determined by Robert J. Anderson, Jr. [hereinafter referred to as "Anderson"] to be $1,742,996.47 and reported to the Trustee).

3.    The Third Claim for Relief is for additional owed and unpaid program fees for the 2005 contract. (However, the claim is now $1,003,403.36 instead of the $993,674.00 alleged in the original Counterclaim as reported by Anderson to the Trustee).

4.    The Fourth Claim for Relief is for additional owed and unpaid collateral fees for the 2005 agreement. (Originally as plead, Coastal sought $3,624,929.00; however, the amount being sought should be corrected to $3,296,864.74 as reported by Anderson to the Trustee).

5.    For the Fifth Claim for Relief, Coastal is seeking under the 2006 Agreement, unpaid taxes required to be paid by the Counter-Defendants to Coastal pursuant to the agreement for forwarding to the respective tax authorities. In the original Counterclaim, Coastal sought damages of $1,650,078.29. (Since the filing of the original Counterclaim, Anderson has determined that the amount of the claim, still subject to proof, is at least $1,981,952.57).

B.    Proposed Additional Claims for Relief

It is clear that additional claims for relief, some of which were unknown to Anderson or the Trustee until after the original Counterclaim was filed, are available and should be pursued. These additional claims for relief which are included in the proposed Counterclaim are as follows:

1.    Sixth Claim for Relief: For Breach of Contract as to the 2006 Agreement re additional owed and unpaid program fees (as to all corporate Counter-Defendants).

2.    Seventh Claim for Relief:  For Breach of Contract as to the 2006 Agreement re additional owed and unpaid Workers Compensation collateral (as to all corporate Counter-Defendants);

3.    Eighth Claim for Relief:  For Breach of Implied Duty of Good Faith and Fair Dealing re the 2004 Agreement (as to all corporate Counter-Defendants);

4.    Ninth Claim for Relief:  For Breach of Contract as to the 2005 Agreement re additional program fees and collateral owed as a result of adjustment of blended (composite) rate (as to all corporate Counter-Defendants);

5.    Tenth Claim for Relief:  For Breach of Contract as to the 2006 Agreement re additional program fees and collateral owed as a result of adjustment of blended (composite) rate (as to all corporate Counter-Defendants);

6.    Eleventh Claim for Relief:  For Fraud and Deceit (as to all corporate Counter-Defendants, and D. Stephen Sorensen, individually);

7.    Twelfth Claim for Relief:  For Damages Associated with Fraudulent Transfers as to the 2004 Agreement, 2005 Agreement and 2006 Agreement (as to all corporate Counter-Defendants);

8.    Thirteenth Claim for Relief:  For Accounting (as to all corporate Counter-Defendants, and All Agreements);

The debtor's estate will be significantly impaired if an effort is not made to adequately pursue additional claims for relief not plead in the Counterclaim.  As more particularly stated in the declaration of Robert J. Anderson, Jr., he has uncovered wholesale misrepresentations of employee job classifications or class codes.  The Workers' Compensation job classification of the employee is a substantial factor in determining the appropriate Workers' Compensation rate required to be paid pursuant to the contract between Coastal and the Select Companies.  Anderson has within the past few months uncovered substantial misclassification resulting in millions of dollars of additional contractual liability owed by the Select Companies which Anderson has recently communicated to the Trustee's attorney.  This came to light upon review of Workers'

1    Compensation claims files which describe the activities of the employees as compared to the

2    reported job descriptions.

3    3.    ARGUMENT

4         A.    The Court Has The Authority To Grant Leave To File The First Amended Complaint

5             Rule 15(a) of the Federal Rules of Civil Procedure provides, in relevant part, that: "a party

6    may amend the party's pleading only by leave of court or by written consent of the adverse party;

7    and leave shall be freely Rule 15(a) of the Federal Rules of Civil Procedure provides, in relevant

8    part, that: "a party may amend the party's pleading only by leave of court or by written consent of

9    the adverse party; and leave shall be freely given when justice so requires."  Because Federal policy

10   strongly favors that cases be determined on their merits, leave to amend should be granted unless the

11   opposing party makes a showing of undue prejudice, or bad faith or dilatory motive on the part of

12   the moving party.  *See, Foman v. Davis* (1962) 371 U.S. 178, 182; *Martinez v. Newport Beach City*

13   (9th Cir. 1997) 125 F.3d 777, 785.

14        B.    Leave To Amend Is Appropriate In This Case

15             In this case, Defendants cannot show that they would suffer undue prejudice if the

16   amendment is allowed, or that the Trustee has acted in bad faith or with dilatory motive in seeking to

17   amend its Complaint.  The proposed FAC contains the following substantive changes:

18             (1)    In the first cause of action, the amount claimed is unchanged.

19             (2)    In the Second Cause of Action, a review of actual payroll amounts, and

20   amounts due and amounts paid for the 2004 Workers' Compensation coverage has resulted in a

21   reduced claim, from $2,039,273, to $1,742,996.47.

22             (3)    In the Third Cause of Action, for program service fees for the 2005 contract,

23   the actual increased payroll has resulted in an increased claim of $1,003,403.36, up from the initial

24   claim of $993,674.00.

25             (4)    In the Fourth Cause of Action, for Workers' Compensation collateral

26   payments, the actual payroll figures have produced a reduced claim of $3,296,896.74, down from

27   $3,624,929.00.

28

---

7

(5)    In the Fifth Cause of Action, for unpaid taxes under the 2006 contract, the amount due has been increased according to accrued interest.

(6)    The Sixth Cause of Action, for program service fees under the 2006 contract, is a new claim, for $40,314.44, because the actual payroll, $130,687,629.31, exceeded the projected minimum payroll of $128,000,000, and program fees are due on the excess.

(7)    The Seventh Cause of Action, for Workers' Compensation collateral for the 2006 contract is also a new claim, and is also based on the excess of actual over projected minimum payroll for 2006, and is a claim for $134,381.47 in Workers' Compensation costs.

(8)    The Eighth Cause of Action is for fraudulent under-classification of workers under the 2004 contract, and seeks compensation for service work that Debtor actually performed and coverage that Debtor actually obtained based on actual classifications.  The underpayment to Debtor as a result of The Select Companies' misrepresentations is $5,390,000.

(9)    The Ninth Cause of Action is for fraudulent under-classification of workers under the 2005 contract, and seeks compensation for service work that Debtor actually performed and coverage that Debtor actually obtained based on actual classifications.  The underpayment to Debtor as a result of The Select Companies' misrepresentations is $9,680,240.

(10)    The Tenth Cause of Action is for fraudulent under-classification of workers under the 2006 contract, and seeks compensation for service work that Debtor actually performed and coverage that Debtor actually obtained based on actual classifications.  The underpayment to Debtor as a result of The Select Companies' misrepresentations is $5,598,233.

C.    <u>Leave to Add or Amend a Compulsory Counterclaim is Normally Freely Granted</u>. Leave to add a compulsory counterclaim is normally freely granted so as to prevent a later plea of waiver or res judicata. [See *T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour* (5th Cir. 1980) 629 F2d 338, 370; *Unispec Develop. Corp. v. Harwood K. Smith & Partners* (D AZ 1988) 124 FRD 211, 213—"Rule 13(f) is interpreted liberally in order to settle all claims in one action"]

A compulsory Counterclaim is barred if not asserted in the pending action.  The judgment precludes a Defendant from maintaining a later action on a claim that has been omitted for failure to file a compulsory Counterclaim.  (*Publicis Communications v. True North Com-*

1      _munications, Inc._ [7th Cir. 1997] 132 F.3d 363, 365-366; _Hydranautics v. Filmtech_ [9th Cir. 1995]

2      70 F.3d 533, 536).  This rule comes into play when the defendant files a pleading that amends a

3      compulsory Counterclaim.  It may not apply in other situations where the Defendant simply files a

4      motion to dismiss or for summary judgment but does not answer.  (_Mellon Bank v. Ternisky_ [4th Cir.

5      1993] 999 F.2d 791, 795).

6              A compulsory Counterclaim occurs when the responding party at the time of

7      responding, has a claim against the Plaintiff which "arises out of the transaction or occurrence that

8      is the subject matter of the opposing party's claim" and "does not require the adding of another

9      party over whom the Court cannot acquire jurisdiction."  (FRCP 13[a][1][A], [B]; _Adam v. Jacobs_

10     [2nd Cir. 1991] 950 F.2d 89, 92; _McDaniel v. Anheuser-Busch_ [5th Cir. 1993] 987 F.2d 298, 304).

11     Therefore, the amendments to the Counterclaim like the original five claims for relief filed during

12     the Chapter 11 period, must be asserted in this action, or they may be barred. These additional

13     claims for relief as with the ones on the original counterclaim are compulsory and will be barred if

14     not pursued in the pending action.

15           D.     The Request for Leave to File an Amended Counterclaim is Timely and Filed in

16                Good Faith

17              In this instance, a Counterclaim and an answer seeking affirmative relief is already

18     on file.  Therefore, the Counter-Defendants are well aware of existing contract claims against them.

19     The five claims for relief are described and summarized above.  At the time of filing the original

20     Counterclaim by Coastal, Anderson, as more particularly set forth in his declaration, was simply

21     unaware of additional causes of action available by way of a Counterclaim.  Shortly after the filing

22     of the Counterclaim, the case was ultimately converted to a Chapter 7.   Anderson became aware of

23     additional program fees that were owed that formed the basis of the Sixth Claim for Relief in the

24     proposed amended Counterclaim for the third contract (2006 Agreement) between Coastal and the

25     entity Counter-Defendants .  Anderson subsequently informed the Trustee's attorney of these facts.

26              Although the Counter-Defendants have engaged in a pattern of obfuscation in

27     complying with the Trustee's request for discovery, enough information was obtained subsequent to

28     filing of the original Counterclaim to identify the amount of contractual monies owed pursuant to

10226v1/1005-001

the 2006 Agreement for program fees.  Likewise, in the Seventh Claim for Relief, based on

information subsequently learned after filing, Anderson learned of the additional money owed for

"collateral."  Program fees are administrative costs assessed against the entity Counter-Defendants

for services rendered by Coastal California in providing the staffing services as described more

particularly in the Counterclaim.  They are based on a percentage of payroll developed under the

contract.  Collateral costs are an agreed upon amount to cover the cost of the deductible portion of

Workers' Compensation claims that Coastal California is required to pay the carrier.  These costs

were agreed to be passed on to the Select Companies.  As with the program fees, the 2006 contract

allows for a formula multiplier to determine the amount of collateral.  It was not until after filing

the Counterclaim that Anderson was able to determine the shortfall in the collateral, as well as the

shortfall in the program fees.  Therefore, the Seventh Claim for Relief seeks the shortfall for the

owing and unpaid collateral pursuant to the 2006 Agreement.

It was not until after the Counterclaim was filed in approximately June of 2009 that

Anderson learned of wholesale fraud in misreporting employee "class codes."  Class codes are an

identification number used by the Workers' Compensation carrier and are standardized and

promulgated by the Workers' Compensation Insurance Rating Bureau, an arm of the Department of

Insurance of the State of California, to adjust pricing on a Workers' Compensation policy based on

the degree of exposure and risk associated with an employee's particular occupation.  For example,

Workers' Compensation premium on a warehouse worker is charged at a much higher rate to the

employer by the carrier than Workers' Compensation premium on a file clerk.  The contracts

between Coastal California and the entity Counter-Defendants were based on an estimated

"blended" rate which was subject to adjustment based on the actual spread of class codes.  The

Counter-Defendants obviously took advantage of the situation to conceal  higher dollar rate class

codes for the employees that Coastal California serviced under this agreement.

More importantly, the Select Companies misrepresented the class codes in the

periodic reporting that was done.  Anderson became aware of the fraud and discrepancy when he

analyzed a number of Workers' Compensation claims.  As part of the disclosure process on the

Workers' Compensation claims, the Select Companies are required to prepare a report which is

10

1　forwarded to the Workers' Compensation carrier identifying the activity of the particular injured

2　employees.  In analyzing the actual jobs these injured employees were doing and comparing them

3　to the particular class codes assigned to the customers of the Select Companies, Anderson in June

4　of 2009, completed a series of calculations and studies which revealed the substantial

5　misclassifying and misstatement of codes.  This breach of the implied duty of good faith and fair

6　dealing forms the gravamen of the Eighth Claim for Relief seeking damages for the deception

7　associated with Coastal California entering into the first contract with the Select Companies in

8　2004.

9　　　　The Ninth Claim for Relief seeks an adjustment of both the program fees and the

10　collateral owed pursuant to the 2005 Agreement based simply on the underpayment that occurred as

11　a result of the proper blended (composite) rate determined by Anderson after an arduous review of

12　the applicable class codes for the employees performed in December of 2008.  The Tenth Claim for

13　Relief simply seeks the additional program fees and collateral rate owed as a result of the

14　adjustment of the blended rate for the 2006 contract year.  The Eleventh Claim for Relief seeks

15　relief for fraud and deceit committed by the entity Counter-Defendants, as well as Counter-

16　Defendant D. Stephen Sorensen, individually.  Again, the amount and the extent of the fraud was

17　simply unknown to Anderson until he performed an analysis based on information that was not

18　completely available to him until after litigation began in June of 2009.

19　　　　The Twelfth Claim for Relief is for damages associated with fraudulent transfers.

20　Basically the entity Counter-Defendants received the benefits of the contract with Coastal California,

21　including Workers' Compensation coverage for the employees, staffing services, withholding tax

22　servicing, etc., without paying for it.  The notion that this is actually a fraudulent transfer did not

23　occur to Debtor until after this theory was developed by D. Edward Hays, the attorney for the

24　Trustee in a recent meeting with Anderson.  The Thirteenth and final Claim for Relief is simply an

25　action for an accounting which is essentially a compilation of all the claims in both the initial

26　Counterclaim on file, as well as the second Counterclaim.  An accounting of the rights and

27　obligations between the parties is in order and is simply stated as a Claim for Relief.

28

1    If this request is granted, the Trustee looks forward to working with Anderson's

2    counsel in adequately protecting the estate and pursuing the Counterclaims against the greed,

3    overreaching  and avarice of the Select defendants so that the appropriate creditors (taxing

4    authorities) will have a corpus for distribution.  Moreover, if properly pursued, the monies actually

5    owed by the Select Companies will create a substantial surplus.

6    Essentially both the original Counterclaim on file, as well as this proposed

7    Counterclaim is based on substantive state law.  Thus the issue of the statute of limitations for this

8    Counterclaim pursuant to applicable California law "relates back" to when the action was

9    commenced.  Therefore, the plaintiff's complaint *tolls the statute of limitations for the transaction*

10   *upon which the complaint is brought.*  (*Trindale v. Superior Court* [1973] 29 Cal.App. 3d 857, 859-

11   860, 106 Cal.Rptr. 48, 50).  Thus with regard to a compulsory Counterclaim such as this, the

12   "relation back" applies to Counterclaims against the plaintiff.  (*Trindale*, *supra*, 29 Cal.App.3d at

13   859-60, 106 Cal.Rptr. 49).  Therefore, this amended Counterclaim is not barred by any applicable

14   statutes of limitation.ed in Good Faith.

15   D.    The Filing of the Supplemental Counterclaim Against the Entity (Select Companies

16   Counter-Defendants) Will Not Provide Undue Prejudice to Them.

17   There is obviously already a Counterclaim on file in which the Select Companies

18   have been put on notice that there are Counterclaims against the Select entities for breaches

19   occasioned by them.  The proposed amended Counterclaim simply clarifies the amount due and

20   owing in the first five claims for relief already on file herein, and seeks seven additional claims

21   associated with the contractual relationship between the Select Companies and Coastal California.

22   At this point, there has been no Trial set, and all parties have stipulated to extend discovery.  Thus

23   there can be no prejudice whatsoever against the Select Companies with allowing these additional

24   claims for relief to go forward.

25   Moreover, the Select Companies have already been put on notice with regard to the

26   affirmative defenses and claims for set-off already on file herein.  In fact, a Counterclaim with

27   affirmative defenses denominated simply as an answer can in some instances simply be treated as a

28   Counterclaim by the Court.  *"The Court must if justice requires, treat the pleading as though it*

10226v1/1005-001

1   *were correctly designated, and may impose terms for doing so.*" (FRCP 8[c][2]).  In the case of

2   *Reiter v. Cooper* (1993) 507 U.S. 258, 262; 113 S.Ct. 1213, 1217, the Court in fact treated such an

3   affirmative defense as a Counterclaim.  Therefore, in a sense, the Counterclaim in the form of a set-

4   off is "on file" with the filing of the original Answer herein.  The issues raised by the new proposed

5   supplemental Counterclaim are already before the Court and the parties in an abbreviated format.

6   This further bolsters the argument that there is no prejudice to the entity Counter-Defendants.

7   4.      CONCLUSION

8           Based on the foregoing, Plaintiff respectfully requests that the Motion be granted in

9   its entirety and that the First Amended Complaint be deemed filed and served on the Defendants on

10  the date the order is entered granting this Motion.

11

12  DATED:  November 6, 2009                    **MARSHACK HAYS LLP**

13

14                                              By:___/s/   D. Edward Hays_____
                                                    D. EDWARD HAYS
15                                                  Attorneys for Defendant and Counterclaimant,
                                                    KAREN S. NAYLOR in her capacity as Chapter
16                                                  7 Trustee of COASTAL EMPLOYERS, INC., a
                                                    California corporation
17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF D. EDWARD HAYS

I, D. EDWARD HAYS, declare:

1.     I am an individual above the age of eighteen years of age and have personal knowledge of the facts set forth herein, and if called and sworn as a witness, I could and would competently testify thereto, except where matters are stated on information and belief, in which case I am informed and believe that the facts so stated are true and correct. I am an attorney licensed to practice in the State of California and have been admitted to practice before this Court. I am a partner in the law firm of Marshack Hays LLP.

2.     I make this declaration in support of the Trustee's Motion For Leave To File the First Amended Counterclaim attached as Exhibit "3."

3.     On Friday, October 30, 2009, I spoke with Michael Phillips, attorney for Plaintiffs and Counter-Defendants in this case. During the call, I inquired whether his clients would stipulate that the Trustee shall have leave to file a first amended counterclaim. I then explained the basis of the claims in the proposed amended counterclaim. Mr. Phillips stated that he would need to review the counterclaim before he could decide whether to enter such a stipulation. Additionally, he noted that he would prefer to wait until after the parties' November 11, 2009 mediation before making such a decision. To provide Mr. Phillips with a copy of the proposed amended counterclaim and to get a hearing set in the event that a stipulation would not be reached, the Trustee has filed this motion.

I declare under the penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on November 7, 2009 at Irvine, California.

    /s/ D. Edward Hays
D. EDWARD HAYS

10226v1/1005-001

EXHIBIT 1

# ORIGINAL

ROBERT P. GOE – State Bar No. 219977
MARC C. FORSYTHE – State Bar No. 153854
ELIZABETH A. LAROCQUE – State Bar No. 219977
**GOE & FORSYTHE, LLP**
660 Newport Center Drive, Suite 320
Newport Beach, CA 92660
rgoe@goeforlaw.com
mforsythe@goeforlaw.com
elarocque@goeforlaw.com

Telephone:    (949) 467-3780
Facsimile:    (949) 721-0409

Proposed Attorneys for Debtor and Debtor-in-Possession

FILED

APR 19 2007

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

## UNITED STATES BANKRUTPCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>CONSOLIDATED EMPLOYER MANAGEMENT SOLUTIONS, a California corporation<br><br>    Debtor and Debtor-in-Possession.<br><br>REAL TIME STAFFING, INC., a California corporation, KOOSHAREM CORPORATION, a California corporation, NEW STAFF, INC., a California corporation, RT, INC., a California corporation, PAY SERVICES, INC., a California corporation, PBT, INC. a California corporation, and D. STEPHEN SORENSEN, an individual,<br><br>    Plaintiffs,<br><br>Vs.<br><br>COASTAL EMPLOYERS, INC. a California corporation, ROBERT J. ANDERSON, an individual, and Does 1 through 100, inclusive,<br><br>    Defendants. | Case No. 8:07-bk-10992 RK<br><br>(Jointly administered with Case Nos.: 8:07-bk-10994 and 8:07-bk-10995)<br><br>Chapter 11 Proceeding<br><br>Adv. No.<br><br>**NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. § 1452** |

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. §
1452

EXHIBIT "1"

Page 15

1    **TO THE HONORABLE ROBERT N. KWAN, UNITED STATES**

2    **BANKRUPTCY JUDGE, AND INTERESTED PARTIES:**

3        PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1452, 1441 and 1446, Coastal

4    Employers, Inc., a California corporation the debtor herein (whose bankruptcy case is being

5    jointly administered under the lead case as captioned herein-above), and the defendant in the

6    above-captioned action ("Debtor"), hereby gives notice of removal of this action from the Santa

7    Barbara Superior Court to the United States Bankruptcy Court for the Central District of

8    California (Santa Ana Division) on the basis that this is a case arising under Federal law based on

9    the following facts:

10        1.      On April 6, 2007, Coastal Employers, Inc., a California Corporation ("Debtor")

11    filed a chapter 11 bankruptcy case in the United States Bankruptcy Court for the Central

12    District of California, Santa Ana Division as case number 8:07-bk-10994-RK.

13        2.      On April 10, 2007, the Court entered the Order Granting Debtor's Emergency

14    Motion for Order Authorizing Joint administration of Chapter 11 Cases.  Accordingly, Debtor's

15    case is jointly administered with the cases of Coastal Employers, Inc., a New York corporation

16    ("CENY") and Consolidated Employer Management Solutions, Inc., a California corporation

17    ("CEMS").  The jointly administered cases are captioned under the lead case number as set

18    forth in the caption-above.

19        3.      On February 5, 2007 plaintiffs in the above-captioned action filed a complaint in

20    the Santa Barbara Superior Court (located in the Central District of California), Case No.

21    1243320 entitled *REAL TIME STAFFING, INC., a California corporation, KOOSHAREM*

22    *CORPORATION, a California corporation, NEW STAFF, INC., a California corporation, RT,*

23    *INC., a California corporation, PAY SERVICES, INC., a California corporation, PBT, INC. a*

24    *California corporation, and D. STEPHEN SORENSEN, an individual, (*collectively "Plaintiffs*")*

25    *vs. COASTAL EMPLOYERS, INC. a California corporation, ROBERT J. ANDERSON, an*

26    *individual, and Does 1 through 100, inclusive* (collectively "Defendants") (the "Complaint").  A

27    copy of the complaint in that state court proceeding is attached hereto as Exhibit 1.

28    / / /

2

4.      The complaint alleges, among other things, that Debtor and its principal, Robert Anderson, fraudulently entered into a settlement agreement regarding the parties Staff Servicing-Agreements with Plaintiffs and breach of the settlement agreement.

5.      This case is a core proceeding in that the action revolves around the settlement agreement which attempted to settle disputes over fees owed to Debtor and amounts owed related to collateral securing payment on claims, and thus deals directly with the recovery of assets of the estate.

6.      Debtor wishes to exercise its rights under the provisions of 28 U.S.C. § 1452 and related provisions to remove this action from the Superior Court for the State of California, Santa Barbara.  This court has original jurisdiction pursuant to 28 U.S.C. § 1334 in that the action is a core proceeding within the meaning of 28 U.S.C. § 157 (b)(2)(A), (E) and/or (O).

7.      This Notice of Removal is signed pursuant to the provisions of Rule 11 of the Federal Rules of Civil Procedure and Rule 9011 of the Federal Rules of Bankruptcy Procedure.

8.      A copy of all pleadings, process and orders served on the Debtors and/or Defendants is being filed with this Notice of Removal and is attached hereto to <u>Exhibit 1</u>.

Wherefore, Debtor prays that this action be removed from Santa Barbara Superior Court to this Court as aforesaid.

Dated:  April 19, 2007

Respectfully submitted by:

GOE & FORSYTHE, LLP

By:_____

Robert P. Goe
Attorneys for Debtor and Debtor-in-Possession, Coast Employer, Inc., a California corporation

3

NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION FROM STATE COURT PURSUANT TO 28 U.S.C. § 1452

EXHIBIT  "1"

Page 17

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COASTAL EMPLOYERS, INC., a California corporation,
ROBERT J. ANDERSON, an individual, and Does 1 through
100, inclusive

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**
SUPERIOR COURT of CALIFORNIA
COUNTY of SANTA BARBARA

FEB 05 2007

GARY M. BLAIR, Executive Officer
BY _____
TERRI CHAVEZ, Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
REAL TIME STAFFING, INC., a California corporation,
KOOSHAREM CORPORATION, a California corporation, NEW
STAFF, INC., a California corporation, KT, INC., a
California corporation, PAY SERVICES, INC., a
California corporation, PSI, INC., a California
corporation, and D. STEPHEN SORENSEN, an individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* | **CASE NUMBER:** *(Número del Caso):* 1243320 |

Santa Barbara Superior Court
Anacapa Building
1100 Anacapa Street
Santa Barbara, CA 93101
South County

**PLAN 1**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael R. Adreani, Esq. (SBN 194991)    (818) 992-9999  (818) 992-9991
Michael H. Raichelson, Esq. (SBN 174607)    GARY M BLAIR, EXECUTIVE OFFICER
Roxborough, Pomerance & Nye, LLP
5820 Canoga Avenue, Suite 250, Woodland Hills, CA 91367
DATE:                                    Clerk, by                         , Deputy
*(Fecha)* FEB 05 2007    TERRI CHAVEZ    *(Secretaria)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [x] on behalf of *(specify):* Coastal Employers, Inc. a California Corporation

   under: [x] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)    [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*

4. [ ] by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

SUMMONS

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

02/07/2007  15:55   8056541883                    FLSS                           PAGE  02/02

02/03/2007 18:40 FAX ...

                                                                                  CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Michael H. Raichelson, Esq. (SBN 174607)<br>Michael B. Adreani, Esq. (SBN 194991)<br>Roxborough, Pomerance & Nye, LLP<br>5820 Canoga Avenue, Suite 250<br>Woodland Hills, CA 91367<br>TELEPHONE NO.: (818) 992-9999   FAX NO.: (818) 992-9991<br>ATTORNEY FOR (Name): Plaintiffs, Real Time Staffing, Inc., et al. | **FILED**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SANTA BARBARA<br><br>FEB 05 2007<br><br>GARY M. BLAIR, Executive Officer<br>BY _____ Deputy Clerk<br>TERRI CHAVEZ |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Barbara
STREET ADDRESS: Anacapa Building
MAILING ADDRESS: 1100 Anacapa Street
CITY AND ZIP CODE: Santa Barbara, CA 93101
BRANCH NAME: South County

| CASE NAME: Real Time Staffing, Inc., et al. vs.<br>Coastal Employers, Inc., et al. | |
|---|---|
| **CIVIL CASE COVER SHEET**<br>[X] Unlimited    [ ] Limited<br>(Amount          (Amount<br>demanded        demanded is<br>exceeds $25,000)  $25,000 or less) | **Complex Case Designation**<br>[ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CASE NUMBER:<br>1253320<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Insurance coverage (18) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [X] Other contract (37) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | **Real Property** | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Eminent domain/Inverse | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | condemnation (14) | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Other real property (26) | types (41) |
| [ ] Business tort/unfair business practice (07) | **Unlawful Detainer** | **Enforcement of Judgment** |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Residential (32) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Drugs (38) | [ ] RICO (27) |
| [ ] Intellectual property (19) | **Judicial Review** | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Writ of mandate (02) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [ ] is [X] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve        in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [X] monetary  b. [X] nonmonetary; declaratory or injunctive relief  c. [X] punitive

4. Number of causes of action (specify): Four (4)

5. This case [ ] is [X] is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 5, 2007

Michael H. Raichelson, Esq. (SBN 174607)                    _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet will be used for statistical purposes only.                    Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California            **CIVIL CASE COVER SHEET**            Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403
CM-010 [Rev. January 1, 2007]                                                                    www.courtinfo.ca.gov

                                                                            EXHIBIT "1"
                                                                            Page 20

02/06/2007 10:22 FAX

1  Drew E. Pomerance, State Bar No. 101239
   Michael B. Adreani, State Bar No. 194991
2  Michael H. Reichelson, State Bar No. 174607
   ROXBOROUGH, POMERANCE & NYE, LLP
3  5820 Canoga Avenue, Suite 250
   Woodland Hills, California 91367
4  Telephone: (818) 992-9999
   Facsimile:  (818) 992-9991
5
   Attorneys for Plaintiffs, REAL TIME STAFFING, INC.,
6  KOOSHAREM CORPORATION, NEW STAFF, INC.,
   KT, INC., PAY SERVICES, INC. PBT, INC., and
7  D. STEPHEN SORENSEN

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SANTA BARBARA

FEB 0 5 2007

GARY M. BLAIR, Executive Officer
BY _Terri Chavez_
TERRI CHAVEZ, Deputy Clerk

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF SANTA BARBARA

PLAN 1

10

11  REAL TIME STAFFING, INC., a California   ) Case No.    1243320
    corporation, KOOSHAREM              )
12  CORPORATION, a California corporation,  ) **COMPLAINT FOR:**
    NEW STAFF, INC., a California corporation, )
13  KT, INC., a California corporation, PAY  )  1. **FRAUD**
    SERVICES, INC., a California corporation, )  2. **BREACH OF CONTRACT**
14  PBT, INC., a California corporation, and D. )  3. **BREACH OF THE COVENANT OF**
    STEPHEN SORENSEN, an individual,     )    **GOOD FAITH AND FAIR**
15                                      )    **DEALING**
            Plaintiffs,                 )  4. **DECLARATORY RELIEF**
16                                      )
        v.                              )
17                                      )
    COASTAL EMPLOYERS, INC., a California )
18  corporation, ROBERT J. ANDERSON, an  )
    individual, and Does 1 through 100, inclusive, )
19                                      )
            Defendants.                 )
20                                      )

21

22       PLAINTIFFS REAL TIME STAFFING, INC., KOOSHAREM CORPORATION, NEW

23  STAFF, INC., KT, INC., PAY SERVICES, INC., PBT, INC. and D. STEPHEN SORENSEN

24  (hereinafter referred to collectively as either "Plaintiffs" or "Select" unless specified otherwise)

25  ALLEGE:

26  1.    KOOSHAREM CORPORATION is, and at all relevant times herein mentioned was, a

27        California corporation.

28

                                    COMPLAINT

EXHIBIT "1"
Page 21

2.     Plaintiff PBT, INC. is, and at all relevant times herein mentioned was, a California corporation.

3.     Plaintiff NEW STAFF, INC. is, and at all relevant times herein mentioned was, a California corporation.

4.     Plaintiff KT, INC. is, and at all relevant times herein mentioned was, a California corporation.

5.     Plaintiff PAY SERVICES, INC. is, and at all relevant times herein mentioned was, a California corporation.

6.     Plaintiff REAL TIME STAFFING, INC. is, and at all relevant times herein mentioned was, a California corporation.

7.     Plaintiff D. STEPHEN SORENSEN is, and at all relevant times herein mentioned was, an individual residing in Santa Barbara County, California.

8.     Plaintiffs are informed and believe and thereon allege that Defendant COASTAL EMPLOYERS, INC. is, and at all relevant times herein mentioned was, a California corporation, with an office in Brea, California and doing business in Santa Barbara County, California.

9.     Plaintiffs are informed and believe and thereon allege that Defendant COASTAL EMPLOYERS, INC.'s President is Robert J. Anderson, Jr. ("Anderson"). Plaintiffs are further informed and believe and thereon allege that Anderson is an individual residing in the State of New York, with an office in Brea, California and doing business in Santa Barbara County, California.

10.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of said DOE Defendants when ascertained. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named DOE Defendants is responsible in some manner for the occurrences herein alleged.

2

COMPLAINT

EXHIBIT "1"
Page 22

11.    Plaintiffs are informed and believe and thereon allege that at all relevant times herein
mentioned, each of the Defendants was the agent and/or employee of each of the remaining
Defendants, and in doing the things hereinafter alleged, was acting in the course and scope
of such agency and/or employment.

12.    Venue is proper in Santa Barbara County, California because Plaintiffs are, and at all
relevant times hereto were, California corporations and/or an individual with their principal
places of business or residence in Santa Barbara County, California. In addition, Defendant
Coastal Employers, Inc. is, and at all relevant times hereto was, a California corporation
doing business in Santa Barbara County, California, and Defendant Anderson is, and at all
relevant times hereto was, an individual doing business in Santa Barbara County,
California. Further, the Settlement Agreement and General Release that is at issue in this
matter specifically states that any litigation arising out of the interpretation and/or
performance of said Agreement will be venued in Santa Barbara County, California. Said
Agreement, which creates the obligations set forth herein and on which Plaintiffs bring this
action, was entered into in Santa Barbara County, California, and the place of performance
for Plaintiffs' obligations set forth in said Agreement is Santa Barbara County, California.

## FACTUAL BACKGROUND

13.    On or about June 14, 2004, May 1, 2005, and May 1, 2006, Plaintiffs and Defendants
entered into a series of written Agreements. The June 14, 2004, May 1, 2005 and May 1,
2006 written Agreements are referred to herein collectively as the "Staff Servicing
Agreements" unless specified otherwise. Prior to entering into the Staff Servicing
Agreements and during the period when the Staff Servicing Agreements were in effect,
Defendants represented to Plaintiffs that they were qualified to provide staffing services to
Select and its clients. Pursuant to the Staff Servicing Agreements, Defendants promised,
among other things, to secure workers' compensation insurance with respect to all of the
workers subject to the Staff Servicing Agreements and to continually maintain said
insurance during the period covered by the Staff Service Agreements. Securing and
maintaining workers' compensation insurance was and is a material term of the Staff

3

EXHIBIT "1"
Page 23

1.     Servicing Agreements. Without valid and lawful workers' compensation insurance, none
2.     of the temporary employees could lawfully work for Select or any of its client companies.
3.     In addition, Defendants represented to Plaintiffs in no less than one of the Staff Servicing
4.     Agreements (i.e., the May 1, 2006 Staff Servicing Agreement) that they had, in fact,
5.     secured workers' compensation insurance through insurer AIG ("AIG") and would
6.     continually maintain said insurance through AIG for Plaintiffs' benefit. Further, pursuant
7.     to the terms and conditions of the Staff Servicing Agreements, Defendants acknowledged
8.     and agreed that they would be the "employer of record" of the assigned temporary
9.     employees who were the subject of the Staff Servicing Agreements.

10. 14.     In reliance upon the representations set forth above and in consideration thereof, Plaintiffs
11.     agreed to pay Defendants substantial fees and maintain certain collateral.

### SETTLEMENT AND RELEASE AGREEMENT THAT IS THE SUBJECT OF THIS ACTION

14. 15.     In 2006, a dispute arose between Plaintiffs and Defendants concerning their rights and
15.     responsibilities under the Staff Servicing Agreements. More specifically, Plaintiffs and
16.     Defendants disputed the amount of the fees owed to Defendants pursuant to the June 14,
17.     2004 and May 1, 2005 Staff Servicing Agreements. In addition, Defendants and Plaintiffs
18.     disputed the amounts owed related to collateral securing payment on claims made under the
19.     workers' compensation insurance policy or policies obtained by Defendants pursuant to the
20.     June 14, 2004 and May 1, 2005 Staff Servicing Agreements. Finally, Plaintiffs and
21.     Defendants disputed the amounts owed related to collateral securing payment on claims
22.     made under the workers' compensation insurance policy or policies obtained by Defendants
23.     pursuant to the May 1, 2006 Staff Servicing Agreement.

24. 16.     As a result of the disputes described herein, Anderson sent a letter on or about December
25.     14, 2006 to D. Stephen Sorensen, demanding payment of millions of dollars no later than
26.     December 28, 2006 (i.e., less than two weeks notice).

27. 17.     On or about January 2, 2007, Plaintiffs and Defendants entered into a Settlement
28.     Agreement and General Release (the "Settlement Agreement"), a copy of which is attached

4

1    hereto as Exhibit "A" and incorporated into this Complaint by this reference.  Leading up

2    to the execution of the Settlement Agreement (i.e., in late 2006 and continuing into early

3    January 2007), Plaintiffs and Defendants engaged in a series of discussions.  During said

4    discussions, Plaintiffs advised Defendants that they disputed the amounts purportedly owed

5    under the Staff Servicing Agreements.  In addition, Plaintiffs repeatedly advised

6    Defendants, during their discussions, that they had originally entered into the Staff

7    Servicing Agreements, and also were engaging in a dialogue with Defendants in an effort to

8    resolve the issues amicably, because Defendants secured and were continuing to maintain

9    valid workers' compensation policies.  During these discussions, Defendants repeatedly

10    represented to Plaintiffs that they were in fact insured through AIG, and would continue to

11    maintain workers' compensation insurance through AIG for the reasonably foreseeable

12    future.

13  18.    Unbeknownst to Plaintiffs during the discussions, Defendants, in fact, knew that AIG

14    issued a cancellation letter to Defendants in December 2006.  In addition, unbeknownst to

15    Plaintiffs during the discussions, Defendants were engaged in discussions with Defendants'

16    insurance broker in an effort to explore other insurance alternatives with in an intention to

17    exclude all of the workers subject to the May 1, 2006 Staff Servicing Agreement from

18    coverage.

19  19.    If Plaintiffs knew that AIG issued a cancellation letter to Defendants in December 2006 and

20    that Defendants might not have valid workers' compensation insurance on a going forward

21    basis, Plaintiffs would not have engaged in the dialogue with Defendants leading up to the

22    execution of the Settlement Agreement and would certainly not have executed the

23    Settlement Agreement.  Defendants de facto tricked Plaintiffs into engaging in a dialogue

24    and deceived Plaintiffs into executing the Settlement Agreement.

25  20.    Paragraph 3.A. of the Settlement Agreement provides that Plaintiffs would pay Defendants

26    a total of $2,625,000 in two installments.  The first installment of $1,625,000, which was

27    paid by Plaintiffs, was due on January 2, 2007.  The second installment of $1,000,000 was

28    due on January 22, 2007.

5

21.   On or about January 20, 2007 (*i.e.*, immediately before the second installment was due), Anderson admitted to Defendants, for the first time, the following:

   a.   In December 2006, AIG issued a cancellation letter;

   b.   During late 2006, Defendants were attempting to secure bank financing to satisfy Defendants' obligations to AIG; however, their attempts were not successful; and

   c.   In early January 2007, Defendants were preparing to initiate litigation against AIG, which was going to seek a temporary restraining order against AIG, presumably to stop AIG's cancellation of the workers' compensation insurance.

22.   Plaintiffs are informed and believe and thereon allege that during the parties' discussions leading up to the execution of the Settlement Agreement, Defendants were actively engaged in secret negotiations with insurer ACE ("ACE") in an effort to secure workers' compensation insurance as a result of AIG's notice of cancellation. Plaintiffs are further informed and believe and thereon allege that during the secret negotiations with ACE, Defendants knew that ACE would not provide workers' compensation insurance for those employees subject to the May 1, 2006 Staff Servicing Agreement, and thus, Defendants would not be able to honor said Servicing Agreement. Plaintiffs are further informed and believe and thereon allege that Defendants engaged in the discussions with ACE with an intention to exclude workers subject to the May 1, 2006 Staff Servicing Agreement from coverage. Plaintiffs are further informed and believe and thereon allege that prior to January 20, 2007, Defendants surreptitiously "switched" workers' compensation insurers from AIG to ACE, and de facto intended to leave Plaintiffs "out in the cold" and without workers' compensation insurance for their temporary employees in violation of the May 1, 2006 Servicing Agreement.

23.   On January 20, 2007 (*i.e.*, two days before the second installment was due under the Settlement Agreement), Anderson on behalf of Defendants unilaterally cancelled the May 1, 2006 Servicing Agreement, in violation of the 60-day cancellation notice requirements of said Servicing Agreement. If Plaintiffs knew that Defendants intended to "switch" workers' compensation insurers, were going to leave Plaintiffs "out in the cold," were

EXHIBIT "1"
Page 26

1  frantically seeking bank financing and/or alternative insurers and/or were going to cancel

2  the May 1, 2006 Servicing Agreement without any advanced notice and contrary to the

3  terms and conditions of said Agreement, Plaintiffs would not have engaged in the dialogue

4  with Defendants leading up to the execution of the Settlement Agreement and would

5  certainly not have entered into the Settlement Agreement under those circumstances.

6  Canceling the May 1, 2006 Servicing Agreement was particularly disturbing because,

7  throughout all of Plaintiffs and Defendants' discussions leading up to the execution of the

8  Settlement Agreement, Defendants repeatedly stated that it intended to abide by all of the

9  terms and conditions of the May 1, 2006 Servicing Agreements. These representations

10  were in fact false.

11  24.  As a result of Plaintiffs' discovery of Defendants' material misrepresentations and/or

12  omissions as set forth herein, and Defendants' subsequent cancellation of the May 1, 2006

13  Servicing Agreement on or before January 20, 2007, it became clear to Plaintiffs that the

14  Settlement Agreement was procured through fraud, Defendants were anticipatorily

15  breaching the Settlement Agreement, and thus, payment of the second installment on

16  January 22, 2007 was contrary to the intention of the parties and the spirit of the Settlement

17  Agreement.

18  ## FIRST CAUSE OF ACTION

19  ### (Fraud Against All Defendants)

20  25.  Plaintiffs incorporate herein by this reference, as though fully set forth in this cause of

21  action, each and every allegation contained in Paragraphs 1 through 24, inclusive, of this

22  Complaint as if set forth herein in full.

23  26.  On or before January 2, 2007, Defendants repeatedly represented to Plaintiffs, in an effort

24  to induce Plaintiffs into executing the Settlement Agreement, the following:

25     a.  Defendants were engaging in settlement discussions with Plaintiffs in good faith;

26     b.  Defendants secured and would continue to maintain workers' compensation

27       insurance through AIG consistent with the May 1, 2006 Staff Servicing Agreement;

28       and

7

c.    Defendants would continue to abide by the terms and conditions of the May 1, 2006
Staff Servicing Agreement.

27.    Defendants representations and/or omissions as described herein were false, and, in fact,
the true facts confirm that Defendants were not engaging in settlement discussions with
Plaintiffs in good faith, Defendants failed to secure and/or maintain workers' compensation
through AIG consistent with the May 1, 2006 Staff Servicing Agreement, and Defendants
had no intention to abide by the terms and conditions of the May 1, 2006 Staff Servicing
Agreement when the parties were engaged in discussions leading up to the execution of the
Settlement Agreement. Defendants made these representations and/or omissions with an
intent to defraud Plaintiffs. Plaintiffs are informed and believe and thereon allege that
Defendants' representations and/or omissions were made with an intent to, among other
things, secure a "quick fix" payment to finance Defendants' continuing operations and/or
assist Defendants in their secret negotiations with ACE without any consideration for
Defendants' responsibilities under the Servicing Agreements and/or spirit of the parties'
dialogue leading up to the execution of the Settlement Agreement.

28.    At the time the representations and/or omissions described herein were made, at the time
Plaintiffs entered into the Settlement Agreement, and at the time that Plaintiffs rendered
performance under the Settlement Agreement via payment of the first installment, Plaintiffs
did not know that the representations were false, but believed them to be true and
reasonably relied on them to their detriment. Plaintiffs also did not know anything
regarding Defendants' omissions. Had Plaintiffs known the true facts, they would not have
entered into the Settlement Agreement and would not have performed under the Settlement
Agreement.

29.    Plaintiffs consent to the Settlement Agreement was obtained by fraud, as set forth above.
Defendants, knew or reasonably should have known, that the misrepresentations were not
true and/or should have disclosed the truth about the issues and items described herein.
Defendants made the misrepresentations or intentionally omitted material facts from the

1    parties' dialogue to persuade Plaintiffs to agree to execute the Settlement Agreement.

2    Plaintiffs reasonably relied upon the misrepresentations or lack of disclosures noted herein.

3    30.    The Settlement Agreement contains various provisions purporting to release Defendants

4    from liability regarding the June 1, 2004 Staff Servicing Agreement and the May 1, 2005

5    Staff Servicing Agreement, as well as other provisions which are onerous, unreasonable,

6    and/or unconscionable under the facts described herein.  Plaintiffs would not have entered

7    into the Settlement Agreement as written had they known the true facts.  Therefore, .

8    Plaintiffs' consent was induced by fraud.

9    31.    As a proximate result of Defendants' fraud and deceit and the facts herein alleged, Plaintiffs

10    have been damaged in a sum, the total amount of which is unknown to Plaintiffs, but will

11    be shown according to proof at time of trial.

12    32.    The acts of Defendants were willful and malicious, and were made with the intent to

13    defraud Plaintiffs, thereby entitling Plaintiffs to recover from Defendants exemplary or

14    punitive damages.

15    <u>**SECOND CAUSE OF ACTION**</u>

16    **(Breach of Contract Against All Defendants)**

17    33.    Plaintiffs incorporate herein by this reference, as though fully set forth in this cause of

18    action, each and every allegation contained in Paragraphs 1 through 32, inclusive, of this

19    Complaint as if set forth herein in full.

20    34.    On or about January 2, 2007, Plaintiffs entered into the Settlement Agreement with

21    Defendants.  In reliance on the terms of the Settlement Agreement, Plaintiffs expended

22    time, spent money and incurred obligations in order to effectuate the terms and conditions

23    of the Settlement Agreement and comply with the May 1, 2006 Staff Servicing Agreement.

24    Plaintiffs performed all that they were required to do pursuant to the terms and conditions

25    of the Settlement Agreement, except for those terms and conditions which are excused

26    because of Defendants' breach of the Settlement Agreement.  Defendants have breached

27    the Settlement Agreement in that they made material misrepresentations and/or omissions

28    leading up to the execution of the Settlement Agreement and failed to abide by the spirit of

9

EXHIBIT "1"
Page 29

1    the Settlement Agreement. In addition, Defendants represented in the Settlement

2    Agreement that the May 1, 2006 Staff Servicing Agreement remained in effect as of the

3    date of the Settlement Agreement, which is, and at all relevant times was, a material term

4    of the Settlement Agreement. Notwithstanding said representation, Defendants knew

5    before the execution of the Settlement Agreement that they had materially breached the

6    May 1, 2006 Staff Servicing Agreement in that AIG issued a letter of cancellation in

7    December 2006.

8    35.    As a proximate result of Defendants' breach of the Settlement Agreement, Plaintiffs have

9    been damaged in a sum, the total amount of which is presently unknown to them, but will

10   be shown according to proof at time of trial.

11                          **THIRD CAUSE OF ACTION**

12   **(Breach of the Covenant of Good Faith and Fair Dealing Against All Defendants)**

13   36.    Plaintiffs incorporate herein by this reference, as though fully set forth in this cause of

14   action, each and every allegation contained in Paragraphs 1 through 35, inclusive, of this

15   Complaint as if set forth herein in full.

16   37.    The covenant of good faith and fair dealing is implied by law in every agreement, including

17   the Settlement Agreement between Plaintiffs and Defendants. As a result of engaging in

18   the conduct set forth in this Complaint, Defendants have denied Plaintiffs of the benefit of

19   the Settlement Agreement and thus, breached the implied covenant of good faith and fair

20   dealing by having engaged and continuing to engage in the follow acts or omissions:

21        a.   Failing to disclose that AIG issued a cancellation letter in December 2006;

22        b.   Failing to disclose that Defendants were attempting to secure bank financing to

23             satisfy Defendants' obligations to AIG;

24        c.   Failing to disclose that Defendants were engaged in discussions with their insurance

25             broker in an effort to secure alternative workers' compensation insurance, with an

26             intention to exclude workers subject to the May 1, 2006 Staff Servicing Agreement

27             from coverage;

28

---

10

EXHIBIT "1"
Page 30

d. Failing to disclose that Defendants were preparing to initiate litigation against AIG, which was going to seek a temporary restraining order against AIG, presumably to stop AIG's cancellation of the workers' compensation insurance;

e. Wrongfully securing workers' compensation insurance through ACE without notifying Plaintiffs and/or securing workers' compensation insurance for the employees subject to the May 1, 2006 Staff Servicing Agreement;

f. Representing in the Settlement Agreement that the May 1, 2006 Staff Service Agreement was in effect when, in fact, Defendants materially breached the May 1, 2006 Staff Servicing Agreement before the execution of the Settlement Agreement; and

g. Wrongfully canceling the May 1, 2006 Staff Servicing Agreement after representing to Plaintiffs in discussions leading up to the execution of the Settlement Agreement that Defendants intended to comply in good faith with the May 1, 2006 Staff Servicing Agreement after the execution of the Settlement Agreement.

38. Plaintiffs are informed and believe and thereon allege that Defendants have committed further acts and/or omissions in violation of their duty of good faith and fair dealing. These acts are presently unknown to Plaintiffs and at such time as they may be discovered, Plaintiffs will seek leave of court to amend this Complaint.

39. As a proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in a sum, the total amount of which is presently unknown to them, but will be shown according to proof at time of trial.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief Against All Defendants)

40. Plaintiffs incorporate herein by this reference, as though fully set forth in this cause of action, each and every allegation contained in Paragraphs 1 through 39, inclusive, of this Complaint as if set forth herein in full.

///
///

11

1  41.  An actual controversy has arisen and now exists between Plaintiffs and Defendants

2      concerning their respective rights and duties under the Settlement Agreement.  Plaintiffs

3      desire a judicial determination of their rights and duties under the Settlement Agreement.

4      WHEREFORE, Plaintiff prays for judgment as follows:

5  **AS TO THE FIRST CAUSE OF ACTION:**

6  1.  For special, general and/or compensatory damages according to proof, plus interest thereon,

7      as provided by law; and

8  2.  For punitive and exemplary damages according to proof.

9  **AS TO THE SECOND CAUSE OF ACTION:**

10 3.  For special, general and/or compensatory damages according to proof, plus interest thereon,

11     as provided by law;

12 **AS TO THE THIRD CAUSE OF ACTION:**

13 4.  For special, general and/or compensatory damages according to proof, plus interest thereon,

14     as provided by law;

15 **AS TO THE FOURTH CAUSE OF ACTION:**

16 5.  For a judicial determination of Plaintiffs' rights and duties under the Settlement

17     Agreement;

18 **AS TO ALL CAUSES OF ACTION:**

19 6.  For attorney fees and costs of suit incurred herein; and

20 7.  For such other and further relief as the court may deem just and proper.

21 Dated: February 5, 2007               ROXBOROUGH, POMERANCE & NYE, LLP

22

23                               By: _____

24                                    Drew E. Pomerance, Esq.
                                     Michael B. Adreani, Esq.
25                                    Michael H. Raichelson, Esq.
                              Attorneys for Plaintiffs, REAL TIME STAFFING,
26                             INC., KOOSHAREM CORPORATION, NEW
                              STAFF, INC., KT, INC., PAY SERVICES, INC. PBT,
27                             INC., and D. STEPHEN SORENSEN

28 F:\Clients\Select\Cerata\...Pending\Complaint.Draft.01.doc

12

EXHIBIT 2



ROBERT P. GOE – State Bar No. 219977
MARC C. FORSYTHE – State Bar No. 153854
ELIZABETH A. LAROCQUE – State Bar No. 219977
**GOE & FORSYTHE, LLP**
660 Newport Center Drive, Suite 320
Newport Beach, CA 92660
rgoe@goeforlaw.com
mforsythe@goeforlaw.com
elarocque@goeforlaw.com

**ORIGINAL**

FILED

JUL 27 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

Telephone:    (949) 467-3780
Facsimile:    (949) 721-0409

Attorneys for Defendant/Counter-Claimant
Coastal Employers, Inc., a California corporation

## UNITED STATES BANKRUTPCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

In re:

CONSOLIDATED    EMPLOYER
MANAGEMENT    SOLUTIONS,    a
California corporation

   Debtor and Debtor-in-Possession.

REAL    TIME    STAFFING,    INC.,    a
California    corporation,    KOOSHAREM
CORPORATION, a California corporation,
NEW    STAFF,    INC.,    a    California
corporation,    KT,    INC.,    a    California
corporation,    PAY    SERVICES,    INC.,    a
California    corporation,    PBT,    INC.    a
California    corporation,    and    D.    STEPHEN
SORENSEN, an individual,

            Plaintiffs,

vs.

COASTAL    EMPLOYERS,    INC.    a
California    corporation,    ROBERT    J.
ANDERSON, an individual, and Does 1
through 100, inclusive,

            Defendants.

Case No. 8:07-bk-10992 RK

(Jointly administered with Case Nos.:
8:07-bk-10994  and 8:07-bk-10995)

Chapter 11 Proceeding

Adv. No. 07-01105 RK

**COUNTER-CLAIMANT
COASTAL EMPLOYERS, INC.'S
COUNTER-CLAIM**

1

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

EXHIBIT "2"
Page 33

COASTAL EMPLOYERS, INC.,
a California corporation,

          Counter-Claimant,

vs.

KOOSHAREM CORPORATION, PROFESSIONAL BUSINESS TECHNOLOGIES, INC., aka PBT, INC.; NEW STAFF, INC., K.T., INC., PAY SERVICES CORP., and REAL TIME STAFFING SERVICES, INC., and ROES I through 100, inclusive,

          Counter-Defendants.

**TO THE HONORABLE ROBERT N. KWAN, UNITED STATES BANKRUPTCY JUDGE, AND INTERESTED PARTIES:**

Counter-Claimant, Coastal Employers, Inc., by and through their attorneys, Goe & Forsythe, LLP, hereby set forth as their Counter-Claim against Counter-Defendants, Koosharem Corporation (hereinafter "Koosharem"); Professional Business Technologies, Inc., a/k/a PBT, Inc. (hereinafter "PBT"); New Staff, Inc. (hereinafter "New Staff"); K.T., Inc. (hereinafter "K.T."); Pay Services Corp (hereinafter "Pay Services"); and Real Time Staffing Services, Inc. (hereinafter "Real Time").

1.     At all times hereinafter mentioned, Coastal Employers, Inc. (hereinafter "Coastal") was and is a corporation organized under the laws of the State of California, which at all times relevant herein maintained its California office at 265 South Anita Drive, Suite 201, Orange, California 92868.

2.     At all times hereinbefore mentioned, and at the time of commencement of this action, Coastal maintains offices located at 8580 State Route 69, Oriskany, Oneida County, New York 13424.

3.     The offices which Coastal maintains and operates in Oriskany, New York serve as the headquarters for this entity and served as headquarters during all relevant times.

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

1      4.    Upon information and belief, Counter-Defendant, Koosharem, was and is a

2 corporation organized under the laws of the State of California with its principal office located

3 at 3820 State Street, Santa Barbara, California 93105.

4      5.    Upon information and belief, Counter-Defendant, PBT, was and is a corporation

5 organized under the laws of the State of California with its principal office located at 3820 State

6 Street, Santa Barbara, California 93105.

7      6.    Upon information and belief, Counter-Defendant, New Staff, was and is a

8 corporation organized under the laws of the State of California with its principal office located

9 at 3820 State Street, Santa Barbara, California 93105.

10      7.    Upon information and belief, Counter-Defendant, K.T., was and is a corporation

11 organized under the laws of the State of California with its principal office located at 3820 State

12 Street, Suite A, Santa Barbara, California 93105.

13      8.    Upon information and belief, Counter-Defendant, Pay Services, was and is a

14 corporation organized under the laws of the State of California with its principal office located

15 at 3820 State Street, Santa Barbara, California 93105.

16      9.    Upon information and belief, Counter-Defendant, Real Time, was and is a

17 corporation organized under the laws of the State of California with its principal office located

18 at 3820 State Street, Santa Barbara, California 93105.

19      10.    Upon information and belief, Counter-Defendants which are related to each other

20 acted as a "joint venture" and a single enterprise to participate in the various agreements.

21      11.    Venue and jurisdiction are proper for this Court for the same reasons venue and

22 jurisdiction are appropriate in the underlying action. This Counter-Claim stems from facts and

23 activities related to the underlying Complaint of Plaintiffs herein.

24      12.    In addition to jurisdiction being proper in this Court, jurisdiction was proper in

25 the state district where the underlying Complaint was originally filed before being removed to

26 this bankruptcy action.

27      13.    The true names and capacities whether individual(s), corporate, associate, or

28 otherwise of Counter-Defendant(s) sued herein as ROES 1 through 100, inclusive, are unknown

3

EXHIBIT "2"
Page 35

1   to Counter-Claimant who, therefore, sues said Counter-Defendants by fictitious names.

2   Counter-Claimant will amend this Counter-Claim to show the true names and capacities when

3   the same have been ascertained

4       14.    Coastal is qualified to provide staffing services to companies and sometimes is

5   also referred to as a "staffing company."

6       15.    Upon information and belief, in the context of the relationship in question,

7   Counter-Defendants are considered staffing subcontractor companies.

8       16.    Upon information and belief, Counter-Defendants are and were staffing

9   subcontracting companies and, at one time, client companies of Coastal.

10      17.    On June 14, 2004, Coastal and Counter-Defendants executed a Staff

11  Subcontracting Agreement (hereafter the "2004 Agreement"); a copy of which is attached hereto

12  as **Exhibit A**.

13      18.    Coastal provides staffing services to client companies and specifically to

14  Counter-Defendants, including, but not limited to:

15          a.  consulting assistance in obtaining, preparing and filing of all forms required

16              to be filed by client companies, including Counter-Defendants, with the

17              United States Internal Revenue Service and the United States Immigration

18              and Naturalization Service;

19          b.  consulting assistance regarding preparing withholding and payment of all

20              required federal income and related taxes to client companies, including

21              Counter-Defendants;

22          c.  consulting assistance in preparing and filing of required Form 940, 941 and

23              similar federal tax forms for client companies, including Counter-Defendants;

24          d.  consulting assistance and preparing and filing all required state and federal

25              Unemployment Insurance Reports and payments of all sums due and

26              indicated thereon to client companies, including Counter-Defendants;

27          e.  continual maintenance of the workers' compensation insurance with respect

28              to all of the workers and in connection therewith, provision to client

---

4

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

1              companies, including Counter-Defendants of certificates evidencing such

2              insurance coverage;

3          f.   consulting assistance in preparing and implementing safety programs for

4              workers on behalf of client companies, including Counter-Defendants.

5      19.      In addition to those services as provided above, Coastal also maintained

6 ownership of all payroll accounts used to pay employees of client companies including Counter-

7 Defendants, however, in an effort to create a productive environment, client companies were

8 allowed to access the payroll accounts for the issuance of payroll under all reasonable controls

9 and procedures implemented by Coastal.

10      20.      Additionally, pursuant to Section 8 of 2004 Agreement, Counter-Claimant was

11 required to provide workers' compensation coverage for the employees subcontracted by

12 Counter-Defendants. The same was provided to Counter-Defendants under Policy Number

13 WC0610040100001 (hereinafter the "2004 Policy") effective June 14, 2004 and continuing to

14 April 30, 2005 which was procured through Reinsurance Company of America, who maintained

15 offices in Oriskany, New York.

16      21.      Under the 2004 Agreement, Counter-Defendants also agreed, pursuant to Section

17 3 of said 2004 Agreement, to pay 4% of gross payroll representing a fixed payroll fee. The 2004

18 Agreement states in pertinent part:

19      ...in that Client Companies [Counter-Defendants] warrant and represent to CEI

20      [Coastal] that Client Companies [Counter-Defendants] will provide CEI [Coastal] with

21      at least $50,000,000 in gross employee earnings over the course of the year commencing

22      June 14, 2004....In such instance, Client Companies [Counter-Defendants] will be

23      entitled to recover any excess portion of the minimum program fee from the program fee

24      due for a subsequent month when and as the monthly payroll target is exceeded.

25      22.      The original invoices and estimates forwarded to Counter-Defendants on behalf

26 of Coastal and ultimately paid by Counter-Defendants were based on the referenced

27 $50,000,000 payroll figure as contained in Section 3 of 2004 Agreement.

28      23.      However, at the conclusion of the contract, it has been determined, in accordance

and pursuant to Counter-Defendants' own records, that Counter-Defendants ran a total of approximately $77,000,000 in payroll in connection with the 2004 Agreement.

24.     On or around December 14, 2006, Counter-Defendants were advised in correspondence directed to President, D. Stephen Sorensen, from Robert J. Anderson Jr. that in accordance with this provision, Counter-Defendants were required to pay an additional $362,651 to Coastal for the additional payroll in excess of the $50,000,000 agreed to pursuant to 2004 Agreement.   Attached hereto labeled as **Exhibit B** is a true and correct copy of the December 14, 2006 correspondence.

25.     Section 8 of 2004 Agreement also sets forth certain requirements of Counter-Defendants in connection with Counter-Claimant providing the same Workers Compensation Insurance previously referenced herein.  In pertinent part, the 2004 Agreement states:

> CEI [Coastal] agrees to furnish Client Companies [Counter-Defendants] with certificates of insurance indicating compliance with ten (10) days of each such request by Client Companies [Counter-Defendants].   Client Companies [Counter-Defendants] agrees to have a $500,000 per claim deductible with no aggregate limit and a Loss Fund as defined in paragraph 15.   Client Companies [Counter-Defendants] shall pay towards the loss deductible on a monthly basis, based on claims and claims expenses paid by the insurance company and/or CEI [Coastal].

26.     Section 14 of 2004 Agreement requires Counter-Defendants to pay $2,000,000 (or 4% of total annual gross employee earnings) into a Loss Fund to collateralize Counter-Defendants' obligations to Coastal.   This section also sets forth the manner in which that $2,000,000 was to be paid.   Additionally, and of importance, this provision also states in pertinent part that:

> If the cumulative total of monthly collateral payments is less than 4% of cumulative actual reported payroll, **Client Companies [Counter-Defendants] agree to pay CEI [Coastal] the additional collateral in accordance with paragraph 5 above.  CEI [Coastal] shall have the exclusive right to determine the amount of money that shall be paid to the Loss Fund by Client Companies [Counter-Defendants] to adequately**

EXHIBIT "2"
Page 38

collateralize **Client Companies' [Counter-Defendants] obligations under the Staff**
**Subcontracting Agreement.** Client Companies [Counter-Defendants] agree to pay CEI
[Coastal] the additional Loss Fund payments within five days of receiving notice of CEI
[Coastal]. The collateral obligation under this agreement is based on annual payroll of
$50,000,000 and initial submission of Client Companies [Counter-Defendants]. The
collateral requirements will be adjusted monthly above the initial amount based
proportionately on payroll and/or class code changes from the initial submission.

27.     Of importance, Section 14 additionally states:

**Client Companies [Counter-Defendants] further agree to pay losses as the claim**
**payments are made by CEI [Coastal] in addition to the collateral obligation.** These
losses will either be paid directly by the Client Companies [Counter-Defendants] or paid
by the Client Companies [Counter-Defendants] into a funding account used by the
insurance carrier or a licensed third-party administrator within ten days of invoicing for
reimbursement.

28.     Select prepaid collateral in the amount of $2,000,000 and as of mid-December,
2006, Counter-Defendants had paid an additional $660,206.66 towards Counter-Defendants'
deductible position. However, the total payments made by Coastal on behalf of Counter-
Defendants as of mid-December amounted to $4,669,480.15. Even with crediting Select with
the $2,660,206.66 that has been paid thus far, there is a short fall due of $2,039,273.49 in
connection with claims reimbursement and the Collateral Fund.

29.     On or around May 1, 2005, Coastal and Counter-Defendants executed a second
Staff Servicing Agreement (hereinafter referred to as "2005 Agreement"), a copy of which is
attached hereto as **Exhibit C**.

30.     According to the 2005 Agreement, Coastal provides staffing services to Counter-
Defendants also known as client companies, including, but not limited to:

      a.   consulting assistance in obtaining, preparing and filing of all forms required
         to be filed by client companies, including Counter-Defendants, with the
         United States Internal Revenue Service and the United States Immigration

and Naturalization Service;

    b. consulting assistance regarding preparing withholding and payment of all required federal income and related taxes to client companies, including Counter-Defendants;

    c. consulting assistance in preparing and filing of required Form 940, 941 and similar federal tax forms for client companies, including Counter-Defendants;

    d. consulting assistance and preparing and filing all required state and federal Unemployment Insurance Reports and payments of all sums due and indicated thereon to client companies, including Counter-Defendants;

    e. continual maintenance of the workers' compensation insurance with respect to all of the workers and in connection therewith, provision to client companies, including Counter-Defendants of certificates evidencing such insurance coverage;

    f. consulting assistance in preparing and implementing safety programs for workers on behalf of client companies, including Counter-Defendants.

31. In addition to those services as provided above, Coastal also maintained ownership of all payroll accounts used to pay employees of client companies including Counter-Defendants, however, in an effort to create a productive environment, Counter-Defendants were allowed to access the payroll accounts for the issuance of payroll under all reasonable controls and procedures implemented by Coastal in connection with the 2005 Agreement.

32. Under 2005 Agreement, Coastal also agreed to obtain and provide workers' compensation insurance for the employees subcontracted by Counter-Defendants.

33. Pursuant to the 2005 Agreement and in reliance thereon, Coastal provided workers' compensation coverage to Counter-Defendants under Policy Number WC1242444 (hereinafter the "2005-2006 Policy") effective April 30, 2005 and continuing until April 30, 2006 which was procured through AIG who maintains its headquarter office in New York, New York.

34.    The 2005 Agreement contains a comparable provision to that of 2004 Agreement with respect to the fixed cost the Counter-Defendants were responsible for.

35.    In pertinent part, Section 3 of 2005 Agreement states:

For purposes of calculating program fees, collateral and other costs, Client Companies [Counter-Defendants] has estimated and agree to be charged a minimum of at least $104,000,000 and workers' comp ratable payroll ("Payroll") that shall be provided CEI [Coastal] over the course of the year commencing May 1, 2005. Client Companies [Counter-Defendants] shall be charged at the rate of 7.5% of this amount of payroll, or $7.8 Million for the year, broken down as follows: 1.75% ($1,820,000) shall be a minimum program fee payable to CEI [Coastal] for providing staffing services...**should Client Companies [Counter-Defendants] surpass the original estimated minimum payroll amount, Client Companies [Counter-Defendants] agree to pay additional program fees and collateral consistent with the rates per hundred dollars of payroll stated above.** The 7.5% blended amount being charged to the Client Companies [Counter-Defendants] pursuant to this paragraph is based on Client Companies' [Counter-Defendants] original underwriting submission to CEI [Coastal].

36.    As of mid-December, 2006, it has been determined that for the 2005-2006 policy year, additional payroll has been produced beyond the agreed to minimum of $104,000,000. The payroll actually produced for this contract period is $160,781,376, or $56,781,376 in excess of what was originally estimated.

37.    Counter-Claimant concedes that Counter-Defendants made the original payments in accordance with the 2005 Agreement, however, due to the additional payroll beyond the $104,000,000 minimum, there is an additional $993,674 due and owing from Counter-Defendants to Coastal to cover the policy fixed cost. This amount was demanded from Counter-Defendants at least as early as December 14, 2006.

38.    Counter-Defendants also failed to comply with the collateral fund provision of Section 3 of the 2005 Agreement. Based upon the payroll that was produced during the contract period and according to the plain words of Section 3 as set forth above, Counter-Defendants

9

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

1    were required to forward a total of $9,244,929 for the collateral fund.  To date, Counter-

2    Defendants have forwarded only $5,980,000 in connection with the collateral fund.

3        39.    Of particular importance, on or about December 7, 2006, Counter-Claimant, via

4    President, Robert J. Anderson Jr., received its first notice of a collateral call from AIG with

5    respect to the Workers Compensation policy issued during the 2005 contract period.. Attached

6    hereto as **Exhibit D** is a true and correct copy of said e-mail attaching collateral call

7    information.

8        40.    As you will note, although the original correspondence from American

9    International Group was dated November 28, 2006, Mr. Anderson did not receive same until

10    December 7th via e-mail transmission.

11        41.    At that time, AIG made a request for $7.8 Million to be paid in full on or before

12    December 28, 2006.

13        42.    Within days, President of Coastal, Robert J. Anderson Jr., as a follow up to a

14    telephone conference, sent an e-mail to Richard Hulme and Fred Pachon, both of Select

15    Personnel Services, to inform Counter-Defendants of the collateral call that was made by AIG

16    and the fact that said call would require action on both the part of Counter-Claimant and

17    Counter-Defendants. Attached hereto as **Exhibit E** is a true and correct copy of said e-mail as

18    well as attachments forwarded at that juncture.

19        43.    Upon information and belief, President, Robert J. Anderson Jr., requested that D.

20    Stephen Sorensen participate in a conference call to discuss AIG's collateral call and the

21    subsequent ramifications of same. It was agreed that the parties would participate in a telephone

22    conference at that time.

23        44.    Upon information and belief, prior to said conversation, President, Robert J.

24    Anderson Jr. transmitted an e-mail to D. Stephen Sorensen setting forth the amounts due and

25    owing to Coastal as well as an explanation of how the numbers were arrived upon and  also

26    requesting immediate payment of all amounts due and owing.

27        45.    Counter-Defendants forwarded a reply to Counter-Claimant's request on

28    December 15, 2006. A copy of said correspondence is attached hereto as **Exhibit F**.

10

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

46.     In essence, the December 15, 2006 correspondence provided by Counter-Defendants simply rejected Counter-Claimant's analysis and offered very minimal dollars to resolve the matters despite contending that no such monies were due and owing.

47.     Upon information and belief, on or around December 17, 2006, a letter was transmitted to Counter-Defendants by Robert J. Anderson Jr., President of Counter-Claimant, further explaining Counter-Claimant's position and thus disputing Counter-Defendants' position as set forth in their December 15, 2006 correspondence. Attached hereto as **Exhibit G** is a true and correct copy of said transmission from Mr. Anderson to Counter-Defendants.

48.     In the meantime, as evidenced by Robert J. Anderson Jr.'s December 26, 2006 correspondence directed to AIG's Jim Hennessy, Coastal was making efforts to resolve the collateral and coverage issues with AIG. A copy of the letter is attached hereto as **Exhibit H**.

49.     To further evidence Counter-Claimant's attempt to rectify the current policy with AIG and the upcoming potential renewal with AIG, as evidenced by the December 21, 2006 correspondence from Ronald Askew, Counter-Claimant was exploring outside options in an attempt to comply with the collateral call made by AIG. A copy of said letter is attached hereto as **Exhibit I**.

50.     In the midst of Counter-Claimant's conversations with AIG, a settlement was thought to have been reached with Counter-Defendants with respect to the controversy set forth herein.

51.     A Confidential Settlement Agreement and General Release (hereinafter "Settlement Agreement") was entered into between Counter-Defendants and Counter-Claimant on or around January 2, 2007. A copy of said agreement is attached hereto as **Exhibit J**.

52.     Counter-Claimant continued to dispute AIG's position as set forth in Mr. Anderson's January 11, 2007 correspondence to AIG's James Hennessy.

53.     Upon information and belief, in the midst of settlement negotiations which Counter-Claimant believed would be fruitful, AIG forwarded a cancellation notice with respect to the 2006-2007 policy period dated January 18, 2007. A copy is attached hereto as **Exhibit K**.

54.     Upon information and belief, even despite having received said notice, Counter-

11

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

1   Claimant continued to make efforts to salvage the relationship with AIG to no avail. AIG's

2   collateral requirements were simply impossible for Counter-Claimant to fulfill.

3       55.    Upon information and belief, in light of the difficulties that Counter-Claimant

4   was experiencing with AIG, Counter-Claimant made a proactive decision on or around January

5   10, 2007 to at least seek other workers' compensation insurance quotes for the Coastal business.

6       56.    On or around January 11, 2007, at which point it became crystal clear that the

7   relationship between AIG and Counter-Claimant could not be preserved, Counter-Claimant

8   authorized the drafting of a Temporary Restraining Order (hereinafter "TRO") to be filed

9   against AIG requesting that the Court restrain AIG from canceling the policy in question.

10      57.    Upon information and belief, the required statutory notice was provided to AIG

11  of the filing of the TRO and at that juncture AIG requested additional time to resolve the matter.

12      58.    When negotiations once again stalled and eventually failed, Counter-Claimant

13  made an executive decision to seek workers' compensation coverage through ACE American

14  Insurance Company (hereinafter "ACE") rather than AIG. Further, it was determined that the

15  TRO would be a less than fruitful avenue to pursue at that juncture in light of the ACE quote

16  that existed. There was a 50% chance that the court would not issue the requested TRO which

17  would leave Coastal's employees without insurance coverage and Coastal's clients without the

18  much needed labor provided by Coastal. Simply put, the replacement coverage offered by ACE

19  was a sure thing and AIG was not.

20      59.    Upon information and belief, an unfortunate element of the ACE policy is that

21  Counter-Claimant was unable to include the business produced by Counter-Defendants within

22  the ACE quote, primarily due to the fact that Counter-Defendants were obviously not willing to

23  properly remit payment within the terms of the previous contracts.

24      60.    Upon information and belief, upon gaining the knowledge that Counter-Claimant

25  would switch carriers and that the Counter-Defendants' business would no longer be included,

26  Counter-Claimant attempted to contact Counter-Defendants immediately to no avail.

27      61.    Of particular importance, Section 3 of the Settlement Agreement, states that: "In

28  resolution of the above-described claims by Coastal against Select for obligations or its claims

1  as described above, Select will pay Coastal the sum of $2,625,000 payable as follows:  by

2  electronic wire transfer and no later than 4:00 p.m. on January 2, 2007.  $1,625,000.  The

3  remaining $1,000,000 is payable by 4:00 p.m. on January 22, 2007."

4      62.    Upon information and belief, Counter-Defendants complied with the first transfer

5  deadline.

6      63.    Upon information and belief, in light of subsequent developments and Counter-

7  Defendants' interpretation of the same, Counter-Defendants refuse to pay the remaining

8  $1,000,000 they agreed to pay pursuant to the Settlement Agreement.

9      64.    Pursuant to Section 4(b) of the Settlement Agreement, "should Select fail to issue

10 the second payment after three (3) days' written notice to cure, Coastal at its option may retain

11 the first payment and declare null and void its release and waiver of its claims against Select

12 related to the disputes described in subparagraphs 2(a) and 2(b) above, and bring claim against

13 and seek further monies owed by Select, giving Select credit for the receipt of the first payment.

14 In such an event, Select shall not be permitted to assert the agreement as a bar or defense against

15 such claims.

16     65.    On or around January 23, 2007, then attorneys for Coastal, the law firm of

17 Petrone & Petrone, P.C., forwarded to Counter-Defendants a 3-day Notice to Cure in accordance

18 with the Settlement Agreement.  To date, Counter-Claimant has yet to receive the remaining

19 monies due and owing under the Settlement Agreement and thus the same has been deemed null

20 and void by Counter-Claimant.  A copy of the 3-day Notice to Cure served upon D. Stephen

21 Sorenson via certified mail on January 23, 2007 is attached hereto as **Exhibit L,** and a copy of

22 the correspondence deeming the Settlement Agreement null and void is attached hereto as

23 **Exhibit M**.

24     66.    Upon information and belief, despite Counter-Claimant's many notices of

25 Counter-Defendants delinquencies, the only attempt to resolve the matters are reflected in

26 Settlement Agreement. Based upon Counter-Defendants' breach of said Settlement Agreement,

27 Counter-Claimant is now entitled to seek recovery for all damages in connection with the

28 circumstances which give rise to the underlying disputes.  However, Counter-Claimant

EXHIBIT "2"
Page 45

acknowledges that the one payment made under the Settlement Agreement will serve as an offset to the total amounts due and owing pursuant to the contracts which form the basis for the breaches in question.

## AS AND FOR A FIRST CLAIM FOR RELIEF

## FOR BREACH OF CONTRACT

67.     Counter-Claimant repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1-66 above with the same force and effect as if fully set forth hereafter.

68.     Since the inception of the 2004 Agreement, Coastal has complied with the terms of the 2004 Agreement.

69.     Counter-Defendants were required to pay program fee charges to Coastal in connection with the business in question.

70.     Specifically, Section 3 of the 2004 Agreement requires the Counter-Defendants to be charged and pay a program fee of 4% of the total gross employee earnings for each calendar month to induce Counter-Claimant into providing staff subcontracting services. The same 4% was to be honored when and if the payroll exceeded $50,000,000.

71.     Counter-Defendants paid the necessary fees up to the $50,000,000 worth of payroll.

72.     Upon information and belief, the payroll produced in connection with 2004 Agreement was approximately $77,000,000.

73.     Counter-Defendants have failed to pay all of the additional monies due and owing to Counter-Claimant as fees as a result of payroll coming in over $50,000,000 in connection with the 2004 Agreement.

74.     Beginning in or around December, 2006, several requests were made of Counter-Defendants to forward the fees in connection with the 2004 Agreement.

75.     As a result of those correspondence and subsequent negotiations, a Settlement Agreement was entered into which covered the fees in question.

76.     Pursuant to said Settlement Agreement, Counter-Defendants were required to forward two separate payments in full satisfaction of any outstanding dispute with respect to the

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

2004 Agreement and 2005 Agreement.

77.     Upon information and belief, Counter-Defendants forwarded the first payment of $1,625,000 in a timely fashion. Pursuant to the Settlement Agreement, this amount will serve as a credit toward Counter-Defendants' outstanding debt to Counter-Claimant.

78.     Counter-Defendants have failed to forward the second installment of $1,000,000.

79.     As a result of said default, Counter-Claimant's then counsel forwarded a 3-day Notice to Cure to Counter-Defendants in an attempt to remedy the default. To date, Counter-Defendants have yet to forward the $1,000,000 in accordance with said contract.

80.     Up to and including the time of Counter-Defendants' refusal to pay the outstanding obligation, Coastal complied with all obligations under the 2004 Agreement.

81.     By reason of the foregoing, Coastal has been and will continue to be damaged in the amount of $362,651.

**AS AND FOR A SECOND CLAIM FOR RELIEF**

**FOR BREACH OF CONTRACT**

82.     Counter-Claimant repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1-81 above with the same force and effect as if fully set forth hereafter.

83.     According to Section 14 of the 2004 Agreement, Counter-Defendants were required to pay $2,000,000 into a Loss Fund to collateralize Counter-Defendants' obligations.

84.     Counter-Defendants remitted the $2,000,000 in six equal installments.

85.     Since that time, additional losses have accrued with respect to the 2004-2005 contract period.

86.     Counter-Defendants have forwarded additional monies to satisfy some claim reimbursements in the total of $660,206.66.

87.     Since that time, additional claims have been paid by Coastal in the amount of $2,039,273.

88.     Upon information and belief, beginning in December, 2006 and continuing up until the present, Counter-Claimant has made several requests for Counter-Defendants to forward the remaining claim/collateral monies.

15

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

89. Based upon said negotiations, a Settlement Agreement was entered into between the parties on or around January 2, 2007.

90. Pursuant to said Settlement Agreement, Counter-Defendants were required to make two separate payments in full satisfaction of this as well as other debts.

91. Counter-Defendants made the first payment in a timely fashion. Pursuant to the Settlement Agreement, this amount will serve as a credit toward Counter-Defendants' outstanding debt to Counter-Claimant.

92. Counter-Defendants have failed to adhere to the requirements of the Settlement Agreement by failing to forward the second payment amounting to $1,000,000.

93. Since having defaulted, this office has contacted Counter-Defendants and served a 3-day Notice to Cure requesting immediate payment of the $1,000,000.

94. Upon information and belief, to date, Counter-Defendants have failed to pay the remaining $1,000,000 to Counter-Claimant.

95. The Settlement Agreement is now null and void as set forth in Counter-Claimant's January 23, 2007 correspondence. Counter-Claimant had the right to exercise said option when and if Counter-Defendants chose to default on the second payment requirement pursuant to Section 3 of the Settlement Agreement.

96. To date, Coastal has neither received the additional monies requested for the claim/collateral fund nor have they received the second payment as set forth in the Settlement Agreement.

97. Up to and including the time of Counter-Defendants' refusal to pay the outstanding monies to the collateral fund, claims reimbursements and/or the second payment as required by the Settlement Agreement, Coastal has complied with all obligations under the 2005 Agreement.

98. By reason of the foregoing, Coastal has been and will continue to be damaged in the amount of $2,039,273.

99. Coastal requests that the remaining monies requested in connection with the collateral fund and claims reimbursements be required to be paid immediately.

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

EXHIBIT "2"
Page 48

## AS AND FOR A THIRD CLAIM FOR RELIEF

## FOR BREACH OF CONTRACT

100. Counter-Claimant repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1-99 above with the same force and effect as if fully set forth hereafter.

101. Since the inception of the 2005 Agreement, Coastal has complied with the terms of the 2004 Agreement.

102. Counter-Defendants were required to pay program fee charges to Coastal in connection with the business in question.

103. In pertinent part, Section 3 of 2005 Agreement states:

For purposes of calculating program fees, collateral and other costs, Client Companies [Counter-Defendants] has estimated and agree to be charged a minimum of at least $104,000,000 and workers' comp ratable payroll ("Payroll") that shall be provided CEI [Coastal] over the course of the year commencing May 1, 2005. Client Companies [Counter-Defendants] shall be charged at the rate of 7.5% of this amount of payroll, or $7.8 Million for the year, broken down as follows: 1.75% ($1,820,000) shall be a minimum program fee payable to CEI [Coastal] for providing staffing services...**should Client Companies [Counter-Defendants] surpass the original estimated minimum payroll amount, Client Companies [Counter-Defendants] agree to pay additional program fees and collateral consistent with the rates per hundred dollars of payroll stated above.** The 7.5% blended amount being charged to the Client Companies [Counter-Defendants] pursuant to this paragraph is based on a Client Companies' [Counter-Defendants] original underwriting submission to CEI [Coastal].

104. Counter-Defendants paid the necessary fees up to cover $104,000,000. worth of payroll.

105. Upon information and belief, Counter-Defendants have failed to pay the additional monies due and owing to Counter-Claimant as fees as a result of payroll coming in over $104,000,000.

106. Based upon the $160,781,376 of payroll produced in connection with the 2005

EXHIBIT "2"
Page 49

Agreement, Counter-Defendants owes Coastal an additional $993,674 to cover the agreed upon fees.

107.   Beginning in or around December, 2006, several requests were made of Counter-Defendants to forward the fees in connection with the 2005 Agreement.

108.   As a result of those correspondence and subsequent negotiations, a Settlement Agreement was entered into which covered the fees in question.

109.   Pursuant to said Settlement Agreement, Counter-Defendants were required to forward two separate payments in full satisfaction of any outstanding dispute with respect to the 2004 Agreement and 2005 Agreement.

110.   Upon information and belief, Counter-Defendants forwarded the first payment of $1,625,000 in a timely fashion. Pursuant to the Settlement Agreement, this amount will serve as a credit toward Counter-Defendants' total outstanding debt to Counter-Claimant.

111.   Counter-Defendants have failed to forward the second installment of $1,000,000.

112.   As a result of said default, Counter-Claimant's counsel forwarded a 3-day Notice to Cure to Counter-Defendants in an attempt to remedy the default.   To date, Counter-Defendants have yet to forward the remaining $1,000,000 in accordance with said contract.

113.   Up to and including the time of Counter-Defendants' refusal to pay the outstanding obligation, Coastal complied with all obligations under the 2005 Agreement.

114.   By reason of the foregoing, Coastal has been and will continue to be damaged in the amount of $993,674.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

## FOR BREACH OF CONTRACT

115.   Counter-Claimant repeats, reiterates and re-alleges each and every allegation set forth in paragraphs 1-114 above with the same force and effect as if fully set forth hereafter.

116.   Counter-Defendants also failed to comply with the collateral fund provision of Section 3 of the 2005 Agreement. Based upon the payroll that was produced during the contract period and according to the plain words of Section 3 as set forth above, Counter-Defendants were required to forward a total of $9,244,929 for the collateral fund.

117.  To date, Counter-Defendants have forwarded only $5,980,000 in connection with the collateral fund

118.  Upon information and belief, beginning in December, 2006 and continuing up until the present, Counter-Claimant has made several requests for Counter-Defendants to forward the remaining collateral monies in connection with the 2005 Agreement.

119.  Based upon said negotiations, a Settlement Agreement was entered into between the parties on or around January 2, 2007.

120.  Pursuant to said Settlement Agreement, Counter-Defendants were required to make two separate payments in full satisfaction of this as well as other debts in question.

121.  Counter-Defendants made the first payment in a timely fashion. Pursuant to the Settlement Agreement, this amount will serve as a credit toward Counter-Defendants' outstanding debt to Counter-Claimant.

122.  Counter-Defendants have failed to adhere to the requirements of the Settlement Agreement and failed to forward the second payment amounting to $1,000,000.

123.  Since having defaulted, this office has contacted Counter-Defendants and served a 3-day Notice to Cure requesting immediate payment of the $1,000,000.

124.  Upon information and belief, to date, Counter-Defendants have failed to pay the remaining $1,000,000 to Counter-Claimant.

125.  The Settlement Agreement is now null and void based upon Counter-Claimant's January 23, 2007 correspondence. Counter-Claimant had the right to exercise said option when and if Counter-Defendants chose to default on the second payment requirement.

126.  To date, Coastal has neither received the additional monies requested for the claim/collateral fund nor have they received the second payment as set forth in the Settlement Agreement.

127.  Up to and including the time of Counter-Defendants' refusal to pay the outstanding monies to the collateral fund and/or the second payment as required by the Settlement Agreement, Coastal has complied with all obligations under the 2005 Agreement.

128.  By reason of the foregoing, Coastal has been and will continue to be damaged in

1    the amount of $3,624,929.

2    129.    Coastal requests that the remaining monies requested in connection with the
3    collateral fund be required to be paid immediately.

4    ### AS AND FOR A FIFTH CLAIM FOR RELIEF
5    ### FOR BREACH OF CONTRACT

6    130.    Counter-Claimant repeats, reiterates and re-alleges each and every allegation set
7    forth in paragraphs 1-129 above with the same force and effect as if fully set forth hereafter.

8    131.    On or around May 1, 2006, Coastal and Counter-Defendants executed a third
9    consecutive Staffing Servicing Agreement (hereinafter referred to as "2006 Agreement"), a copy
10   of which is attached hereto as **Exhibit N**. According to the 2006 Agreement, Coastal provided
11   staffing services to Counter-Defendants also known as client companies, including, but not
12   limited to:

   a.  consulting assistance in obtaining, preparing and filing of all forms required
13       to be filed by client companies, including Counter-Defendants, with the
14       United States Internal Revenue Service and the United States Immigration
15       and Naturalization Service;

16   b.  consulting assistance regarding preparing withholding and payment of all
17       required federal income and related taxes to client companies, including
18       Counter-Defendants;

19   c.  consulting assistance in preparing and filing of required Form 940, 941 and
20       similar federal tax forms for client companies, including Counter-
21       Defendants;

22   d.  consulting assistance and preparing and filing all required state and federal
23       Unemployment Insurance Reports and payments of all sums due and
24       indicated thereon to client companies, including Counter-Defendants;

25   e.  continual maintenance of the workers' compensation insurance with respect
26       to all of the workers and in connection therewith, provision to client
27       companies, including Counter-Defendants of certificates evidencing such
     insurance coverage;
28

1        f.   consulting assistance in preparing and implementing safety programs for

2             workers on behalf of client companies, including Counter-Defendants.

3       132.   In addition to those services as provided above, Coastal also maintained

4   ownership of all payroll accounts used to pay employees of Counter-Defendants, however, in an

5   effort to create a productive environment, Counter-Defendants were allowed to access the

6   payroll accounts for the issuance of payroll under all reasonable controls and procedures

7   implemented by Coastal in connection with the 2006 Agreement.

8       133.   Under the 2006 Agreement, Coastal also agreed to obtain and provide workers'

9   compensation insurance for the employees subcontracted by Counter-Defendants.

10       134.   Pursuant to the Section 1(i) of the 2006 Agreement Counter-Defendants, were

11   required to do the following:

12       …immediately segregate and pay to all responsible taxing and other government

13       authorities all payroll taxes, Social Security taxes, federal and state withholding taxes,

14       EDD and SDI payments, and all other such payments withheld from and employees'

15       paycheck on behalf of CEI [Coastal] with regard to all employees covered under this

16       agreement contemporaneously with issuing the paychecks to the employees, except

17       where the parties might otherwise agree from time to time.  The client companies

18       [Counter-Defendants] will provide immediate assessable verification under procedures

19       to be established by CEI [Coastal] to verify funding of payroll in the payroll account, as

20       well as funding of payment of all such payroll withholding taxes and other payroll

21       deductions described above.

22       135.   Counter-Defendants always calculated the taxes due and owing and forwarded

23   that information along to plaintiff but instead of paying those taxes directly, it was agreed by all

24   that the monies to satisfy the tax liabilities would be forwarded to Coastal for Coastal to then

25   pay in a timely fashion.  Attached hereto as **Exhibit O** are true and correct copies of some

26   samples of emails and bank statements that establish that this was the practice that was adopted

27   and utilized up until January 2007.  It should be noted that due to the voluminous nature of the

28   documents in question, we have attached documents only from July 2006 until January 2007.

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

EXHIBIT "2"

136.    As more particularly set forth in the Claims of Relief 1-4 above, in late 2006, disputes began to arise between Counter-Claimant and Counter-Defendants over the 2004 and 2005 Agreements described above.

137.    As indicated in a correspondence dated on or around January 20, 2007, directed to Mr. Sorenson from Mr. Anderson, Coastal however agreed to continue the relationship between the parties for a limited ten day window of time.. By so doing, Counter-Claimant was attempting to make Counter-Defendants' transition as smooth as possible. By virtue of Mr. Anderson's January 20, 2007 correspondence, Counter-Defendants were advised that the Workers' Compensation coverage in question as well as the relationship between Counter-Claimant and Counter-Defendants would be terminated as of January 28, 2007. A copy of January 20, 2007 correspondence is attached hereto as **Exhibit P.**

138.    Upon gaining the knowledge that Counter-Claimant would switch carriers and the Counter-Defendants' business could no longer be included, Counter-Claimant attempted to contact Counter-Defendants immediately to no avail.

139.    On or around January 29, 2007, pursuant to Counter-Defendants' obligation as set forth in Section 1(i) of the 2006 Agreement, a payment of approximately $55,000 became due and owing to the Employment Development Department (hereinafter "EDD") for employee withholding taxes for the weekly payroll period ending January 26, 2007.

140.    Further, pursuant to Section 1(i) of the 2006 Agreement, a separate payment of approximately $660,000  became due to the Internal Revenue Service (hereinafter "IRS") around January 29, 2007 for employee withholding taxes and employer contributions to Social Security and Medicare for the weekly payroll period ending January 26, 2007.

141.    On or around January 29, 2006, Counter-Claimant was advised that Counter-Defendants had failed to forward the monies to Coastal so that Coastal could in turn make the EDD and IRS payments for the weekly payroll period ending January 26, 2007 as stated in the previous two paragraphs above.

142.    On or around January 31, 2007, pursuant to Counter-Defendants' obligation as set forth in Section 1(i) of the 2006 Agreement, a payment of $768,515.03 became due and

1  owing to the Employment Development Department (hereinafter "EDD") for state

2  unemployment taxes from the period of October 1, 2006 to December 31, 2006. Because this

3  payment was not made timely, a penalty has been assessed and interest has been applied by the

4  EDD. Counter-Claimant is informed and does believe that the original tax plus interest and

5  penalty is calculated to be $814,350.03 as of March 8, 2007. Daily interest of $179 will

6  continue to accrue until the debt is satisfied.

7      143.   Further,  pursuant to Section 1(i) of the 2006 Agreement, for the period of

8  October 1, 2006 to December 31, 2006 a separate payment of $175,725.26 became due to the

9  Internal Revenue Service (hereinafter "IRS") around January 31, 2007 for federal

10  unemployment taxes. Counter-Claimant has not been informed of the penalty and interest

11  applied to this outstanding amount, but believes it to be in excess of $20,000.

12      144.   On or around January 30, 2007, Counter-Claimant was advised that Counter-

13  Defendants had failed to forward the monies to Coastal so that Coastal could in turn make the

14  unemployment tax payments to the EDD and IRS as stated in the previous two paragraphs

15  above.

16      145.   Upon being informed of Counter-Defendants' delinquency, Counter-Claimant's

17  Accounting Department made several requests of Counter-Defendants that the outstanding

18  monies being held by Counter-Defendants for both the EDD and IRS unemployment taxes be

19  paid immediately.

20      146.   When the efforts of the Accounting Department failed, on or around January 31,

21  further conversations took place between both the President of Coastal, Robert J. Anderson, Jr.,

22  and the President of Counter-Defendants, D. Stephen Sorensen, as well as legal counsel for

23  both.

24      147.   Despite best efforts on Counter-Claimant's part, the negotiations were not

25  fruitful.

26      148.   As a follow up to said negotiations, New York attorney John Petrone

27  representing Coastal directed a letter to Counter-Defendants, dated February 2, 2007, making

28  one final request prior to going to the EDD and the IRS themselves requesting that Counter-

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

EXHIBIT "2"
Page 55

1   Defendants make payment in full to these taxing authorities.  A copy of said February 2, 2007

2   correspondence is attached hereto as **Exhibit Q.**

3         149.   Said payments were not made.

4         150.   On or about February 2, 2007, President of Coastal, Robert J. Anderson, Jr., met

5   with Agent William Hassis, an IRS representative, to discuss the outstanding withholdings due

6   and owing.  At that juncture, he explained the circumstances surrounding the outstanding

7   monies and agreed to provide Agent Hassis with follow up information requested in writing.

8         151.   On that same date, Anderson also spoke with, Kathleen Dunne a representative

9   of the EDD and discussed the circumstances surrounding the lack of payment of the taxes due

10   and owing and agreed to provide Ms. Dunne further information requested in writing as well as

11   a copy of the 2006 agreement.

12         152.   On February 5, 2007, Anderson drafted a correspondence to Agent Hassis at the

13   IRS further detailing the situation and requesting the IRS' assistance in resolving this matter

14   with Counter-Defendants.   A copy of correspondence is attached hereto as **Exhibit R.**

15         153.   On or about February 2, 2007, Anderson sent a separate letter to Kathleen Dunne

16   at the EDD further setting out the dispute and requesting the EDD's assistance in seeking

17   payment from Counter-Defendants.   A copy of said correspondence is attached hereto as

18   **Exhibit S.**

19         154.   For approximately one month, there was a lack of communication between

20   Coastal or any of its officers, agents or employees and the EDD or the IRS.

21         155.   During that time, Coastal remained hopeful that Counter-Defendants planned to

22   do the right thing and pay the monies as required by the 2006 Agreement.

23         156.   It is essential to note, that upon information and belief some of the monies that

24   have been maintained by Counter-Defendants are considered trust fund monies, that is monies

25   that were collected from employees solely for the purpose of paying withholding tax.

26         157.   On or around March 7, 2007, Robert J. Anderson, Jr., President of Coastal,

27   received a phone call from EDD's Kathleen Dunne. Ms. Dunne explained that the tax liability

28   regarding the Coastal account had yet to be paid.  The total amount due and owing at that time is

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

1   $814,353.03 with approximately $179.00 in interest accruing per day while the debt goes

2   unpaid.  Ms. Dunn at the EDD demanded that payment of this amount be made on or before

3   March 21, 2007 in order to avoid Coastal being considered in breach of their previous separate

4   installment agreement.

5       158.    The monies that are due and owing to the EDD, $814,353.03 and approximately

6   $55,000, together with interest, accrued and became due and payable prior to AIG's cancellation

7   of the policy in question.

8       159.    Counter-Defendants took responsibility for calculating and paying through to

9   Coastal  the  tax  liabilities  associated  with  the  employees  withholdings  and  employer

10  contributions.   Counter-Defendants also generated all of the payroll checks on their payroll

11  equipment that resulted in the said tax liabilities.  Counter-Defendant submitted a report to

12  Coastal for the period from October 1, 2006 through December 31, 2006, admitting that the tax

13  liability had been incurred.  Said report is attached hereto as **Exhibit T**.

14      160.    Counter-Defendants have since refused to submit wage data that is stored in their

15  payroll system for the weekly payroll period ending January 26, 2007, making it impossible for

16  Coastal to accurately calculate the exact tax liability for that period.  Instead Coastal has had to

17  estimate same based upon the prior six weeks worth of payroll figures.

18      161.    All of the tax liabilities set forth herein, accrued before the January 28th, 2007

19  contract termination date.

20      162.    Counter-Claimant fully performed all activities and actions required under its

21  part pursuant to the Contract, with the exception of providing a 60-Day Notice of Termination

22  pursuant to the terms of the 2006 Contract.  Counter-Claimant was excused from performing the

23  60-Day Notice of Termination of the Contract because of the inability beyond Counter-

24  Claimant's control to include the Select companies' books of business within the replacement

25  ACE policy.  Further, Counter-Claimants were excused from providing the 60-Day Notice of

26  Termination because of Counter-Defendants' anticipatory breach and indication that they were

27  not bound by the terms of the plain language of the Contract to pay the costs of the amount of

28  staffing services used, which by January 2007 had exceeded the Select companies' estimated

25

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

1 | allotment.

2 | 163.    As a result of the conduct of the Counter-Defendants, Counter-Claimant has

3 | suffered damages of $814,353.03 for EDD monies owing and due, and approximately

4 | $55,000.00 in interest from approximately March 1, 2007, and continuing.  In addition, Counter-

5 | Defendants owe Counter-Claimant a separate amount of $175,725.26 for federal unemployment

6 | taxes due to the IRS for the period of October 1, 2006, through December 31, 2006, and

7 | penalties and interest in the excess of $20,000.00 as of March 1, 2007.  Further, Counter-

8 | Claimant is owed approximately $660,000.00 due to the IRS for employee taxes and

9 | employer contributions to Social Security and MediCare, for the payroll ending January 26,

10 | 2007, plus interest and penalties according to proof.

11 | 164.    Therefore, the total of principal owed for all withholding taxes and

12 | unemployment insurance and other employee mandated state and federal withholding is

13 | $1,650,078.29, plus interest and penalties which are ongoing according to proof.  Therefore,

14 | Counter-Claimant has been damaged in the amount of $1,650,078.29 in principal state and

15 | federal tax liability.  The exact number, however, is unknown to Counter-Claimant, and these

16 | are preliminary estimates.  Counter-Claimant has been damaged according to proof.  In addition,

17 | Counter-Claimant has been damaged for interest and penalties according to proof for the failure

18 | of Counter-Defendants to pay monies to federal and state taxing authorities required under the

19 | Contract.

20 | 165.    All tax liabilities set forth herein (except for penalties and interest according to

21 | proof) occurred before the January 28, 2007, Contract termination date.

22 |

23 | WHEREFORE, Counter-Claimant, Coastal Employers, Inc., prays for a judgment

24 | against Counter-Defendants, Koosharem Corporation, PBT, Inc., New Staff, Inc., K.T., Inc., Pay

25 | Services Corp and Real Time Staffing Services, Inc., as follows:

26 | AS TO THE FIRST CLAIM FOR RELIEF:

27 | 1.    for damages in the amount of $362,651;

28 | 2.    for costs of suit herein;

1       3.     for reasonable attorney fees as may be allowed;

2       4.     for interest and pre-judgment interest at the legal rate from the date all monies

3  were due; and

4       5.     for such other and further relief as the Court deems just and appropriate.

5       AS TO THE SECOND CLAIM FOR RELIEF:

6       1.     for damages in the amount of $2,039,273;

7       2.     for costs of suit herein;

8       3.     for reasonable attorney fees as may be allowed;

9       4.     for interest and pre-judgment interest at the legal rate from the date all monies

10  were due; and

11       5.     for such other and further relief as the Court deems just and appropriate.

12       AS TO THE THIRD CLAIM FOR RELIEF:

13       1.     for damages in the amount of $993,674;

14       2.     for costs of suit herein;

15       3.     for reasonable attorney fees as may be allowed;

16       4.     for interest and pre-judgment interest at the legal rate from the date all monies

17  were due; and

18       5.     for such other and further relief as the Court deems just and appropriate.

19       AS TO THE FOURTH CLAIM FOR RELIEF:

20       1.     for damages in the amount of $3,624,929;

21       2.     for costs of suit herein;

22       3.     for reasonable attorney fees as may be allowed;

23       4.     for interest and pre-judgment interest at the legal rate from the date all monies

24  were due; and

25       5.     for such other and further relief as the Court deems just and appropriate.

26       AS TO THE FIFTH CLAIM FOR RELIEF:

27       1.     for damages in the principal amount of at least $1,650,078.28 and/or according to

28  proof;

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

1        2.     for interest and penalties according to proof assessed and/or owed to state and

2  federal taxing authorities;

3        3.     for costs of suit herein;

4        4.     for reasonable attorney fees as may be allowed;

5        5.     for interest and pre-judgment interest at the legal rate from the date all monies

6  were due; and

7        6.     for such other and further relief as the Court deems just and appropriate.

8

9  Dated: July 25, 2007            Respectfully Submitted By,

10                       **GOE & FORSYTHE, LLP**

11

12                       By: _____

13                           Robert P. Goe

14                           Attorneys for Defendant/Counter-Claimant,
                               Coastal Employers, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

28

COUNTER-CLAIMANT COASTAL EMPLOYERS, INC.'S COUNTER-CLAIM

EXHIBIT "2"
Page 60