FILED

AUG 0 4 2011

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

1  Drew E. Pomerance, Esq. (SBN 101239)
   John W. Hurney, Esq. (SBN 161617)
2  **ROXBOROUGH, POMERANCE, NYE, & ADREANI LLP**
   5820 Canoga Avenue, Suite 250
3  Woodland Hills, California 91367
   Telephone:  (818) 992-9999
4  Facsimile:  (818) 992-9991
   dep@rpnlaw.com
5  jwh@rpnlaw.com

By FAX

6  Attorneys for Plaintiffs/Cross-Defendants, REAL TIME STAFFING, INC.,
   KOOSHAREM CORPORATION, NEW STAFF, INC.,
7  KT, INC., PAY SERVICES, INC. PBT, INC., and
   D. STEPHEN SORENSEN

8

9              **UNITED STATES BANKRUPTCY COURT**

10        **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

11 | IN RE: | Case No. 8:07-BK-10992 RK
12 | CONSOLIDATED EMPLOYER MANAGEMENT SOLUTIONS, A CALIFORNIA CORPORATION | (Jointly administered with Case Nos.: 8:07-bk-10994 and 8:07-bk-10995)
13 | | Chapter 7 Proceeding
14 | DEBTOR AND DEBTOR-IN-POSSESSION |
15 | REAL TIME STAFFING, INC.  , a California corporation, KOOSHAREM | Adv. No. 8:07-ap-01105 RK
16 | CORPORATION, a California corporation, NEW STAFF, INC., a California | **DECLARATION OF DREW E. POMERANCE IN SUPPORT OF PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION IN LIMINE NO. 1 TO PRECLUDE EXPERT TESTIMONY FROM ADLAI CLIMAN**
17 | corporation, KT, INC., a California corporation, PAY SERVICES, INC., a |
18 | California corporation, PBT, INC., a California corporation, and D. STEPHEN |
19 | SORENSEN, an individual, | **[Filed and served concurrently with Plaintiffs' and Counter-Defendants' Motion in Limine No. 1 to Preclude Expert Testimony from Adlai Climan]**
20 |              Plaintiffs, |
21 |       v. | Hearing Date:  August 25, 2011
22 | COASTAL EMPLOYERS, INC., a California corporation, ROBERT J. | Time:  9:00 a.m..
23 | ANDERSON, an individual, and Does 1 through 100, inclusive, | Ctrm:  5D
   | | Courtroom: Hon. Robert Kwan
24 |  |
25 |              Defendants. |
26 |  |
27 |  |
28 | KAREN S. NAYLOR, Chapter 7 Trustee (In Place of COASTAL EMPLOYERS, INC., a |

California corporation),

          Counter-Claimant,

      v.

KOOSHAREM CORPORATION,
PROFESSIONAL BUSINESS
TECHNOLOGIES, INC., aka PBT, INC;
NEW STAFF, INC., KT, INC., PAY
SERVICES, CORP., REAL TIME
STAFFING SERVICES, INC., D.
STEPHEN SORENSEN, an individual, and
ROES 1 through 100, inclusive.

          Counter-Defendants.

## DECLARATION OF DREW E. POMERANCE

I, Drew E. Pomerance, do hereby and declare as follows:

1.　　I am an attorney at law, duly licensed to practice before all California state courts and the U.S. Bankruptcy Court, Central District of California, and am in good standing with the California Bar. I am a partner at Roxborough, Pomerance, Nye and Adreani, counsel Plaintiffs and Counter-Defendants in this action. I have personal knowledge of all facts stated in this declaration, and if called as a witness, I could and would competently testify thereto.

2.　　Attached hereto as Exhibit A is a true and correct copy of the expert report prepared by Adlai Climan provided in Defendant and Counter Claimant, Karen S. Naylor, Chapter 7 Trustee, and Defendant Robert J. Anderson, Jr., jointly served Expert Witness Disclosure pursuant to Rule 26.

DECLARATION OF DREW E. POMERANCE IN SUPPORT OF SELECT'S MOTION IN LIMINE NO. 1 TO EXCLUDE
EXPERT TESTIMONY FROM ADLAI CLIMAN

3.     Attached hereto as Exhibit B is a true and correct copy of the expert declaration prepared by Adlai Climan provided in Defendant and Counter Claimant, Karen S. Naylor, Chapter 7 Trustee, and Defendant Robert J. Anderson, Jr., jointly served Expert Witness Disclosure pursuant to Rule 26.

I declare under penalty of perjury that the foregoing is true and correct, under the laws of the United States of American and the State of California, and that this declaration is executed this 4th day of August, at Woodland Hills, California.

Dated: 8/4/11

Drew E. Pomerance, Esq.

3

# Exhibit "A"

# TAX SETTLEMENTS AND RESOLUTIONS

## ADLAI CLIMAN
### Enrolled Agent
*Admitted to Practice before the Internal Revenue Service*

### 269 S. BEVERLY DRIVE #1248
### BEVERLY HILLS, CALIFORNIA 90212
Telephone (310) 502-3879
FAX (831) 336-8238
Email acliman@earthlink.net

**Expert Witness Testimony of Factors to Consider in Determining Culpability for non-Payment of Withheld Employment Taxes, Liability as an Employer, and Computation of Outstanding Amounts**

Nature of expert testimony:

The Internal Revenue Code (IRC) provides legal liability for individuals and entities regarding the non-payment of withheld federal taxes. These may be viewed in IRC sections 3505 and 6772. The Internal Revenue Manual (IRM) provides guidelines to determine who is responsible for such non-payment and who may be asserted liability under these IRC sections.

As a former Internal Revenue Service Revenue Officer responsible for field collection activity and such recommendation(s), and Settlement Officer for the Regional Office of Appeals responsible for conducting hearings in determining culpability regarding such recommendations, including recommendations for the Trust Fund Recovery Penalty (TFRP) under IRC section 6772, I have gained considerable experience in identifying factual circumstances that must be taken into consideration to determine liability pursuant to the IRC and IRM guidelines.

I have been asked to form an opinion and prepare a written report on what should be considered in determining the culpability of Real Time Staffing Inc., Koosharem Corporation, New Staff Inc., KT Inc., Pay Services Inc., and PBT Inc. (hereinafter Select) for the non-payment of withheld taxes regarding the corporate entity Coastal Employers Inc. a California corporation (hereinafter Coastal CA) as well as determining the appropriate amount(s).

My Qualifications:

Education
Bachelor of Arts - Queens College, Queens, NY - 1974
Master of Business Administration - California State
University at Northridge - 1989

Work Experience
Internal Revenue Service Collection Division - Revenue
Officer, NYC, NY - 1974 to 1980
Internal Revenue Service Collection Division - Revenue
Officer, Los Angeles, CA - 1980 to 1987
Internal Revenue Service Appeals Division - Settlement
Officer, Los Angeles, CA - 1987 to 2008
Tax Settlements and Resolutions - private practice - 2008 to
present

During my tenure with the IRS, I was an instructor at numerous
training classes for both Revenue Officers in the Collection
Division and Settlement Officers in the Appeals Division which
included consideration of assertion of liabilities regarding
employment taxes, including the Trust Fund Recovery Penalty
under IRC section 6672 and liability under IRC section 3505.

During my tenure with the Internal Revenue Service, I was also
trained in Employment Tax determinations regarding employee-
independent contractor reclassifications. I taught a number of
classes on such matters within the IRS, and handled any number
of cases regarding such reclassifications.

I have testified on several occasions in Tax Court as a
witness regarding cases that I handled as a Settlement Officer
with the IRS, was called by the IRS to testify on two
occasions in Tax Court on their behalf as an expert witness in
collection procedures, and was provisionally accepted as a
qualified expert witness in June 2010 in a Tax Court
proceeding regarding IRS collection matters (Kreit Mechanical
Associates Inc. v. Commissioner). A decision on the Kreit case
has not as yet been rendered.

I have utilized 24 hours in the preparation of this report. My
billing rate for this was $250/hour. My time expenditure has
included the securing and reviewing of transcripts, relevant
court cases, procedural guidelines both federal and state, tax
returns, affidavits, declarations, and company records, among
others in addition to the report preparation.

My billing rate for deposition testimony is $250/hour, as is my fee for testimony at time of trial.

Information I have reviewed to form this opinion:

1. Internal Revenue Transcripts of accounts for each of the corporate entities.

2. Copies of tax returns for each of the corporate entities, including Forms 941, 943, and 940.

3. Portions of the Internal Revenue Code and Internal Revenue Manual.

4. Trust Fund Recovery Penalty court cases.

5. Payroll records of Coastal CA including Form 941 and 940 tax returns, and spreadsheets of payroll payments and records of payments made, including the Declaration of Jennifer Gilbert dated June 10, 2010.

6. Declaration of Robert Anderson Jr. dated (I believe) July 3, 2007.

7. Supplemental Affidavit of Robert J. Anderson Jr. dated October 19, 2007.

8. Declaration of Robert Anderson Jr. dated June 10, 2010.

9. Correspondence between the California Employment Development Department and Robert Anderson Jr., and Coastal Employers Inc. (CA), including assessment proposal and Notice of Assessment for personal liability for unpaid taxes.

10. Staff Servicing Agreement dated May 1, 2006 and marked as Exhibit C.

11. Joint Pretrial Order pages 30 and 31.

12. IRS training material regarding employment tax reclassification determinations.

13. Declaration of Ian Kindberg dated November 20, 2009.

14.     Deposition of Ian Kindberg dated February 4, 2010.

15.     Stipulation of Facts re: Motion for Summary
Adjudication re: Payroll Taxes and Indemnification dated
November 23, 2010.

16.     Audio recording of Motion for Summary Judgment.


Opinion:

## 1. Is Select responsible for the non-payment of the withheld taxes?

Select has acknowledged that it withheld federal income tax,
the employee portion of Social Security (FICA) tax, state
income tax, and state disability insurance from the wages of
the subject employees of Coastal CA. Select acknowledges that
it did not forward these amounts to Coastal CA for remission
to the Internal Revenue Service or the relevant State tax
agencies, and did not make the payment of the withheld taxes
directly.

The Internal Revenue Manual (IRM) provides general guidelines
in evaluating the actions of an entity regarding assertion of
liability for failing to remit withheld taxes. These IRM
guidelines are, in part, as follows:


## Discussion of Trust Fund Recovery Penalty under IRC 6672

For the IRS Collection Division:

**5.17.7.1 (08-01-2010)**
**Trust Fund Recovery Penalty: Overview**

1. IRC § 7501 provides that whenever any person is required
   to collect or withhold any internal revenue taxes from
   any other person and to pay over such tax to the United
   States, the amount of the tax shall be held in a special
   trust fund for the United States. Trust fund taxes
   include employment taxes and certain types of excise
   taxes.
2. The Trust Fund Recovery Penalty (TFRP) is based on IRC §
   6672(a), which provides as follows:

"Any person required to collect, truthfully account
for, and pay over any tax imposed by this title who
willfully fails to collect such tax, or truthfully
account for and pay over such tax, or willfully
attempts in any manner to evade or defeat any such
tax on the payment thereof, shall, in addition to
other penalties provided by law, be liable to a
penalty equal to the total amount of the tax evaded,
or not collected, or not accounted for and paid
over.... "

### 5.17.7.1.1 (08-01-2010)
### Persons Subject to the Trust Fund Recovery Penalty

1. The term "person" in section 6672 includes, but is not
   limited to, the following:
   - officer or employee of a corporation;
   - partner or employee of a partnership;
   - member or employee of an LLC;
   - corporate director or shareholder;
   - another corporation; and
   - surety or lender.

### 5.17.7.1.3 (08-01-2010)
### Willfulness

1. Under IRC § 6672(a), the failure to collect or pay over
   trust fund taxes must be willful.
2. Definition of willful — intentional, deliberate,
   voluntary, reckless, knowing (not accidental). No evil
   intent or bad motive is required. Domanus v. United
   States, 961 F.2d 1323 (7th Cir. 1992).
3. To show "willfulness," the government must show that the
   responsible party was aware of the outstanding taxes and
   either deliberately chose not to pay the taxes or
   recklessly disregarded an obvious risk that the taxes
   would not be paid. Phillips v. United States, 73 F.3d
   939, 942 (9th Cir. 1996).


For the IRS Appeals Division:

### 8.25.1.3.1 (10-19-2007)
### Definition of a Responsible Person

1. A "responsible person" is one who has the duty to perform or the power to direct the act of collecting, accounting for, or paying over trust fund taxes. When evaluating responsibility, consider the Supreme Court decision in Slodov v. United States, 436 U.S. 238, 78-1 USTC 9447 (1978). See also IRM 5.7.3 *Establishing Responsibility.*
2. Most trust fund recovery penalty cases involve officers of corporations. However, a responsible person may be one or more of the following:
   A. an officer or employee of a corporation
   B. a member or employee of a partnership
   C. a corporate director or shareholder
   D. a related controlling corporation
   E. a lender, a surety, or any other person with sufficient control over funds to direct disbursement of the funds, or
   F. in some cases, a person assuming control after accrual of the liability.

## 8.25.1.3.2 (10-19-2007)
## Definition of Willfulness

1. The trust fund recovery penalty is a civil penalty; so the degree of willfulness in failing to collect or pay over any tax leading to liability for this penalty is not as great as that necessary for criminal proceedings. "Willful" is defined as intentional, deliberate, voluntary, and knowing, as distinguished from accidental. "Willfulness" is the attitude of a responsible person who with free will or choice either intentionally disregards the law or is plainly indifferent to its requirements. See IRM 5.7.3 *Establishing Willfulness.*

IRC section 7501(a) states as follows:

"(a) General rule
Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

The courts have held that any one of the duties, i.e. to collect, account for, or pay over the withheld taxes, may be considered a breach of the requirements of section 7501, and impose liability under IRC section 6672 on the party so charged:

> "The phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit section 6672 to persons responsible for paying over taxes that require collection (third party taxes) and not limit it to persons in a position to perform all three functions with respect to the specific taxes as to which the employer is delinquent." (Slodov v. US (Supreme Court) 78-1 USTC 9447 at 84,204).

I find that Select would meet the parameters described above both for responsibility and willfulness in the non-payment of the withheld (trust fund) taxes. It controlled the funds directly, both net payroll and the funds withheld from employee paychecks. It forwarded to Coastal CA only sufficient funds to pay the net payrolls due to the employees. It directly withheld and collected from the employee wages the trust fund taxes, both federal and State, and retained these funds within the Select bank account(s). Fully cognizant that funds were due to be paid over to the various tax agencies, Select willfully chose to retain them rather than either pay them over to Coastal CA for remission to the tax agencies, or pay them directly to the tax agencies. Select has admitted this specifically, at the Motion for Summary Judgment, including that it still has these withheld monies. At the Motion for Summary Judgment, Select stated (and I re-phrase) that it did not believe that (as per IRC section 7501) "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States", but rather that it might be used to offset liabilities owed to Select by Coastal CA. I find this logic on Select's part to be erroneous and self-serving to the detriment of the coffers of the federal and State tax agencies.

I have been advised that the Internal Revenue Service considered assertion of the Trust Fund Recovery Penalty against Select as an entity, but at the time of consideration, insufficient records were available to establish liability.

This dearth of information has changed significantly with the testimony and information produced so far at trial, and I find that it now becomes apparent that Select was fully culpable for the non-payment.

A corporation, as an entity, may be held liable for the Trust Fund Recovery Penalty under IRC section 6672; see:

Adams v. US (7th Cir.) 74-2 USTC 9738
Meridian Industries v. US (US Dist. Ct., E. Dist. Mich.) 82-1 USTC 9327

## Discussion of Liability under IRC section 3505

**5.17.7.2.2 (08-01-2010)**
**Liability When Funds are Supplied — IRC § 3505(b)**

1. IRC § 3505(b) provides that a lender, surety, or other person who supplies funds to or for the account of an employer for the specific purpose of paying wages of the employees of such employer may be personally liable for any unpaid withholding taxes even though this person does not directly pay the employees' wages.
2. A person within the meaning of section 3505(b) includes the following:
   - a prime or general contractor who supplies funds directly to a subcontractor to meet its net payroll with knowledge of the subcontractor's inability to pay its withholding taxes. United States. Algernon Blair, Inc., 441 F.2d 1379 (5th Cir. 1971).
   - a shareholder, including a parent company of a subsidiary, who makes a capital contribution or a direct loan, or who puts up collateral for a loan from a third party to a corporation if the loan is to be used by the corporation to pay net wages. United States v. Intercontinental Industries, Inc., 635 F.2d 1215 (6th Cir. 1980).
   - a bank that honors a customer's/employer's overdrafts for payroll checks. Fidelity Bank, N.A. v. United States, 616 F.2d 1181 (10th Cir. 1980).
3. Before a person can be liable under section 3505(b), the following two conditions must exist.
   A.  The person must know that the advanced funds are to be used for the payment of wages; this does not include an "ordinary working capital loan."

EXHIBIT A, PAGE 12

"Ordinary working capital loans" are ones that are made to enable the borrower to meet current obligations as they arise; they are not earmarked for any particular purpose.

B.    The supplier of funds must have "actual notice or knowledge" at the time such funds are advanced that the employer does not intend to, or will not be able to make timely payment or deposit of taxes required to be withheld. The lender has actual notice or knowledge of any fact from the time such fact is brought to its attention or would have been brought to its attention if the organization had exercised due diligence. See <u>United States v. Park Cities Bank and Trust Co.</u>, 481 F.2d 738 (5th Cir. 1973).

4. It is the Service's position that notice to, or knowledge by, any agent of a third-party supplier of funds is imputed to the third party. This is true even if the agent conceals the facts from the supplier. <u>United States v. Park Cities Bank and Trust Co.</u>, 481 F.2d 738 (5th Cir. 1973).

5. Under IRC § 3505(b), the liability of the third party may not exceed 25 percent of the amount supplied to the employer for the specific purpose of paying wages.

.    The 25% limitation applies to accrued interest. <u>O'Hare v. United States</u>, 878 F.2d 953 (6th Cir. 1989).

A.    Example: A lender advances $100,000 to Employer A for the purpose of paying net wages. The employer fails to pay withholding taxes, and is assessed a liability of $25,000 plus an additional $10,000 in accrued interest. The Service may file suit against the lender for $25,000, which is 25% of the amount supplied to the lender. If the assessment had been $20,000 plus an additional $10,000 in interest, the Service still could have brought suit for $25,000 ($20,000 in tax and $5,000 in accrued interest).

B.    The lender's liability does not include penalties that the Service may impose on the employer.

6. The employer remains responsible for filing returns (Form 941).

7. Payments by the lender of withholding taxes reduces the liability of the employer. Similarly, payments by an employer of the withholding taxes reduces the liability of the lender.

Again, I find that Select would meet the parameters described above regarding supplying funds only sufficient to meet net payrolls while being fully cognizant that Coastal CA "does not intend to, or will not be able to make timely payment or deposit of taxes required to be withheld". Select specifically withheld and retained these tax funds, both federal and State, leaving Coastal CA without the means to make the requisite tax payments. At the Motion for Summary Judgment, Select argued that Coastal should have made the tax payments from the "millions of dollars" that had been paid previously to Coastal CA. This argument on the part of Select has no basis, as Select had no direct knowledge as to what amount of cash funds might be available to Coastal CA at the time the taxes were due to be paid. The amount of withheld funds alone due to be paid over to the IRS and EDD total in excess of $1.7 million (see computations below in #2). I would find it unlikely at best that Coastal CA would have such a sum available at short notice for an unexpected expenditure in tax payment(s).

It is to be noted that the statute of limitations has not expired regarding assertion of liability under IRS section 3505, and that the IRS, should it so choose, may still proceed against Select:

**5.17.7.2.3 (08-01-2010)**
**Collection of Liabilities under IRC §§ 3505(a) and (b)**

    1. Under both IRC §§ 3505(a) and (b), if the person liable does not voluntarily satisfy the liability, the government may collect such liability by a court proceeding only.
        A. The suit must be instituted within 10 years after the assessment against the employer.

The assessment dates as shown on the IRS transcripts for the subject tax periods (as filed by Coastal CA) are as follows:

```
941 - 12/31/06:    4/23/07
941 -  3/31/07:    7/9/07
940 - 12/31/06:    5/7/07
```

**2. For what amount should Select be held liable for the non-payment of the withheld taxes?**

The staffing agreement between Coastal CA and Select required Select to "immediately segregate and pay to all responsible taxing and other government authorities all payroll taxes, Social Security taxes, federal and state withholding taxes, EDD and SDI payments, and all other such payments withheld from an employee's paycheck on behalf of CEI with regard to all employees covered under this Agreement contemporaneously with issuing the paycheck to the employees...." (Staff Servicing Agreement dated 5/1/2006, para. 1i). This language and responsibility was also stipulated to by both parties in the Stipulation of Facts re: Motion for Summary Adjudication re: Payroll Taxes and Indemnification dated November 23, 2010 (page 5, number 8).

Select had previously complied with the requirement to remit all payroll monies, including withheld taxes, through the 3rd quarter of 2006. This was stipulated to by both parties in the Stipulation of Facts re: Motion for Summary Adjudication re: Payroll Taxes and Indemnification dated November 23, 2010 (page 10, number 15). Select failed to make the required payments to the IRS and EDD beginning 1/22/2007 for the remnant of the 4th quarter of 2006 (for which return was due to be filed and fully paid on 1/31/2007) and the 1st quarter of 2007.

An analysis of the subject tax periods during the time Select failed to remit the withheld funds to Coastal CA is as follows as regards tax as reported on the returns, and the withheld amounts:

| Forms 941 | 4th Q 2006 | | 1st Q 2007 | |
|---|---|---|---|---|
| Tax on Return | 8,794,411 | | 2,198,484 | |
| Payments | 667,077 | 10/11/06 | 433,231 | 1/10/07 |
| | 672,713 | 10/18/06 | 526,692 | 1/17/07 |
| | 676,591 | 10/25/06 | 689,437 | 1/24/07 |
| | 722,354 | 11/1/06 | | |
| | 712,500 | 11/8/06 | | |
| | 731,310 | 11/15/06 | | |
| | 704,119 | 11/22/06 | | |
| | 755,129 | 11/29/06 | | |
| | 442,295 | 12/6/06 | | |
| | 701,549 | 12/13/06 | | |
| | 663,227 | 12/20/06 | | |
| | 702,875 | 12/28/06 | | |
| | 607,185 | 1/4/07 | | |

```
                        500  5/6/08  TFRP case adj.
                        500  5/6/08  TFRP case adj.
```

| Penalties | 4th Q 2006 | 1st Q 2007 |
|---|---|---|
| FTD | 15,677 | 54,912 |
|  | 1,766 | 27,456 |
| Late payment | 530 |  |
| Pen. accrued | 8,303 | 137,280 |
| Interest | 640 | 8,488 |
| Int. accrued | 12,606 | 199,702 |
| Current Balance Owed | 73,859 | 976,463 |

For the 4th quarter of 2006, $35,334 has not been paid over in tax by Coastal CA, against which the above-noted penalties and interest have been charged. The return for the 941 for the 4th quarter of 2006 reported unpaid taxes of $35,334; the amount of above, if one subtracts all penalties and interest from the total amount due is $34,337. This is due to rounding in the analysis, and discounting the (2) $500 adjustments from TFRP payments. The only FTD which was paid in for less than the amount owed for the payroll period was the last deposit of the quarter. Schedule B of the Form 941 for 4th quarter 2006 shows that it should have been $642,520 where only $607,185 was deposited.

For the 1st quarter of 2007, $549,124 in tax has not been paid over, again, against which the above-noted penalties and interest have been charged. The analysis chart above shows three federal tax deposits which Schedule B of the Form 941 confirms were for the first 3 weeks of the quarter. Coastal CA ceased paying payroll at the end of January 2007, and one final deposit of $639,394 was due for the fourth week of January.

Note: IRS records show that the tax as reported on the return was $2,198,484. Coastal CA amended this return on 3/10/2010 to correctly report tax of $2,288,755, an increase of $90,271. IRS records, to date, do not show this amended, increased amount, hence the discrepancy between what the IRS records show as unpaid tax and what the amended Form 941 shows as unpaid tax for the quarter (639,394 - 549,124 = 90,270).

EXHIBIT A, PAGE 16

## 941 - 12/31/2006

Spreadsheets provided by Coastal CA showed a significant number of FTDs made, which matched the payroll taxes due for this tax period. The cumulative figure(s) are shown below under "Total payments...".

Tax as shown on Return

| ER FICA | EE FICA | WHT | Total T/F |
|---|---|---|---|
| 3,565,245.09 | 3,565,245.10 | 1663,921.68 | 5,229,166.78 |

Total payments as made by payroll period (see spreadsheet):

| ER FICA | EE FICA | WHT | Total T/F |
|---|---|---|---|
| 3,553,464.12 | 3,553,440.58 | 1,652,017.43 | 5,205,458.01 |

Difference:

| ER FICA | EE FICA | WHT | Total T/F |
|---|---|---|---|
| 3,565,245.09 | 3,565,245.10 | 1,663,921.68 | 5,229,166.78 |
| <3,553,464.12> | <3,553,440.58> | <1,652,017.43> | <5,205,458.01> |
| 11,780.97 | 11,804.52 | 11,904.25 | 23,708.77 |

Unpaid Trust Fund amount:        23,708.77

## 941 - 3/31/2007

This period had one missing Federal Tax Deposit (FTD). All Other FTDs as required for this period were made. The return as originally submitted was "estimated" return to include the last (unpaid) pay-period, as payroll records were not available. Coastal prepared and filed with the Internal Revenue Service a correct return from actual payroll records regarding this pay-period:

As originally reported:  549,123.04 (estimated return)
As amended:              620,058.56

Breakdown of amended final payroll period:

| ER FICA | EE FICA | WHT | Total T/F |
|---|---|---|---|
| 254,141.70 | 254,141.70 | 111,775.16 | 365,916.86 |

Correctly, under the above analysis of responsibility, Select would be liable for the unpaid trust funds of this one (now corrected) pay period:

EXHIBIT A, PAGE 17

Unpaid Trust Fund amount:     $365,916.86

As regards the unpaid taxes due to the State of California EDD, <u>all</u> of them are considered collected, trust fund monies. Robert Anderson Jr. was issued a Notice of Assessment by the EDD dated 1/17/2008 as regards the unpaid State taxes of Coastal CA for the period 4/1/06 through 1/20/07. The tax liability for the State of California EDD is as follows, as per this Notice of Assessment is:

| | |
|---|---|
| Unemployment Insurance: | 849,114.61 |
| Employment Training Tax: | 111,193.13 |
| Disability Insurance: | 212,288.31 |
| Personal Income Tax: | 143,189.54 |
| | 1,315,785.59 |

The records provided to me by Coastal CA show that they determine Select's unpaid EDD tax responsibility to be as follows for 2006 and 2007:

| | |
|---|---|
| 2007 | 362,125.41 |
| 2006 | 768,515.03 |
| | 1,130,640.44 |

I have not been provided any records which may specifically support or refute this amount. This amount is somewhat less than the amount as asserted against Anderson in the above-noted Notice of Assessment. The difference may be attributable to the amount Coastal CA acknowledges as being directly responsible for in non-payment for periods preceding those where Select ceased paying over the withheld funds (e.g. the Notice of Assessment begins as early as the 2nd quarter 2006, but does not break out the liability into separate tax periods).

**3. Should Select be considered the actual employer of the subject employees, and thus liable for the non-withheld taxes, i.e. the employer portion of the FICA tax, and Federal Unemployment tax (FUTA)?**

The Internal Revenue Code defines employer in sections 3231(a), 3306(a), and 3401(d). IRC section 3401(d) states as follows:

"(d) Employer
For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that—
(1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" (except for purposes of subsection (a)) means the person having control of the payment of such wages, and
(2) in the case of a person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, the term "employer" (except for purposes of subsection (a)) means such person."

The services were performed for Select and payment of the wages was controlled by Select.

The Internal Revenue Code also uses the common law standard, developed under the law of agency, to determine whether a worker is an employee. Section 3121(d)(2) of the Internal Revenue Code states that any individual who has the status of an employee "under the usual common law rules applicable in determining the employer-employee relationship has the status of an employee" for employment tax purposes.

Under the common law standard, the right to direct and control the worker's activities is the critical element in determining status (United States v. W.M. Webb Inc. 397 U.S. 179 (1970).

This developed into a list of "20 Common Law Factors" that were used as a training aid by the Internal Revenue Service and Social Security Administration, and were first published in Rev. Rul. 87-41, 1987-1 C.B. 296. This is not a legal standard, but is described in Rev. Rul. 87-41 "as an aid to determining whether an individual is an employee under the common law rules". These "common law rules", generally used in determining whether a worker is an employee or an independent contractor, may also be used in determining who is the actual employer of the worker. The 20 Common Law Factor test centers around the control exercised (or not) by the putative employer. The primary tenet is that if the person for whom he works has the right to direct and control him in the way he works, both as to the final results and as to when, where, and

how the work is to be done, then he is an employee of that employer. The employer need not actually exercise control; it is sufficient that he has the right to do so. Factors or elements showing such control include requirement by the worker to comply with instructions, training of the worker by the employer, establishment by the employer of set working hours, doing the work on premises provided by the employer, payment to the worker by the hour, week, or month, furnishing the worker with tools necessary for the performance of the job, and the right to fire the worker.

The Staff Servicing Agreement states that:

> "The parties acknowledge and agree that CEI [Coastal CA] is the employer of record under this Agreement...." (Staff Service Agreement, para. 1).

This, however, is undercut by the later language of this same Agreement:

> "Client   Companies   [Select]   shall   remain   solely responsible for the following matters:
>
> b. Preparing, withholding and payment of all required federal income and related taxes;
> c. Preparing and filing of all required forms 940, 941 and similar Federal Tax forms;
> d. Preparing and filing of all required State and Federal Unemployment Insurance Reports and payment of all sums due as indicated thereon;...
>
> g. Either directly or through the efforts of Client companies' customers, direction and supervision of all Workers in the course of fulfilling their job assignments, including establishment of performance standards for such Workers and provision of all customary tools and/or other equipment necessary for performance of required tasks;
> h. Adherence to all safety laws, regulations, rules and guidelines existing specifically in Client Companies' business and industry generally and as required by any government agencies or interested insurance carriers;...
>
> j. To evaluate the performance of each Worker periodically and to discharge those Workers whose performance is unsatisfactory to Client Companies;...."

(Staffing Service Agreement dated May 1, 2006, para. 6)

The above, in essence, states that although Coastal CA will be shown as the employer on the forms submitted to the federal and State agencies, Select is actually the true employer, with Select, not Coastal CA, having responsibility for direct oversight of employee job performance and working conditions, the right to fire employees, and payment of all taxes, including the employer portion of FICA, and all federal and State unemployment taxes.

In the Stipulation of Facts re: Motion for Summary Adjudication re: Payroll Taxes and Indemnification dated November 23, 2010, the parties have agreed on the fact that according to the Staff Servicing Agreement, Coastal CA was to "provide consulting assistance" to Select regarding IRS forms, the preparation of tax returns, and worker safety programs. At no point in the Staff Servicing Agreement does Coastal CA purport to be, or is shown as, the employer of the subject workers.

In his Deposition, Ian Kindberg states that
"payroll checks are cut as a part of the contractual arrangement with Coastal. So Select would cut the checks and summarize the data and provide them for Coastal for filing".

This, again, points convincingly towards Select as the employer in fact if not in name. The paychecks paid to the employees bore the name Select. If these same employees were asked who they were employed by, I would find it likely that their answer would be "Select".

Select had previously complied with the requirement to remit all payroll monies, including the non-withheld employer tax for Federal Unemployment (FUTA), through the 3rd quarter of 2006. This was stipulated to by both parties in the Stipulation of Facts re: Motion for Summary Adjudication re: Payroll Taxes and Indemnification dated November 23, 2010 (page 11, number 17). In the Deposition of Ian Kindberg dated February 4, 2010, he acknowledges that during 2006 (and prior) Select remitted taxes directly to the requisite tax agencies and not through Coastal CA (page 44, line 21). In his Declaration dated 11/20/2009, Kindberg states that his position with Select was Assistant Controller, and that his duties included "the day to day managing of the accounting

department". As such, I would find him knowledgeable as to the tax payment practices of Select.

Note the payments as made to the 940 for 2006:

Tax on Return  1,029,721

Payments        318,353 5/1/06
                307,183 8/1/06
                228,459 10/31/06

As was required, payment was made at the end of each of the first three quarters of the year; the unpaid FUTA tax is solely for the 4th quarter of 2006.

The current unpaid federal tax liabilities for Coastal CA are as follows:

| Forms 941 | 941 4th Q 2006 | 941 1st Q 2007 | 940-2006 |
|---|---|---|---|
| Tax on Return | 8,794,411 | 2,198,484 | 1,029,721 |
| Total Payments | 8,758,922 | 1,649,360 | 853,995 |
| Tax Liability | 35,489 | 549,124 | 175,726 |

Coastal CA also estimates that there is $91,128.89 due in FUTA tax for 2007, however no return, the Form 940, for 2007 has been filed to date.

## Discussion of Liability for State of California Employment Development Department taxes

The State of California Employment Development Department has guidelines similar to those of the IRS regarding the assertion against responsible parties for unpaid trust-fund monies (i.e. state withholding tax, disability insurance, unemployment insurance, employment training tax). A portion of their guidelines states as follows:

"Section 1735 of the UIC provides that any person having charge of the affairs of a corporation, association, registered limited liability partnership, or foreign limited liability partnership or limited liability company employing unit, who willfully fails to pay the

18

required tax contributions or withholdings as required by
the code, shall be personally liable for the amounts due,
plus applicable penalty and interest charges."

Following the guidelines for determining the true employer of
the employees, as well as its stipulated contractual
obligation to do so, Select would be responsible for the
unpaid state taxes in their entirety.

Robert Anderson Jr. was issued a Notice of Assessment by the
EDD dated 1/17/2008 as regards the unpaid State taxes of
Coastal CA for the period 4/1/06 through 1/20/07 in the
following amounts:

| | |
|---|---:|
| Unemployment Insurance: | 849,114.61 |
| Employment Training Tax: | 111,193,13 |
| Disability Insurance: | 212,288.31 |
| Personal Income Tax: | 143,189.54 |
| Penalty: | 191,799.13 |
| Interest to 1/25/08: | 136,560.15 |
| Total Amount Due: | 1,644,144.87 |

The <u>tax</u> liability for the State of California EDD is as
follows, as per this Notice of Assessment is:

| | |
|---|---:|
| Unemployment Insurance: | 849,114.61 |
| Employment Training Tax: | 111,193,13 |
| Disability Insurance: | 212,288.31 |
| Personal Income Tax: | 143,189.54 |
| | 1,315,785.59 |

## 4. Should Select be held liable for the penalties and interest incurred regarding the unpaid taxes of the federal and State tax liabilities?

The proximate cause of the penalties and interest being
incurred for both the federal and State tax liabilities was
Select's failure to remit the required withheld funds and to
pay the employer portion of the taxes as required. Select was
contractually obligated to do so, had previously done so, and
failed to do so beginning January 22, 2007. There is no
evidence that Coastal CA had the funds with which to "cover"
Select's failure to pay the taxes as appropriate. As such, I
would find Select to be liable for payment of all penalty and
interest charges incurred and imposed on Coastal CA. The

penalties imposed against Coastal CA for federal tax
liabilities are as follows:

JUN 1 3 2011

BY:

| Penalties | 941 4th Q 2006 | 941 1st Q 2007 | 940-2006 |
|---|---|---|---|
| FTD | 15,677 | 54,912 | 21,502 |
| | 1,766 | 27,456 | |
| Late payment | 530 | | 2,636 |
| Pen. accrued | 8,303 | 137,280 | |
| Interest | 640 | 8,488 | 3,736 |
| Int. accrued | 12,606 | 199,702 | 67,541 |

The penalties and interest imposed regarding the unpaid tax
liability for the State of California EDD are as follows, as
per the Notice of Assessment issued by the EDD dated 1/17/2008
as regards the unpaid State taxes of Coastal CA for the period
4/1/06 through 1/20/07:

Penalty:                  191,799.13
Interest to 1/25/08:      136,560.15
                          328,358.28

There will be approximately 3½ years additional interest added
to this figure for the total current amount due to the EDD.

_____          6/10/2011
Adlai Climan                     Date

# Exhibit "B"

1  D. Edward Hays, Esq., Bar No. 162507
   ehays@marshackhays.com
2  MARSHACK HAYS LLP
   5410 Trabuco Road, Suite 130
3  Irvine, California 92620
   949-333-7777 Telephone
4  949-333-7778 Facsimile

5  Attorneys for Defendant and CounterClaimant, Karen S. Naylor, Chapter 7 Trustee

6  William R. Hart, Esq., Bar No. 71127
   Richard P. Gerber, Esq., Bar No. 59395
7  rgerber@hkclaw.com
   HART, KING & COLDREN
8  A PROFESSIONAL LAW CORPORATION
   200 Sandpointe, Fourth Floor
9  Santa Ana, California 92707
   714-432-8700 Telephone
10 714-546-7457 Facsimile

11 Attorneys for Defendant, Robert J. Anderson, Jr.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

In re:

CONSOLIDATED EMPLOYER
MANAGEMENT SOLUTIONS, INC.,
a California corporation, COASTAL
EMPLOYERS, INC., a New York
corporation, and COASTAL
EMPLOYERS, INC., a California
corporation,

    Debtors.

REAL TIME STAFFING, INC., a
California corporation; KOOSHAREM
CORPORATION, a California
corporation; NEW STAFF, INC., a
California corporation; KT, INC., a
California corporation; PAY

Bankruptcy Case No. 8:07-bk-10992-RK
(Jointly Administered and Substantively
Consolidated with Case No.'s 8:07-bk-
10994-RK and 8:07-bk-10995-RK)

Chapter 7

Adversary Case No.: 8:07-ap-01105-RK

DECLARATION OF RETAINED
EXPERT ADLAI CLIMAN RE:
PAYROLL TAXES

1

DECLARATION OF ADLAI CLIMAN

38219.001/4819-0068-4297v.1

EXHIBIT B, PAGE 25

SERVICES INC., a California )
corporation; PBT, INC., a California )
corporation; D. STEPHEN )
SORENSEN; and D. STEPHEN )
SORENSEN, an individual, )
)
    Plaintiffs, )
)
    v. )
)
COASTAL EMPLOYERS, INC., a )
California corporation; ROBERT J. )
ANDERSON, an individual, and DOES )
1 through 100, inclusive, )
)
    Defendants. )
)

I, Adlai Climan, declare:

1.    I am submitting this Declaration in support of Defendant and Counterclaimant, Karen S. Naylor, Chapter 7 Trustee, and Defendant Robert J. Anderson, Jr.'s position on the Payroll Taxes issues.

2.    The facts set forth in this Declaration are personally known to me and/or are based on information that has been presented to me or that I independently consulted.

4.    The Internal Revenue Code (IRC) provides legal liability for individuals and entities regarding the non-payment of withheld federal taxes. These may be viewed in IRC sections 3505 and 6772. The Internal Revenue Manual (IRM) provides guidelines to determine who is responsible for such non-payment and who may be asserted liability under these IRC sections.

5.    As a former Internal Revenue Service Revenue Officer responsible for field collection activity and such recommendation(s), and Settlement Officer for the Regional Office of Appeals responsible for conducting hearings in determining culpability regarding such recommendations, including recommendations for the Trust Fund Recovery Penalty (TFRP) under IRC section 6772, I have gained considerable

HART, KING COLD
A LAW CORPORATION
SANTA ANA SANDIPONT PROFESSIONA
FOURTH  200
CALIFO  92707
FLOOR

2

1    experience in identifying factual circumstances that must be taken into consideration
2    to determine liability pursuant to the IRC and IRM guidelines.

3         6.    I have been asked to form an opinion and prepare a written report on
4    what should be considered in determining the culpability of Real Time Staffing Inc.,
5    Koosharem Corporation, New Staff Inc., KT Inc., Pay Services Inc., and PBT Inc.
6    (hereinafter Select) for the non-payment of withheld taxes regarding the corporate
7    entity Coastal Employers Inc. a California corporation (hereinafter Coastal CA) as
8    well as determining the appropriate amount(s).

9         7.    My Qualifications:

10        Education: Bachelor of Arts – Queens College, Queens, NY – 1974;
11   Master of Business Administration – California State University at Northridge – 1989.

12        Work Experience: Internal Revenue Service Collection Division -
13   Revenue Officer, NYC, NY – 1974 to 1980; Internal Revenue Service Collection
14   Division - Revenue Officer, Los Angeles, CA – 1980 to 1987; Internal Revenue
15   Service Appeals Division – Settlement Officer, Los Angeles, CA – 1987 to 2008; and,
16   Tax Settlements and Resolutions – private practice – 2008 to present

17        8.    During my tenure with the IRS, I was an instructor at numerous training
18   classes for both Revenue Officers in the Collection Division and Settlement Officers
19   in the Appeals Division which included consideration of assertion of liabilities
20   regarding employment taxes, including the Trust Fund Recovery Penalty under IRC
21   section 6672 and liability under IRC section 3505.

22        9.    During my tenure with the Internal Revenue Service, I was also trained in
23   Employment Tax determinations regarding employee-independent contractor
24   reclassifications. I taught a number of classes on such matters within the IRS, and
25   handled any number of cases regarding such reclassifications.

26        10.    I have testified on several occasions in Tax Court as a witness regarding
27   cases that I handled as a Settlement Officer with the IRS, was called by the IRS to
28   testify on two occasions in Tax Court on their behalf as an expert witness in collection

HART, KING COLD
A PROFESSIONA LLAW CORPORATION
CALIFO SANDPOINT
SANTA 200 FOURTH LLAW
92707 FLOOR CORPORATION

3

DECLARATION OF ADLAI CLIMAN    EXHIBIT B, PAGE 27

procedures, and was provisionally accepted as a qualified expert witness in June 2010 in a Tax Court proceeding regarding IRS collection matters (Kreit Mechanical Associates Inc. v. Commissioner). A decision on the Kreit case has not as yet been rendered.

11.    I have utilized 24 hours in the preparation of this report. My billing rate for this was $250/hour. My time expenditure has included the securing and reviewing of transcripts, relevant court cases, procedural guidelines both federal and state, tax returns, affidavits, declarations, and company records, among others in addition to the report preparation.

My billing rate for deposition testimony is $250/hour, as is my fee for testimony at time of trial.

12.    Information I have reviewed to form this opinion:

        a.    Internal Revenue Transcripts of accounts for each of the corporate entities;

        b.    Copies of tax returns for each of the corporate entities, including Forms 941, 943, and 940;

        c.    Portions of the Internal Revenue Code and Internal Revenue Manual;

        d.    Trust Fund Recovery Penalty court cases;

        e.    Payroll records of Coastal CA including Form 941 and 940 tax returns, and spreadsheets of payroll payments and records of payments made, including the Declaration of Jennifer Gilbert dated June 10, 2010;

        f.    Declaration of Robert Anderson Jr. dated (I believe) July 3, 2007;

        g.    Supplemental Affidavit of Robert J. Anderson Jr. dated October 19, 2007;

        h.    Declaration of Robert Anderson Jr. dated June 10, 2010;

        i.    Correspondence between the California Employment Development Department and Robert Anderson Jr., and Coastal Employers Inc. (CA), including

4

DECLARATION OF ADLAI CLIMAN                    EXHIBIT B, PAGE 28

1    assessment proposal and Notice of Assessment for personal liability for unpaid taxes;

2            j.      Staff Servicing Agreement dated May 1, 2006 and marked as
3    Exhibit C;

4            k.      Joint Pretrial Order pages 30 and 31;

5            l.      IRS training material regarding employment tax reclassification
6    determinations;

7            m.      Declaration of Ian Kindberg dated November 20, 2009;

8            n.      Deposition of Ian Kindberg dated February 4, 2010;

9            o.      Stipulation of Facts re: Motion for Summary Adjudication re:
10   Payroll Taxes and Indemnification dated November 23, 2010; and

11           p.      Audio recording of Motion for Summary Judgment.

12       13.    Select has acknowledged that it withheld federal income tax, the
13   employee portion of Social Security (FICA) tax, state income tax, and state disability
14   insurance from the wages of the subject employees of Coastal CA. Select
15   acknowledges that it did not forward these amounts to Coastal CA for remission to the
16   Internal Revenue Service or the relevant State tax agencies, and did not make the
17   payment of the withheld taxes directly.

18       14.    The Internal Revenue Manual (IRM) provides general guidelines in
19   evaluating the actions of an entity regarding assertion of liability for failing to remit
20   withheld taxes. These IRM guidelines are, in part, as follows:

21       15.    Discussion of Trust Fund Recovery Penalty under IRC 6672 (For the IRS
22   Collection Division):

23           a.      5.17.7.1 (08-01-2010); Trust Fund Recovery Penalty: Overview

24           1.      IRC § 7501 provides that whenever any person is required to
25   collect or withhold any internal revenue taxes from any other person and to pay over
26   such tax to the United States, the amount of the tax shall be held in a special trust fund
27   for the United States. Trust fund taxes include employment taxes and certain types of
28   excise taxes.

HART, KING COLD
A
CALIFO SANDPOINT PROFESSIONA LLAW
92707 FOURTH CORPORATION
FLOOR
SANTA 200

2.    The Trust Fund Recovery Penalty (TFRP) is based on IRC § 6672(a), which provides as follows:

"Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax on the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.... "

b.    5.17.7.1.1 (08-01-2010); Persons Subject to the Trust Fund Recovery Penalty:

1.    The term "person" in section 6672 includes, but is not limited to, the following: officer or employee of a corporation; partner or employee of a partnership; member or employee of an LLC; corporate director or shareholder; another corporation; and surety or lender.

c.    5.17.7.1.3 (08-01-2010); Willfulness:

1.    Under IRC § 6672(a), the failure to collect or pay over trust fund taxes must be willful. Definition of willful — intentional, deliberate, voluntary, reckless, knowing (not accidental). No evil intent or bad motive is required. Domanus v. United States, 961 F.2d 1323 (7th Cir. 1992). To show "willfulness," the government must show that the responsible party was aware of the outstanding taxes and either deliberately chose not to pay the taxes or recklessly disregarded an obvious risk that the taxes would not be paid. Phillips v. United States, 73 F.3d 939, 942 (9th Cir. 1996).

16.    For the IRS Appeals Division:

a.    8.25.1.3.1(10-19-2007); Definition of a Responsible Person

1.    A "responsible person" is one who has the duty to perform or the power to direct the act of collecting, accounting for, or paying over trust fund taxes. When evaluating responsibility, consider the Supreme Court decision in Slodov

HART, KING COLD
A PROFESSIONAL LAW CORPORATION
200 SANTA
CALIFO SANDPOINT
92707 FOURTH FLOOR

v. United States, 436 U.S. 238, 78-1 USTC 9447 (1978). See also IRM 5.7.3 *Establishing Responsibility.*

2.    Most trust fund recovery penalty cases involve officers of corporations. However, a responsible person may be one or more of the following: an officer or employee of a corporation; a member or employee of a partnership; a corporate director or shareholder; a related controlling corporation; a lender, a surety, or any other person with sufficient control over funds to direct disbursement of the funds, or; in some cases, a person assuming control after accrual of the liability.

b.    8.25.1.3.2 (10-19-2007); Definition of Willfulness

1.    The trust fund recovery penalty is a civil penalty; so the degree of willfulness in failing to collect or pay over any tax leading to liability for this penalty is not as great as that necessary for criminal proceedings. "Willful" is defined as intentional, deliberate, voluntary, and knowing, as distinguished from accidental. "Willfulness" is the attitude of a responsible person who with free will or choice either intentionally disregards the law or is plainly indifferent to its requirements. See IRM 5.7.3 *Establishing Willfulness.*

17.    IRC section 7501(a) states as follows:

"(a) General rule.  Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

18.    The courts have held that any one of the duties, i.e. to collect, account for, or pay over the withheld taxes, may be considered a breach of the requirements of section 7501, and impose liability under IRC section 6672 on the party so charged:

"The phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit section 6672 to persons

HART, KING COLD
A PROFESSIONA L LAW CORPORATION
CALIFO SANDPOIN FOURTH FLOOR
SANTA 200 N
92707

7

1  responsible for paying over taxes that require collection (third party taxes) and not
2  limit it to persons in a position to perform all three functions with respect to the
3  specific taxes as to which the employer is delinquent." (Slodov v. US (Supreme
4  Court) 78-1 USTC 9447 at 84,204).

5      19.    I find that Select would meet the parameters described above both for
6  responsibility and willfulness in the non-payment of the withheld (trust fund) taxes. It
7  controlled the funds directly, both net payroll and the funds withheld from employee
8  paychecks. It forwarded to Coastal CA only sufficient funds to pay the net payrolls
9  due to the employees. It directly withheld and collected from the employee wages the
10 trust fund taxes, both federal and State, and retained these funds within the Select
11 bank account(s). Fully cognizant that funds were due to be paid over to the various tax
12 agencies, Select willfully chose to retain them rather than either pay them over to
13 Coastal CA for remission to the tax agencies, or pay them directly to the tax agencies.
14 Select has admitted this specifically, at the Motion for Summary Judgment, including
15 that it still has these withheld monies. At the Motion for Summary Judgment, Select
16 stated (and I re-phrase) that it did not believe that (as per IRC section 7501) "the
17 amount of tax so collected or withheld shall be held to be a special fund in trust for the
18 United States", but rather that it might be used to offset liabilities owed to Select by
19 Coastal CA. I find this logic on Select's part to be erroneous and self-serving to the
20 detriment of the coffers of the federal and State tax agencies.

21     20.    I have been advised that the Internal Revenue Service considered
22 assertion of the Trust Fund Recovery Penalty against Select as an entity, but at the
23 time of consideration, insufficient records were available to establish liability. This
24 dearth of information has changed significantly with the testimony and information
25 produced so far at trial, and I find that it now becomes apparent that Select was fully
26 culpable for the non-payment.

27     21.    A corporation, as an entity, may be held liable for the Trust Fund
28 Recovery Penalty under IRC section 6672; see Adams v. US (7th Cir.) 74-2 USTC

HART, KING & COLD
A
PROFESSIONAL LAW CORPORATION
SANTA 200
CALIFO SANDPOINT 92707 FOURTH FLOOR

1   9738; Meridian Industries v. US (US Dist. Ct., E. Dist. Mich.) 82-1 USTC 9327.

2       22.   Discussion of Liability under IRC section 3505.

3           a.   5.17.7.2.2 (08-01-2010).  Liability When Funds are Supplied —
4   IRC § 3505(b).

5               1.   IRC § 3505(b) provides that a lender, surety, or other person
6   who supplies funds to or for the account of an employer for the specific purpose of
7   paying wages of the employees of such employer may be personally liable for any
8   unpaid withholding taxes even though this person does not directly pay the
9   employees' wages.

10              2.   A person within the meaning of section 3505(b) includes the
11  following: a prime or general contractor who supplies funds directly to a subcontractor
12  to meet its net payroll with knowledge of the subcontractor's inability to pay its
13  withholding taxes. United States. Algernon Blair, Inc., 441 F.2d 1379 (5th Cir. 1971);
14  a shareholder, including a parent company of a subsidiary, who makes a capital
15  contribution or a direct loan, or who puts up collateral for a loan from a third party to
16  a corporation if the loan is to be used by the corporation to pay net wages. United
17  States v. Intercontinental Industries, Inc., 635 F.2d 1215 (6th Cir. 1980); a bank that
18  honors a customer's/employer's overdrafts for payroll checks. Fidelity Bank, N.A. v.
19  United States, 616 F.2d 1181 (10th Cir. 1980).

20      23.   Before a person can be liable under section 3505(b), the following two
21  conditions must exist.  The person must know that the advanced funds are to be used
22  for the payment of wages; this does not include an "ordinary working capital loan."
23  "Ordinary working capital loans" are ones that are made to enable the borrower to
24  meet current obligations as they arise; they are not earmarked for any particular
25  purpose.

26      24.   The supplier of funds must have "actual notice or knowledge" at the time
27  such funds are advanced that the employer does not intend to, or will not be able to
28  make timely payment or deposit of taxes required to be withheld. The lender has

HART, KING & COLD
A PROFESSIONAL LAW CORPORATION
SANTA CALIFO SANDPONT PROFESSIONA LLAW
92707 FOURTH FLOOR CORPORATION
200

9

1  actual notice or knowledge of any fact from the time such fact is brought to its

2  attention or would have been brought to its attention if the organization had exercised

3  due diligence. See United States v. Park Cities Bank and Trust Co._, 481 F.2d 738 (5th

4  Cir. 1973).

5    25.   It is the Service's position that notice to, or knowledge by, any agent of a

6  third-party supplier of funds is imputed to the third party. This is true even if the agent

7  conceals the facts from the supplier. United States v. Park Cities Bank and Trust Co.,

8  481 F.2d 738 (5th Cir. 1973).

9    26.   Under IRC § 3505(b), the liability of the third party may not exceed 25

10  percent of the amount supplied to the employer for the specific purpose of paying

11  wages.

12    27.   The 25% limitation applies to accrued interest. O'Hare v. United States,

13  878 F.2d 953 (6th Cir. 1989).   Example: A lender advances $100,000 to Employer A

14  for the purpose of paying net wages. The employer fails to pay withholding taxes, and

15  is assessed a liability of $25,000 plus an additional $10,000 in accrued interest. The

16  Service may file suit against the lender for $25,000, which is 25% of the amount

17  supplied to the lender. If the assessment had been $20,000 plus an additional $10,000

18  in interest, the Service still could have brought suit for $25,000 ($20,000 in tax and

19  $5,000 in accrued interest).

20    28.   The lender's liability does not include penalties that the Service may

21  impose on the employer.  The employer remains responsible for filing returns (Form

22  941).   Payments by the lender of withholding taxes reduces the liability of the

23  employer. Similarly, payments by an employer of the withholding taxes reduces the

24  liability of the lender.

25    29.   Again, I find that Select would meet the parameters described above

26  regarding supplying funds only sufficient to meet net payrolls while being fully

27  cognizant that Coastal CA "does not intend to, or will not be able to make timely

28  payment or deposit of taxes required to be withheld". Select specifically withheld and

HART,
KING
COLD

A
CALIFO SANDPORN PROFESSIONA
FOURTH    LLAW
FLOOR  CORPORATION

SANTA    200
CALIFO SANDPORN
92707

DECLARATION OF ADLAI CLIMAN
EXHIBIT B, PAGE 34

retained these tax funds, both federal and State, leaving Coastal CA without the means to make the requisite tax payments. At the Motion for Summary Judgment, Select argued that Coastal should have made the tax payments from the "millions of dollars" that had been paid previously to Coastal CA. This argument on the part of Select has no basis, as Select had no direct knowledge as to what amount of cash funds might be available to Coastal CA at the time the taxes were due to be paid. The amount of withheld funds alone due to be paid over to the IRS and EDD total in excess of $1.7 million (see computations below in #2). I would find it unlikely at best that Coastal CA would have such a sum available at short notice for an unexpected expenditure in tax payment(s).

30.     It is to be noted that the statute of limitations has not expired regarding assertion of liability under IRS section 3505, and that the IRS, should it so choose, may still proceed against Select.

31.     5.17.7.2.3 (08-01-2010); Collection of Liabilities under IRC §§ 3505(a) and (b).

        a.     Under both IRC §§ 3505(a) and (b), if the person liable does not voluntarily satisfy the liability, the government may collect such liability by a court proceeding only.

               1.     The suit must be instituted within 10 years after the assessment against the employer.   The assessment dates as shown on the IRS transcripts for the subject tax periods (as filed by Coastal CA) are as follows:

941 – 12/31/06:     4/23/07

941 – 3/31/07:     7/9/07

940 – 12/31/06:     5/7/07

32. The staffing agreement between Coastal CA and Select required Select to "immediately segregate and pay to all responsible taxing and other government authorities all payroll taxes, Social Security taxes, federal and state withholding taxes,

HART, KING COLD
A CALIFO SANDPOINT PROFESSIONA L LAW CORPORATION
200 FOURTH FLOOR
SANTA 92707

11

DECLARATION OF ADLAI CLIMAN

EDD and SDI payments, and all other such payments withheld from an employee's paycheck on behalf of CEI with regard to all employees covered under this Agreement contemporaneously with issuing the paycheck to the employees...." (Staff Servicing Agreement dated 5/1/2006, para. 1i). This language and responsibility was also stipulated to by both parties in the Stipulation of Facts re: Motion for Summary Adjudication re: Payroll Taxes and Indemnification dated November 23, 2010 (page 5, number 8).

33.    Select had previously complied with the requirement to remit all payroll monies, including withheld taxes, through the 3rd quarter of 2006. This was stipulated to by both parties in the Stipulation of Facts re: Motion for Summary Adjudication re: Payroll Taxes and Indemnification dated November 23, 2010 (page 10, number 15). Select failed to make the required payments to the IRS and EDD beginning 1/22/2007 for the remnant of the 4th quarter of 2006 (for which return was due to be filed and fully paid on 1/31/2007) and the 1st quarter of 2007.

34.    An analysis of the subject tax periods during the time Select failed to remit the withheld funds to Coastal CA is as follows as regards tax as reported on the returns, and the withheld amounts:

| Forms 941 | 4th Q 2006 | 1st Q 2007 |
|---|---|---|
| Tax on Return | 8,794,411 | 2,198,484 |
| Payments | 667,077 10/11/06 | 433,231 1/10/07 |
|  | 672,713 10/18/06 | 526,692 1/17/07 |
|  | 676,591 10/25/06 | 689,437 1/24/07 |
|  | 722,354 11/1/06 |  |
|  | 712,500 11/8/06 |  |
|  | 731,310 11/15/06 |  |
|  | 704,119 11/22/06 |  |
|  | 755,129 11/29/06 |  |
|  | 442,295 12/6/06 |  |
|  | 701,549 12/13/06 |  |
|  | 663,227 12/20/06 |  |
|  | 702,875 12/28/06 |  |

HART, KING & COLD
A PROFESSIONAL LAW CORPORATION
SANDPOINT
200
SANTA CALIFO
FOURTH FLOOR
92707

12

DECLARATION OF ADLAI CLIMAN

607,185 1/4/07
500 5/6/08 TFRP case adj.
500 5/6/08 TFRP case adj.

| Penalties | 4th Q 2006 | 1st Q 2007 |
|---|---|---|
| FTD | 15,677 | 54,912 |
|  | 1,766 | 27,456 |
| Late payment | 530 |  |
| Pen. accrued | 8,303 | 137,280 |
| Interest | 640 | 8,488 |
| Int. accrued | 12,606 | 199,702 |
| Current Balance Owed | 73,859 | 976,463 |

35.    For the 4th quarter of 2006, $35,334 has not been paid over in tax by Coastal CA, against which the above-noted penalties and interest have been charged. The return for the 941 for the 4th quarter of 2006 reported unpaid taxes of $35,334; the amount of above, if one subtracts all penalties and interest from the total amount due is $34,337. This is due to rounding in the analysis, and discounting the (2) $500 adjustments from TFRP payments. The only FTD which was paid in for less than the amount owed for the payroll period was the last deposit of the quarter. Schedule B of the Form 941 for 4th quarter 2006 shows that it should have been $642,520 where only $607,185 was deposited.

36.    For the 1st quarter of 2007, $549,124 in tax has not been paid over, again, against which the above-noted penalties and interest have been charged. The analysis chart above shows three federal tax deposits which Schedule B of the Form 941 confirms were for the first 3 weeks of the quarter. Coastal CA ceased paying payroll at the end of January 2007, and one final deposit of $639,394 was due for the fourth week of January.

37.    Note: IRS records show that the tax as reported on the return was $2,198,484. Coastal CA amended this return on 3/10/2010 to correctly report tax of

HART, KING COLD
A
CALIFO SANDPOINT PROFESSIONA L LAW CORPORATION
SANTA   200
92707   FOURTH
FLOOR

13

1  $2,288,755, an increase of $90,271. IRS records, to date, do not show this amended,

2  increased amount, hence the discrepancy between what the IRS records show as

3  unpaid tax and what the amended Form 941 shows as unpaid tax for the quarter

4  (639,394 – 549,124 = 90,270).

5      38.    941 - 12/31/2006: Spreadsheets provided by Coastal CA showed a

6  significant number of FTDs made, which matched the payroll taxes due for this tax

7  period. The cumulative figure(s) are shown below under "Total payments...".

8      39.    Tax as shown on Return:

9

10 | ER FICA | EE FICA | WHT | Total T/F |
| 3,565,245.09 | 3,565,245.10 | 1663,921.68 | 5,229,166.78 |

11

12 Total payments as made by payroll period (see spreadsheet):

13 | ER FICA | EE FICA | WHT | Total T/F |
14 | 3,553,464.12 | 3,553,440.58 | 1,652,017.43 | 5,205,458.01 |

15 Difference:

16

17 | ER FICA | EE FICA | WHT | Total T/F |
| 3,565,245.09 | 3,565,245.10 | 1,663,921.68 | 5,229,166.78 |
18 | <3,553,464.12> | <3,553,440.58> | <1,652,017.43> | <5,205,458.01> |
| 11,780.97 | 11,804.52 | 11,904.25 | 23,708.77 |

19

20      Unpaid Trust Fund amount:      23,708.77

21

22      40.    941 - 3/31/2007: This period had one missing Federal Tax Deposit

23  (FTD). All Other FTDs as required for this period were made. The return as originally

24  submitted was "estimated" return to include the last (unpaid) pay-period, as payroll

25  records were not available. Coastal prepared and filed with the Internal Revenue

26  Service a correct return from actual payroll records regarding this pay-period:

27  As originally reported:    549,123.04 (estimated return)

28  As amended:            620,058.56

38219.001/4819-0068-4297v.1

DECLARATION OF ADLAI CLIMAN

EXHIBIT B, PAGE 38

HART, KING COLD
A  CALIFO SANDPOINT PROFESSIONA  L LAW
92707  FOURTH  N  CORPORATION
SANTA  200  FLOOR

Breakdown of amended final payroll period:

| ER FICA | EE FICA | WHT | Total T/F |
|---------|---------|-----|-----------|
| 254,141.70 | 254,141.70 | 111,775.16 | 365,916.86 |

Correctly, under the above analysis of responsibility, Select would be liable for the unpaid trust funds of this one (now corrected) pay period:

Unpaid Trust Fund amount:      $365,916.86

41.    As regards the unpaid taxes due to the State of California EDD, all of them are considered collected, trust fund monies. Robert Anderson Jr. was issued a Notice of Assessment by the EDD dated 1/17/2008 as regards the unpaid State taxes of Coastal CA for the period 4/1/06 through 1/20/07. The tax liability for the State of California EDD is as follows, as per this Notice of Assessment is:

| Unemployment Insurance: | 849,114.61 |
|---|---|
| Employment Training Tax: | 111,193,13 |
| Disability Insurance: | 212,288.31 |
| Personal Income Tax: | 143,189.54 |
| | 1,315,785.59 |

42.    The records provided to me by Coastal CA show that they determine Select's unpaid EDD tax responsibility to be as follows for 2006 and 2007:

| 2007 | 362,125.41 |
|---|---|
| 2006 | 768,515.03 |
| | 1,130,640.44 |

43.    I have not been provided any records which may specifically support or refute this amount. This amount is somewhat less than the amount as asserted against Anderson in the above-noted Notice of Assessment. The difference may be attributable to the amount Coastal CA acknowledges as being directly responsible for in non-payment for periods preceding those where Select ceased paying over the withheld funds (e.g. the Notice of Assessment begins as early as the 2nd quarter 2006, but does not break out the liability into separate tax periods).

15

HART, KING COLD
A CALIFO SANDPOINT PROFESSIONA LLAW CORPORATION
SANTA 200 CALIFO SANDPOINT FOURTH FLOOR 92707

44.    The Internal Revenue Code defines employer in sections 3231(a), 3306(a), and 3401(d). IRC section 3401(d) states as follows:

"(d) Employer.  For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that: (1) if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" (except for purposes of subsection (a)) means the person having control of the payment of such wages, and (2) in the case of a person paying wages on behalf of a nonresident alien individual, foreign partnership, or foreign corporation, not engaged in trade or business within the United States, the term "employer" (except for purposes of subsection (a)) means such person."

45.    The services were performed for Select and payment of the wages was controlled by Select.

46.    The Internal Revenue Code also uses the common law standard, developed under the law of agency, to determine whether a worker is an employee. Section 3121(d)(2) of the Internal Revenue Code states that any individual who has the status of an employee "under the usual common law rules applicable in determining the employer-employee relationship has the status of an employee" for employment tax purposes.

47.    Under the common law standard, the right to direct and control the worker's activities is the critical element in determining status (United States v. W.M. Webb Inc. 397 U.S. 179 (1970).

48.    This developed into a list of "20 Common Law Factors" that were used as a training aid by the Internal Revenue Service and Social Security Administration, and were first published in Rev. Rul. 87-41, 1987-1 C.B. 296. This is not a legal standard, but is described in Rev. Rul. 87-41 "as an aid to determining whether an individual is an employee under the common law rules". These "common law rules", generally used in determining whether a worker is an employee or an independent

HART, KING & COLD
A PROFESSIONAL LAW CORPORATION
200 SANDPOINT FOURTH FLOOR
SANTA CALIFO 92707

16

DECLARATION OF ADLAI CLIMAN        EXHIBIT B, PAGE 40

1  contractor, may also be used in determining who is the actual employer of the worker.
2  The 20 Common Law Factor test centers around the control exercised (or not) by the
3  putative employer. The primary tenet is that if the person for whom he works has the
4  right to direct and control him in the way he works, both as to the final results and as
5  to when, where, and how the work is to be done, then he is an employee of that
6  employer. The employer need not actually exercise control; it is sufficient that he has
7  the right to do so. Factors or elements showing such control include requirement by
8  the worker to comply with instructions, training of the worker by the employer,
9  establishment by the employer of set working hours, doing the work on premises
10 provided by the employer, payment to the worker by the hour, week, or month,
11 furnishing the worker with tools necessary for the performance of the job, and the
12 right to fire the worker.

13    49.    The Staff Servicing Agreement states that: "The parties acknowledge and
14 agree that CEI [Coastal CA] is the employer of record under this Agreement...." (Staff
15 Service Agreement, para. 1).

16    50.    This, however, is undercut by the later language of this same Agreement:
17 "Client Companies [Select] shall remain solely responsible for the following matters:

18         b.    Preparing, withholding and payment of all required federal income
19 and related taxes;

20         c.    Preparing and filing of all required forms 940, 941 and similar
21 Federal Tax forms;

22         d.    Preparing and filing of all required State and Federal
23 Unemployment Insurance Reports and payment of all sums due as indicated thereon;...

24         g.    Either directly or through the efforts of Client companies'
25 customers, direction and supervision of all Workers in the course of fulfilling their job
26 assignments, including establishment of performance standards for such Workers and
27 provision of all customary tools and/or other equipment necessary for performance of
28 required tasks;

1   h.   Adherence to all safety laws, regulations, rules and guidelines

2 existing specifically in Client Companies' business and industry generally and as

3 required by any government agencies or interested insurance carriers;...

4   j.   To evaluate the performance of each Worker periodically and to

5 discharge those Workers whose performance is unsatisfactory to Client

6 Companies;...."

7   (Staffing Service Agreement dated May 1, 2006, para. 6)

8   51.   The above, in essence, states that although Coastal CA will be shown as

9 the employer on the forms submitted to the federal and State agencies, Select is

10 actually the true employer, with Select, not Coastal CA, having responsibility for

11 direct oversight of employee job performance and working conditions, the right to fire

12 employees, and payment of all taxes, including the employer portion of FICA, and all

13 federal and State unemployment taxes.

14   52.   In the Stipulation of Facts re: Motion for Summary Adjudication re:

15 Payroll Taxes and Indemnification dated November 23, 2010, the parties have agreed

16 on the fact that according to the Staff Servicing Agreement, Coastal CA was to

17 "provide consulting assistance" to Select regarding IRS forms, the preparation of tax

18 returns, and worker safety programs. At no point in the Staff Servicing Agreement

19 does Coastal CA purport to be, or is shown as, the employer of the subject workers.

20   53.   In his Deposition, Ian Kindberg states that: "payroll checks are cut as a

21 part of the contractual arrangement with Coastal. So Select would cut the checks and

22 summarize the data and provide them for Coastal for filing".

23   54.   This, again, points convincingly towards Select as the employer in fact if

24 not in name. The paychecks paid to the employees bore the name Select. If these same

25 employees were asked who they were employed by, I would find it likely that their

26 answer would be "Select".

27   55.   Select had previously complied with the requirement to remit all payroll

28 monies, including the non-withheld employer tax for Federal Unemployment (FUTA),

38219.001/4819-0068-4297v.1

DECLARATION OF ADLAI CLIMAN   EXHIBIT B, PAGE 42

HART, KING COLD
A CALIFO SANDPOINT PROFESSIONA L.LAW CORPORATION
SANTA 200 FOURTH FLOOR
92707

1 through the 3rd quarter of 2006. This was stipulated to by both parties in the
2 Stipulation of Facts re: Motion for Summary Adjudication re: Payroll Taxes and
3 Indemnification dated November 23, 2010 (page 11, number 17). In the Deposition of
4 Ian Kindberg dated February 4, 2010, he acknowledges that during 2006 (and prior)
5 Select remitted taxes directly to the requisite tax agencies and not through Coastal CA
6 (page 44, line 21). In his Declaration dated 11/20/2009, Kindberg states that his
7 position with Select was Assistant Controller, and that his duties included "the day to
8 day managing of the accounting department". As such, I would find him
9 knowledgeable as to the tax payment practices of Select.

10   56.   Note the payments as made to the 940 for 2006:

Tax on Return   1,029,721

Payments   318,353 5/1/06
          307,183 8/1/06
          228,459 10/31/06

57.   As was required, payment was made at the end of each of the first three quarters of the year; the unpaid FUTA tax is solely for the 4th quarter of 2006.

58.   The current unpaid federal tax liabilities for Coastal CA are as follows:

| Forms 941 | 941 4th Q 2006 | 941 1st Q 2007 | 940-2006 |
|---|---|---|---|
| Tax on Return | 8,794,411 | 2,198,484 | 1,029,721 |
| Total Payments | 8,758,922 | 1,649,360 | 853,995 |
| Tax Liability | 35,489 | 549,124 | 175,726 |

59.   Coastal CA also estimates that there is $91,128.89 due in FUTA tax for 2007, however no return, the Form 940, for 2007 has been filed to date.

60.   The State of California Employment Development Department has

38219.001/4819-0068-4297v.1

DECLARATION OF ADLAI CLIMAN      EXHIBIT B, PAGE 43

1  guidelines similar to those of the IRS regarding the assertion against responsible

2  parties for unpaid trust-fund monies (i.e. state withholding tax, disability insurance,

3  unemployment insurance, employment training tax). A portion of their guidelines

4  states as follows:

5  "Section 1735 of the UIC provides that any person having charge of the affairs

6  of a corporation, association, registered limited liability partnership, or foreign limited

7  liability partnership or limited liability company employing unit, who willfully fails to

8  pay the required tax contributions or withholdings as required by the code, shall be

9  personally liable for the amounts due, plus applicable penalty and interest charges."

10  61.    Following the guidelines for determining the true employer of the

11  employees, as well as its stipulated contractual obligation to do so, Select would be

12  responsible for the unpaid state taxes in their entirety.

13  62.    Robert Anderson Jr. was issued a Notice of Assessment by the EDD

14  dated 1/17/2008 as regards the unpaid State taxes of Coastal CA for the period 4/1/06

15  through 1/20/07 in the following amounts:

16

17  Unemployment Insurance:              849,114.61
    Employment Training Tax:             111,193,13
18  Disability Insurance:                212,288.31
19  Personal Income Tax:                 143,189.54
    Penalty:                             191,799.13
20  Interest to 1/25/08:                 136,560.15
21  Total Amount Due:                  1,644,144.87

22

23  63.    The tax liability for the State of California EDD is as follows, as per this

24  Notice of Assessment is:

25  Unemployment Insurance:              849,114.61
    Employment Training Tax:             111,193,13
26  Disability Insurance:                212,288.31
27  Personal Income Tax:                 143,189.54
                                       1,315,785.59

28

38219.001/4819-0068-4297v.1

DECLARATION OF ADLAI CLIMAN

EXHIBIT B, PAGE 44

HART, KING COLD
A
CALIFO SANDPOINT PROFESSIONA LLAW
FOURTH  CORPORATION
FLOOR
SANTA    200
CALIFO SANDPOINT PROFESSIONA
92707

64.    The proximate cause of the penalties and interest being incurred for both the federal and State tax liabilities was Select's failure to remit the required withheld funds and to pay the employer portion of the taxes as required. Select was contractually obligated to do so, had previously done so, and failed to do so beginning January 22, 2007. There is no evidence that Coastal CA had the funds with which to "cover" Select's failure to pay the taxes as appropriate. As such, I would find Select to be liable for payment of all penalty and interest charges incurred and imposed on Coastal CA. The penalties imposed against Coastal CA for federal tax liabilities are as follows:

|  | 941 | 941 | |
|---|---|---|---|
| Penalties | 4th Q 2006 | 1st Q 2007 | 940-2006 |
| FTD | 15,677 | 54,912 | 21,502 |
|  | 1,766 | 27,456 | |
| Late payment | 530 | | 2,636 |
| Pen. accrued | 8,303 | 137,280 | |
| Interest | 640 | 8,488 | 3,736 |
| Int. accrued | 12,606 | 199,702 | 67,541 |

65.    The penalties and interest imposed regarding the unpaid tax liability for the State of California EDD are as follows, as per the Notice of Assessment issued by the EDD dated 1/17/2008 as regards the unpaid State taxes of Coastal CA for the period 4/1/06 through 1/20/07:

| | |
|---|---|
| Penalty: | 191,799.13 |
| Interest to 1/25/08: | 136,560.15 |
| | 328,358.28 |

///

///

///

///

38219.001/4819-0068-4297v.1

DECLARATION OF ADLAI CLIMAN

HART, KING COLD
A PROFESSIONAL LAW CORPORATION
200 SANTA
CALIFO SANDPOINT FOURTH FLOOR
92707

1    66.    There will be approximately 3½ years additional interest added to this

2  figure for the total current amount due to the EDD.

3    I declare under penalty of perjury under the laws of the state of California that

4  the foregoing is true and correct to the best of my belief, and if called and sworn as a

5  witness, I could and would competently testify thereto.  Executed this 10th day of

6  June      , 2011, at  Ben Lomond  ,  California      .

7

8

9  Adlai Climan

10

11

12

HART, KING & COLDREN
PROFESSIONAL LAW CORPORATION
200 SANDPOINTE, FOURTH FLOOR
SANTA ANA, CALIFORNIA 92707

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38219.001/4819-0068-4297v.1                    DECLARATION OF ADLAI CLIMAN          EXHIBIT B, PAGE 46

## PROOF OF SERVICE

STATE OF CALIFORNIA          )
                            ) ss.
COUNTY OF LOS ANGELES        )

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 5820 Canoga Avenue, Suite 250, Woodland Hills, California 91367.

On August 4, 2011, I served the foregoing document described as **DECLARATION OF DREW E. POMERANCE IN SUPPORT OF PLAINTIFFS' AND COUNTER-DEFENDANTS' MOTION IN LIMINE NO. 1 TO PRECLUDE EXPERT TESTIMONY FROM ADLAI CLIMAN** on the interested parties in this action who are identified on the attached service list, using the following means of service:

☒    **BY PERSONAL SERVICE:** I placed a true copy of the foregoing document in sealed envelopes to be hand delivered to the following persons on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service. The foregoing document was personally served on the following parties:

RICHARD P GERBER                    D. EDWARD HAYS
Hart King & Coldren LLP             CYNTHIA S. CONNERS
200 Sandpointe Dr 4th Fl            Marshack Hays LLP
Santa Ana, CA 92707                 5410 Trabuco Road, Suite 130
*Attorneys for Defendant,*          Irvine, California 92620-5749
*ROBERT J. ANDERSON, JR.*           *Attorneys for Defendant and Counterclaimant,*
                                    *KAREN S. NAYLOR, Chapter 7 Trustee*

☒    **BY EMAIL:** I caused such documents listed above to be transmitted via e-mail to the following persons on whom it is to be served at the email address as last given by that person on any document which he or she filed in this action and served upon this office or otherwise last used to transmit email to this office.

***Counsel for serving party is not registered with this Court's ECF, which would serve these entities, as such this document is being e-mailed to:***
- Evan C Borges eborges@irell.com;
  bblythe@irell.com
- Evan C Borges bblythe@irell.com
- Rebecca J Callahan
  rcallahan@callahanlaw.biz
- Robert P Goe kmurphy@goeforlaw.com;
  rgoe@goeforlaw.com;
  mforsythe@goeforlaw.com

- D Edward Hays ehays@marshackhays.com
- Karen S Naylor (TR) acanzone@burd-
  naylor.com; knaylor@ecf.epiqsystems.com
- United States Trustee (SA)
  ustpregion16.sa.ecf@usdoj.gov

***Via Email Pursuant to Written Agreement:***
- Richard Gerber rgerber@hkclaw.com

☒    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on August 4, 2011, at Woodland Hills, California.

_____
LOURDES CASAS