1  Drew E. Pomerance, Esq. (SBN 101239)
   John W. Hurney, Esq. (SBN 161617)
2  **ROXBOROUGH, POMERANCE, NYE, & ADREANI LLP**
   5820 Canoga Avenue, Suite 250
3  Woodland Hills, California 91367
   Telephone:  (818) 992-9999
4  Facsimile:  (818) 992-9991
   dep@rpnlaw.com
5  jwh@rpnalaw.com

6  Attorneys for Plaintiffs/Cross-Defendants, REAL TIME STAFFING, INC.,
   KOOSHAREM CORPORATION, NEW STAFF, INC.,
7  KT, INC., PAY SERVICES, INC. PBT, INC., and
   D. STEPHEN SORENSEN

8                    **UNITED STATES BANKRUPTCY COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

10

| | |
|---|---|
| IN RE: | Case No. 8:07-BK-10992 RK |
| CONSOLIDATED EMPLOYER MANAGEMENT SOLUTIONS, A CALIFORNIA CORPORATION | (Jointly administered with Case Nos.: 8:07-bk-10994 and 8:07-bk-10995) |
| | Chapter 7 Proceeding |
| DEBTOR AND DEBTOR-IN-POSSESSION | Adv. No. 8:07-ap-01105 RK |
| REAL TIME STAFFING, INC.  , a California corporation, KOOSHAREM CORPORATION, a California corporation, NEW STAFF, INC., a California corporation, KT, INC., a California corporation, PAY SERVICES, INC., a California corporation, PBT, INC., a California corporation, and D. STEPHEN SORENSEN, an individual, | **PLAINTIFFS' AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO PRECLUDE EVIDENCE REGARDING ANY CLAIM THAT SELECT OWES FURTHER MONIES AS COLLATERAL AND/OR PRECLUDE RECOVERY OF DAMAGES ON A CLAIM COLLATERAL IS OWED** |
| Plaintiffs, | Hearing Date:  August 25, 2011 |
| v. | Time: 9:00 a.m.. |
| | Ctrm:  5D |
| COASTAL EMPLOYERS, INC., a California corporation, ROBERT J. ANDERSON, an individual, and Does 1 through 100, inclusive, | Courtroom: Hon. Robert Kwan |
| Defendants. | |

                                    i

1 | KAREN S. NAYLOR, Chapter 7 Trustee (In Place of COASTAL EMPLOYERS, INC., a
2 | California corporation),

3 |           Counter-Claimant,

4 |      v.

5 | KOOSHAREM CORPORATION, PROFESSIONAL BUSINESS
6 | TECHNOLOGIES, INC., aka PBT, INC; NEW STAFF, INC., KT, INC., PAY
7 | SERVICES, CORP., REAL TIME STAFFING SERVICES, INC., D.
8 | STEPHEN SORENSEN, an individual, and ROES 1 through 100, inclusive.

9 |           Counter-Defendants.

10

11

12 **PLEASE TAKE NOTICE** that on August 25, 2011, at 9:00 a.m., or as soon as the

13 matter may be heard, Plaintiffs/Cross-Defendants, Real Time Staffing, Inc., Koosharem

14 Corporation, New Staff, Inc., Kt, Inc., Pay Services, Inc. PBT, Inc., and D. Stephen

15 Sorensen (hereinafter collectively referred to as Plaintiff and/or "Select") will, and hereby

16 do, move the Court pursuant to this motion in limine for an Order precluding Defendant and

17 Counter Claimant, Karen S. Naylor, Chapter 7 Trustee, and Defendant Robert J. Anderson,

18 Jr., (hereinafter collectively referred to as "Coastal") from submitting evidence and seeking

19 recovery of any monies allegedly owed as collateral on the unresolved Workers'

20 Compensation claims.  There is no evidence that Coastal has paid or ever intends to pay any

21 monies as collateral to AIG, nor is there any evidence that collateral is owed at all.  Finally,

22 since the conditions for requiring collateral have not occurred, no claim for such can be

23 made.

24 **PLEASE TAKE FURTHER NOTICE** that pursuant to LBR 9013-1(f):

25 [E]ach interested party opposing, joining, or responding to the motion must

26 file and serve on the moving party and the United States trustee not later

27 than 14 days before the date designated for hearing either:

28

SELECT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO PRECLUDE EVIDENCE REGARDING ANY
CLAIM THAT SELECT IS OWED FURTHER MONIES AS COLLATERAL AND/OR PRECLUDE RECOVERY OF
DAMAGES ON A CLAIM COLLATERAL IS OWED

1     (1)    A complete written statement of all reasons in opposition thereto or

2             in support or joinder thereof, declarations and copies of all

3             photographs and documentary evidence on which the responding

4             party intends to rely, and any responding memorandum of points and

5             authorities. The opposing papers must advise the adverse party that

6             any reply to the opposition must be filed with the court and served on

7             the opposing party not later than 7 days prior to the hearing on the

8             motion; or

9

10     (2)    A written statement that the motion will not be opposed.

11       This Motion is based on this Notice of Motion and Motion, the accompanying

12  Memorandum of Points and Authorities, the records and files of this matter, and all other

13  matters of which the Court may take judicial notice.

14

15  Dated:  August 4, 2011       **ROXBOROUGH, POMERANCE, NYE, & ADREANI LLP**

16

17

18             By:_____
                 Drew E. Pomerance, Esq.

19                 Attorneys for Plaintiffs//Cross-Defendants, REAL

20                 TIME STAFFING, INC.   , KOOSHAREM
                 CORPORATION, NEW STAFF, INC., KT, INC.,

21                 PAY SERVICES, INC. PBT, INC., and D.
                 STEPHEN SORENSEN

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

By this motion in limine, Plaintiff and Cross-Defendant, Select, seeks to preclude Defendant and Counter-Claimant, Karen S. Naylor, Chapter 7 Trustee, and Defendant Robert J. Anderson Jr. (collectively referred to as "Coastal") from submitting any evidence or seeking recovery of any monies allegedly owed as collateral on the unresolved workers' compensation claims.  There is no evidence that Coastal has paid or ever intends to pay any monies as collateral to any of the insurance carriers, nor is there any evidence that any collateral is owed at all.  Finally, since the conditions for requiring collateral have not occurred, no claim for such can be made.

**I.      INTRODUCTION**

As set forth in the Joint Pretrial Order ("JPTO"), Coastal seeks to recover from Select monies it claims represents collateral for the workers' compensation claims.  See JPTO, p. 36, ¶ 75.  However, Coastal has not paid any claimed collateral to the workers' compensation carriers, nor is any collateral even due.  In fact, Coastal vigorously contends that no collateral is due.  Finally, the conditions which must occur in order to warrant any payment of collateral have never occurred.  As such, Coastal is not entitled to any payments of collateral from Select and Select requests that Coastal be precluded from introducing any evidence on this issue.

**II.     COASTAL IS NOT ENTITLED TO ANY SO-CALLED COLLATERAL**

Under each of the contracts, there are several provisions that discuss the payment of collateral.  It is undisputed that the collateral represents amounts of money that are designed to fund the losses from workers' compensation claims.  Under each of the contracts, Coastal is not entitled to retain any of the money designated as collateral.  All of that money is to be used to pay losses to the workers' compensation insurance carriers.  To the extent that there is more collateral than needed, that money is to be returned to Select under each of the contracts.  Accordingly, while the contracts do give Coastal the right to seek additional amounts of money in collateral from Select, Coastal does not get to keep that money for its own purposes.  That money is either paid over to the insurance carrier or ultimately returned

1

1   to Select if it is not used to pay claims.  In essence, Coastal is nothing more than a pass-

2   through entity, as any payment of collateral by Select is not designed to put any additional

3   money into Coastal's bank account.  To the extent collateral was ever required, it was only for

4   the payment of losses.

5   **III.    THE CONDITIONS UNDER WHICH COLLATERAL IS TO BE PAID**

6          **NEVER OCCURRED**

7          Under each of the contracts, Coastal was required at the six month mark following

8   expiration of the program year to obtain an independent actuary, subject to Select's approval,

9   so as to perform an analysis for the purposes of assessing whether a collateral account was

10  appropriate.  Under these yearly audits, if the account is over collateralized, Select was

11  entitled to return of money.  If there was not enough collateral in the account, Select was

12  obligated to make payments.

13         Select is not, however, obligated simply to pay over monies as collateral to Coastal

14  without Coastal also performing its obligation under the contracts to obtain an independent

15  audit.  Under the 2004 Agreement, ¶14 provides that Coastal must undertake to obtain an

16  audit six months after the one year anniversary of the agreement.  It did not do so.  Pursuant

17  to ¶3(c) of the 2005 Staffing Agreement, Coastal was likewise obligated to obtain an audit six

18  months after the one year anniversary of that agreement.

19         According to well-established rules of contractual interpretation, these contracts must

20  be read in their entirety, giving effect to the entire contract and not isolating certain

21  provisions.  If one reads these contracts in their totality, it is clear that Coastal is not entitled

22  to retain the collateral, and that in any event, additional payments of collateral by Select are

23  conditioned upon having yearly independent audits to determine the appropriateness of the

24  collateral account.

25         Ironically, Coastal itself believes that no collateral whatsoever is owed to AIG.

26  Attached hereto as Exhibit A is a true and correct copy of a Declaration of Robert Anderson,

27  along with Coastal's actuarial reserve analysis conducted in March 2007, which sets forth

28  Coastal's position that AIG is actually holding more than $2 million in excess collateral.

2

1      Therefore, if AIG is holding millions of dollars of excess collateral as Mr. Anderson

2  swears under oath, then as a matter of law, Select could not possibly owe any additional

3  amounts of money as collateral.

4  **IV.  UNTIL COASTAL PAYS ADDITIONAL AMOUNTS TO ITS CARRIERS,**

5        **IT IS NOT ENTITLED TO BE INDEMNIFIED BY SELECT**

6      Coastal has not paid any amounts of collateral to any of the workers' compensation

7  insurance companies.  As such, that it cannot claim any indemnity from Select.  California

8  Civil Code §2778(2) specifically states that "upon an indemnity against claims, or demands,

9  or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not

10  entitled to recover without payment thereof."  As Witkin explains, a party seeking indemnity

11  must allege "facts showing the loss sustained or liability incurred by the indemnity within the

12  terms of the contract."  5 Witkin, California Procedure, (5th at 2008) "Pleading," § 925 at p.

13  339.  The cause of action does not arise until the party claiming indemnity has actually paid

14  the obligation.

15      In this case, Coastal has paid nothing.  Thus, even if the insurance companies had

16  conducted viable audits and even if they had determined that additional collateral was due,

17  until Coastal pays that amount of money out of its own pocket, it is not entitled to be

18  indemnified by Select.

19      Since Coastal has not paid the workers' compensation carriers any alleged amounts of

20  collateral, Coastal cannot seek indemnity from Select for a debt that it has not incurred.

21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

**SELECT'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO PRECLUDE EVIDENCE REGARDING ANY
CLAIM THAT SELECT IS OWED FURTHER MONIES AS COLLATERAL AND/OR PRECLUDE RECOVERY OF**

## V.    CONCLUSION

For all the foregoing reasons, this Court should preclude the Coastal parties from submitting any evidence for any seeking recovery of any monies allegedly owed to AIG or any other workers' compensation carrier as collateral on the workers' compensation claims.

Dated:  August 4, 2011          **ROXBOROUGH, POMERANCE, NYE, & ADREANI LLP**

By:_____
          Drew E. Pomerance, Esq.
          Attorneys for Plaintiffs//Cross-Defendants, REAL
          TIME STAFFING, INC., KOOSHAREM
          CORPORATION, NEW STAFF, INC., KT, INC.,
          PAY SERVICES, INC. PBT, INC., and D.
          STEPHEN    SORENSEN

4

# EXHIBIT "A"

Marc C. Forsythe – State Bar No. 153854
Robert P. Goe - State Bar No. 137019
Elizabeth A. LaRocque – State Bar No. 219977
**GOE & FORSYTHE, LLP**
660 Newport Center Drive, Suite 320
Newport Beach, CA 92660
mforsythe@goeforlaw.com
rgoe@goeforlaw.com
elarocque@goeforlaw.com
Phone:  (949) 467-3780
Facsimile:  (949) 721-0409

Proposed General Insolvency Counsel
For Debtors and Debtors-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>CONSOLIDATED EMPLOYER MANAGEMENT SOLUTIONS, INC., a California corporation; COASTAL EMPLOYERS, INC., a New York corporation; and COASTAL EMPLOYERS, INC., a California corporation,<br><br>       Debtor and Debtor-in-Possession. | **Case No. 8:07-10992-RK**<br><br>[Jointly administered with case Nos. 8:07-10994-RK and 8:07-10995-RK]<br><br>Adv. Case No. 8:07-ap-01105-RK<br><br>Chapter 11 filed April 4, 2007<br><br>**DEBTORS' REPLY TO OPPOSITION OF NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA AND CERTAIN OF ITS AFFILIATES OT COASTAL'S OBJECTION TO PROOF OF CLAIM OF AIG; DECLARATION OF ROBERT J. ANDERSON, JR IN SUPPORT THEREOF**<br><br>Hearing Date:<br>Date:    October 15, 2007<br>Time:    10:00 a.m.<br>Ctrm:    5D |

Coastal Employers, Inc., a California Corporation ("Coastal"), a debtor herein, hereby files its Reply to the Opposition of National Union Fire Insurance Company of Pittsburgh, PA and certain of its affiliates to the Objection to the Proof of Claim filed by American International

1    Companies ("AIG").  This Reply is based on the attached Declaration of Robert J. Anderson, Jr.,

2    and the Exhibit attached hereto, the file in this matter and any additional evidence or argument that

3    the Court decides to consider at the hearing thereon.

4           In sum. AIG's opposition does nothing to support its position/claim, but merely attacks the

5    evidence of the Debtor (its own documents) and states, that it is premature to deal with the

6    Objection as it is unclear whether there will be any distribution to pre-petition creditors.  However,

7    this overlooks the fact that it is important for the Court to address this Objection now as AIG is

8    being provided with the deference afforded to a large creditor in determining how these cases

9    should proceed, when ,in fact, AIG actually owes money to the estate and is looking out for its own

10   interest in attempting to pay back as little to the estate as possible.

11          Therefore, regardless of the outcome of the hearing on the Debtors' Motion to Dismiss the

12   Chapter 11 cases, the Court should proceed expeditiously forward with this matter to both disallow

13   the AIG claim as well as eventually require turnover of millions of dollars to the estate.

14          WHEREFORE Coastal asserts that the objection to claim of AIG be sustained in its

15   entirety.

16   Dated: October 8, 2007                          Respectfully Submitted By:

17                                                   GOE & FORSYTHE LLP

18

19                                                   Robert P. Goe

20

21

22

23

24

25

26

27

28

### DECLARATION OF ROBERT J. ANDERSON JR.

1.      I am the President of Consolidated Employer Management Solutions, Inc, a California corporation ("CEMS"), the debtor and debtor-in-possession n Case No. 8:07-10992-RK.

2.      I am the President of Coastal Employers, Inc, a California corporation ("CECA"), the debtor and debtor-in-possession n Case No. 8:07-10994-RK.

3.      I am the President of Coastal Employers, Inc, a New York corporation ("CENY"), the debtor and debtor-in-possession n Case No. 8:07-10995-RK.

4.      I have personal knowledge of the facts stated herein concerning the Debtor, and if called upon to testify, I could and would competently and truthfully testify thereto.

5.      These cases were commenced April 4, 2007, by the filing of the voluntary petitions under Chapter 11 of Title 11 of the United States Code.

6.      The above cases are being jointly administered under Consolidated Employer Management Solutions, Inc.

7.      I make this declaration in support of Debtor's Rely to Opposition to Objection to the Claim of AIG.

8.      The underlying basis for the AIG claim is a contract or series of contracts for workman's compensation insurance to be provided by AIG (and/or related companies) to the party through whom the workers being covered were employed by Coastal.

9.      Attached hereto as **Exhibit "1"** is a report referred to as "The Bartlett Actuarial Study" prepared for the Debtors., which supports Debtors' position that AIG owes millions to the estate.

10.      Set forth below are certain data which relate to the foundation of AIG's Claim:

**Present AIG Claims Statistics:**

| Policy Year: | Paid: | Reserves: | Incurred: | IBNR: |
|---|---|---|---|---|
| 2005 | $6,66,351 | $2,184,923 | $8,845,655 | $1,764,699 |
| 2006 | $2,820,060 | $2,695,711 | $5,515,771 | $4,376,640 |
| Totals | $9,488,411 | $4,880,634 | $14,361,426 | $6,141,339 |

1   When the Bartlett Actuarial Report for the 2005 policy year and the historical development of

2   CECA/CENY for the 2006 policy year are considered, the deductible losses for the policies within

3   the $1,000,000 deductible are $20,502,765. This deductible loss is equivalent of 42% of standard

4   premium produced under the policies. This is a reasonable, rational and conservative approach to

5   the AIG position.

6        11.    If this conservative approach to the AIG position is accepted, then the total

7   outstanding claims payments AIG will pay out on CECA/CENY's behalf over the next several

8   years is $11,021,973. AIG is holding $13,141,430 as of a date near May 8, 2007, meaning that

9   AIG is over secured by more than $2,000,000 plus any interest income that will be earned on the

10  cash as they hold it in trust for CECA/CENY. The interest income, once again conservatively, will

11  be in excess of $1,000,000, meaning that AIG is actually more the $3,000,000 over secured.

12       I declare under penalty of perjury under the laws of the United States of America that the

13  foregoing is true and correct.

14       Dated: October 8, 2007                    By: _____

15                                                      Robert J. Anderson, Jr.

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

Case 8:07-ap-01105-RK   Doc 115   Filed 08/04/11   Entered 08/05/11 14:56:11   Desc
Main Document   Page 14 of 41

Case 8:07-bk-10992-RK   Doc 179   Filed 10/08/07   Entered 10/08/07 17:13:39   Desc
Main Document   Page 6 of 37   *COASTAL AIG BARTLETT REPORT*

# *Coastal Employers*

# *Actuarial Reserve Analysis*

**Prepared by**

**Bartlett Actuarial Group, Ltd.**

**145 King Street**

**Suite 203**

**Charleston, SC 29401**

**(843) 377-0993**

**March, 2007**



# *TABLE OF CONTENTS*

**Report**

I. Introduction ........................................................................................................2

II. Summary of Expected Results ..............................................................................3

III. Considerations .....................................................................................................4

IV. Analysis ...............................................................................................................7

**Exhibits**

**Appendix**

||| BARTLETT
||| ACTUARIAL GROUP. LTD

# *Introduction*

Bartlett Actuarial Group, Ltd. has prepared this actuarial analysis for Coastal Employers ("Coastal") at the request of Rob Anderson, President.    Coastal has provided basic workers compensation protection to its employees who are outsourced through staffing programs to independent clients in the State of California.

Bartlett Actuarial Group, Ltd. is an independent consulting firm providing expert, professional actuarial services necessary to the sound management and administration of clients' risk management and insurance programs. It is in this capacity that this report has been prepared.

This study has been prepared at the request of the Coastal to review required reserves for workers' compensation.    Coastal is a leading provider of staffing services in California.    The specific objective of this analysis is to provide projections of ultimate losses and corresponding required reserves for workers compensation program for Coastal and its two divisions.  Care has been taken to assure an objective analysis.

Immediately following this introduction is a summary of projected expected losses.

This report is an actuarial analysis of data, conditions and practices communicated to the Bartlett Actuarial Group as described in the section of the report entitled 'Considerations'.   While the Bartlett Actuarial Group believes these communications to be reliable, it has not attempted to audit the information and cannot guarantee the accuracy of any information supplied.    The actuarial estimates contained in this report are based upon appropriate actuarial assumptions and procedures as described in the section of this report entitled 'Analysis'.   We assume no responsibility for any loss or damage that might arise from the use of, or reliance upon, this report other than for the purposes set forth herein.

This report is intended for the use of Coastal and Bartlett Actuarial Group serving as its representative. If released to any third party it should be released only in its entirety. Please advise the authors at Bartlett Actuarial Group of the release of this report to any other parties. Bartlett Actuarial Group reserves the right to supplement this report with additional explanations and qualifications as it deems to be appropriate for the particular user.

||| BARTLETT
||| ACTUARIAL GROUP, LTD

# *Summary of Projected Expected Losses*

These loss projections are the product of historical experience, actuarial assumptions, quantitative analysis, and professional judgment. The projections are an objective estimate of the ultimate settlement value of losses and required reserves within per occurrence deductible that Coastal may expect during the self-insurance periods.

In this study, ultimate losses plus allocated loss adjustment expenses have been estimated at statutory limits and also limited to the $1,000,000 per occurrence deductible for the applicable policy period, commencing 6/1/2005.

**Workers Compensation**
*State of California*
*Calculation of Estimated Losses within $1,000,000 retention*

| (A) | (B) | (C) | (D) | (E) |
|---|---|---|---|---|
| | | % | Estimated Losses | Estimated Losses |
| | Estimated | of Losses | Within | Excess of |
| | Ultimate | Excess of | $1,000,000 | $1,000,000 |
| Division | Losses | $1,000,000 | Deductible | Deductible |
| Coastal - CA | 8,102,783 | 10.0% | 7,290,609 | 812,174 |
| Coastal - NY | 3,604,171 | 8.7% | 3,291,090 | 313,082 |
| Total | 11,706,955 | 9.4% | 10,610,354 | 1,096,600 |

It should be noted that ultimate settlement values could be higher or lower than estimates shown above. Estimated liabilities presented above are at full value and do not reflect discounts for the timing of future loss payments. Further, these estimates are subject to all limitations expressed within this report.



# *Considerations*

The consideration section reviews the most important elements underlying the estimates presented in this report. Appropriate actuarial methods and techniques for performing loss forecasts can only be identified in light of retained coverage limits, claim information available and other considerations. Key considerations motivating the selection of techniques employed in this report are set forth below.

### *Insurance Program*

The subject of this review is workers compensation coverage for staffing programs operated by Coastal Employers ("Coastal") in the State of California, for the fiscal period 6/1/2005-6/1/2006. Analysis has been completed for the two major divisions, Coastal Employers (CA) and Coastal (NY), separately and on a combined basis. This analysis has been prepared to assist management in reviewing the operations of these programs.

Direct workers compensation coverage has been provided by AIG, subject to per occurrence deductibles of $1,000,000. Estimations of the ultimate settlement values for loss and allocated loss adjustment expenses have been completed at statutory limits, amounts within the per occurrence deductible, and levels in excess of the per occurrence deductible. Estimates within the deductible limits represent losses retained by Coastal, while estimates excess of the deductible represent exposure to the insurer, AIG. The policy period under consideration incepted April 30, 2005 and expired April 30, 2006.

### *Financial Reporting Conventions*

Ultimate loss estimates have been derived using techniques and procedures that satisfy guidelines promulgated by the **Casualty Actuarial Society** in **Statement of Principles Regarding Property and Casualty Loss and Loss Adjustment Expense Reserves**, dated 1988. No attempt has been made to discount for the time value of money or explicitly measure anticipated recoveries. Subrogation and recoveries are presumed to be reflected in the primary loss reports. Available data did not provide a basis for estimating potential recoveries, if any. Accordingly, no special adjustments, nor reductions for collateral sources, have been incorporated into estimates of losses and associated claim expenses.

Cash-flow considerations are beyond the scope of this report.



### *Available Loss Data*

The key approach in this analysis has been to project ultimate settlement values of aggregate losses accumulated for the applicable policy period for the two divisions separately and on a combined basis.    Coastal has provided basic loss information on an occurrence year basis, including individual claims listings. Payroll information has been provided by division and in occupational classification detail.    Basic analysis has been performed on loss experience at statutory limits.    Estimations of losses within the per occurrence deductible layer has been based upon loss elimination ratio's by hazard group from the California Large Risk Deductible Plan, effective July 1, 2003, published by the Workers' Compensation Insurance Rating Bureau of California ("WCIRB").    Expected losses employed in this review have been developed from WCIRB pure premiums by classification, effective January 1, 2007.

### *Development Patterns, Reporting Patterns and Settlement Patterns*

Loss development factors are used to project the additional cost expected on claims associated with current and past loss periods. These factors quantify the late developing aspects of certain losses, such as claims involving medical complications not recognized in the early stages of treatment or verdict values for litigated claims which are different than the amount which was reserved to pay the claims. They also account for losses that occurred during the policy period but are not reported until a later date, commonly referred to as pure incurred but not reported losses.

Loss development factors are typically selected by reviewing loss development patterns unique to individual firms through actuarial analysis of the historical losses for prior policy periods. These unique patterns are considered along with industry patterns in selecting loss development factors. Calculation of loss development factors unique to Coastal would allow to the largest extent possible for a more accurate reflection of specific loss development patterns. Generally speaking, the use of unique factors as opposed to industry averages produces a more accurate projection of ultimate incurred losses.    Historical claim information for Coastal in the State of California was not available in sufficient volume to enable derivation of unique development factors.    As a consequence, development patterns derived from the following sources have been employed in this review:

1.   insurance industry workers' compensation experience in the State of California, compiled by the Workers' Compensation Insurance Rating Bureau of California (WCIRB) from the Pure Premium Rates and Regulation filing, effective January 1, 2007; and

2. insurance industry workers' compensation countrywide experience compiled by AM Best & Co.

### Claims Expense

It is important to note that throughout this study estimated ultimate losses are defined as all losses ultimately expected to be paid for occurrences, which take place in the applicable policy periods. Allocated loss adjustment expenses are those expenses clearly assignable to an individual claim (*i.e.*, legal and expert witness fees) but exclude claim adjusters fees. Allocated loss adjustment expenses have been included in the application of the deductible limitation. Allocated loss adjustment expenses were included with losses in development methods based upon insurance industry experience.

### Reasonableness

The guiding principle in performing the following analysis is to recognize Coastal's exposure to loss, past experience and operational organization of the self-insurance program to the greatest extent possible. Nevertheless, the main test of reasonableness is the logic set forth in this report.

||| BARTLETT
ACTUARIAL GROUP, LTD

# *Analysis*

The description of methodology section presents the step-by-step approach used to project expected losses for workers' compensation.

**Overview**

The basic quantitative approach used to project ultimate losses and derive corresponding required reserves for Coastal is described as follows:

1.  **Table 1** presents a **basic claim listing,** which summarizes losses by major division under review. This listing gives a clear picture of the known losses at the most recent evaluation date. These losses serve as the base for the reserve analyses contained in this report. "Incurred losses" are defined as the sum of cumulative paid losses and outstanding reserve amounts. Allocated loss adjustment expenses have been included within losses. Losses have been presented split between medical only and indemnity. They have not been developed to ultimate nor adjusted for inflation.

2.  As described in the previous section of this report, historical **development patterns** for Coastal were not available. Accordingly, workers compensation insurance industry experience in both the State of California and countrywide were employed in this analysis. Appendix A presents an analysis of historical insurance industry development patterns. In **Table 2**, loss development factors based upon insurance industry countrywide experience have been selected based on the time that has passed between the beginning of the loss period and the date of the most recent evaluation. The estimated fully developed losses under the paid loss development method are calculated by multiplying recently valued paid to date losses for each division by cumulative paid loss development factors. Similarly, incurred loss development employs limited incurred loss experience to estimate fully developed losses by division. Allocated loss adjustment expenses have been included with losses.

4.  In **Table 3**, loss development factors based upon California experience have been employed. Historical development patterns for medical only and indemnity losses have been aggregated separately by the WCIRB of California. Accordingly, medical only losses (**Table 3a**) and indemnity claims (**Table 3b**) have been developed separately. **Table 3c** presents the derivation of ultimate losses and loss adjustment expenses based upon the results from **Tables 3a and 3b.**

5.  **Table 4** presents the derivation of expected losses for the two divisions based upon extending ratable payroll for each classification by applicable pure premiums from the WCIRB of California rate structure effective January 1, 2007. Pure premiums have been de-trended from the average date of the filling, July 1, 2007, to the average date of the policy period, November 1, 2005. The



methodology underlying **Table 4** anticipates that loss experience for Coastal will be similar to all insured's in California.

6.    **Table 5** presents the calculation of the percentage of losses that are less than the applicable per occurrence deductible of $1,000,000. Loss elimination ratios by Hazard Class are based upon the WCIRB of California Large Risk Deductible Plan, effective July 1, 2003.

7.    Additional expected claim emergence and significant variability in settlement values can cause fluctuations in estimated ultimate losses derived from development techniques. As a consequence, in **Table 6** ultimate losses have been estimated by combining expected losses from **Table 4** with actual loss experience from **Table 1**, employing weights derived from development patterns of **Appendix A**.

8.    **Table 7** presents a comparison of the ultimate loss and loss adjustment expense estimates from **Tables 2, 3, 4** and **6**. For all divisions the selected ultimate losses and loss adjustment expenses were calculated as the averages of ultimate losses from derived on **Tables 2, 3, and 6**.

9.    In **Table 8** estimated ultimate losses and loss adjustment expenses from **Table 7** are divided between amounts less than the $1,000,000 deductible and those excess, based upon the percentages from **Table 5**.

*Qualifying Statements*

The accuracy and reliability of the estimated ultimate incurred losses presented in this report depend upon assumptions described in the section of this report entitled "Considerations". Changing patterns of loss development result from re-evaluation of reserves for open claims, re-opening of closed claims and addition of late reported claims. It is possible that loss emergence will be significant enough to alter to some degree the estimates presented in this report. Therefore, it is important that this analysis and the projections presented be understood as estimates at one point in time and is subject to future change.

Historical loss and exposure data provided by Coastal have been used in projecting expected losses for all self-insurance periods. Any changes in projected exposure will require a proportional change in loss projections and associated required reserves. Changes in any portion of the information or assumptions upon which Bartlett Actuarial Group's estimates of ultimate losses are based will require a reevaluation of the results of this report and possibly a revision of these projections.

It is recommended that this report be released only in its entirety. At the explicit request of Coastal we will be available for consultation should any individual reviewing this report have questions or require further analysis.



# *Exhibits*

||| BARTLETT
||| ACTUARIAL GROUP, LTD

Table 1
Coastal

*Workers Compensation*
*State of California*
*Basic Claim Information\**

| (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) |
|---|---|---|---|---|---|---|---|
| | | | | | | Medical | |
| Division | Policy Period | Evaluation Date | Maturity (Months) | Reported Claims | Closed Claims | Paid Losses | Incurred Losses |
| Coastal - CA | 5/1/05-5/1/06 | 01/31/07 | 21.00 | 591 | 594 | 313,292 | 315,662 |
| Coastal - NY | 5/1/05-5/1/06 | 01/31/07 | 21.00 | 192 | 196 | 95,697 | 96,622 |
| Total | 5/1/05-5/1/06 | 01/31/07 | 21.00 | 783 | 790 | 408,989 | 412,285 |

| | (I) | (J) | (K) | (L) | (M) | (N) | |
|---|---|---|---|---|---|---|---|
| | | | Indemnity | | Combined | | |
| | Division | Policy Period | Paid Losses | Incurred Losses | Paid Losses | Incurred Losses | |
| | Coastal - CA | 5/1/05-5/1/06 | 3,814,539 | 5,493,601 | 4,127,831 | 5,809,264 | |
| | Coastal - NY | 5/1/05-5/1/06 | 1,481,142 | 2,188,766 | 1,576,839 | 2,285,388 | |
| | Total | 5/1/05-5/1/06 | 5,295,680 | 7,682,367 | 5,704,669 | 8,094,651 | |

*Provided by Coastal

BARTLETT
ACTUARIAL GROUP, LTD

**Table 2**
**Coastal**

**Workers Compensation**
**Insurance Industry Historical Information**
*Estimated Ultimate Losses - Loss Development Methods*

| A. Paid Losses | | | | | | |
|---|---|---|---|---|---|---|
| (A) | (B) | (C) | (D) | (E) | (F) Cumulative Loss | (G) Estimated |
| Division | Policy Period | Evaluation Date | Total Losses & ALAE | Maturity (Months) | Development Factor | Ultimate Losses |
| Coastal - CA | 5/1/05-5/1/06 | 01/31/07 | $4,127,831 | 21.00 | 2.286 | $9,436,221 |
| Coastal - NY | 5/1/05-5/1/06 | 01/31/07 | $1,576,839 | 21.00 | 2.286 | $3,604,653 |
| Total | 5/1/05-5/1/06 | 01/31/07 | $5,704,669 | 21.00 | 2.286 | $13,040,874 |

| B. Incurred Losses | | | | | | |
|---|---|---|---|---|---|---|
| (H) | (I) | (J) | (K) | (L) | (M) Cumulative Loss | (N) Estimated |
| Division | Policy Period | Evaluation Date | Total Losses & ALAE | Maturity (Months) | Development Factor | Ultimate Losses |
| Coastal - CA | 5/1/05-5/1/06 | 01/31/07 | $5,809,264 | 21.00 | 1.542 | $8,957,885 |
| Coastal - NY | 5/1/05-5/1/06 | 01/31/07 | $2,285,388 | 21.00 | 1.542 | $3,524,068 |
| Total | 5/1/05-5/1/06 | 01/31/07 | $8,094,651 | 21.00 | 1.542 | $12,481,953 |

Cols (D) & (K): Table 1
Col (F): Appendix A, Exhibit II
Col (G): Col (D) x Col (F)

Col (M): Appendix A, Exhibit I
Col (N): Col (K) x Col (M)



**Table 3a**
Coastal

**Workers Compensation**
**State of California**
*Estimated Ultimate Losses – Loss Development Methods*
*Medical*

**A.  Paid Losses**

| (A)<br><br><br>Division | (B)<br><br>Policy<br>Period | (C)<br><br>Evaluation<br>Date | (D)<br><br>Total<br>Losses | (E)<br><br>Maturity<br>(Months) | (F)<br>Cumulative<br>Loss<br>Development<br>Factor | (G)<br><br>Estimated<br>Ultimate<br>Losses |
|---|---|---|---|---|---|---|
| Coastal - CA | 5/1/05-5/1/06 | 01/31/07 | 313,292 | 21.00 | 3.166 | $991,749 |
| Coastal - NY | 5/1/05-5/1/06 | 01/31/07 | 95,697 | 21.00 | 3.166 | $302,935 |
| Total | 5/1/05-5/1/06 | 01/31/07 | 408,989 | 21.00 | 3.166 | $1,294,684 |

**B.  Incurred Losses**

| (H)<br><br><br>Division | (I)<br><br>Policy<br>Period | (J)<br><br>Evaluation<br>Date | (K)<br><br>Total<br>Losses | (L)<br><br>Maturity<br>(Months) | (M)<br>Cumulative<br>Loss<br>Development<br>Factor | (N)<br><br>Estimated<br>Ultimate<br>Losses |
|---|---|---|---|---|---|---|
| Coastal - CA | 5/1/05-5/1/06 | 01/31/07 | 315,662 | 21.00 | 1.626 | $513,408 |
| Coastal - NY | 5/1/05-5/1/06 | 01/31/07 | 96,622 | 21.00 | 1.626 | $157,151 |
| Total | 5/1/05-5/1/06 | 01/31/07 | 412,285 | 21.00 | 1.626 | $670,558 |

Cols (D) & (K):  Table 1                  Col (G):  Col (D) x Col (F)
Cols (F) and (M): Appendix A, Exhibit 1    Col (N):  Col (K) x Col (M)

*March, 2007*



Table 3b
Coastal

**Workers Compensation**
**State of California**
*Estimated Ultimate Losses - Loss Development Methods*
*Indemnity*

### A. Paid Losses

| (A)<br><br><br><br>Division | (B)<br><br>Policy<br>Period | (C)<br><br>Evaluation<br>Date | (D)<br><br>Total<br>Losses | (E)<br><br>Maturity<br>(Months) | (F)<br>Cumulative<br>Loss<br>Development<br>Factor | (G)<br>Estimated<br>Ultimate<br>Losses |
|---|---|---|---|---|---|---|
| Coastal - CA | 5/1/05-5/1/06 | 01/31/07 | 3,814,539 | 21.00 | 3.547 | $13,531,882 |
| Coastal - NY | 5/1/05-5/1/06 | 01/31/07 | 1,481,142 | 21.00 | 3.547 | $5,254,275 |
| Total | 5/1/05-5/1/06 | 01/31/07 | 5,295,680 | 21.00 | 3.547 | $18,786,157 |

### B. Incurred Losses

| (H)<br><br><br><br>Division | (I)<br><br>Policy<br>Period | (J)<br><br>Evaluation<br>Date | (K)<br><br>Total<br>Losses | (L)<br><br>Maturity<br>(Months) | (M)<br>Cumulative<br>Loss<br>Development<br>Factor | (N)<br>Estimated<br>Ultimate<br>Losses |
|---|---|---|---|---|---|---|
| Coastal - CA | 5/1/05-5/1/06 | 01/31/07 | 5,493,601 | 21.00 | 1.407 | $7,731,335 |
| Coastal - NY | 5/1/05-5/1/06 | 01/31/07 | 2,188,766 | 21.00 | 1.407 | $3,080,326 |
| Total | 5/1/05-5/1/06 | 01/31/07 | 7,682,367 | 21.00 | 1.407 | $10,811,661 |

Cols (D) & (K): Table 1                          Col (G): Col (D) x Col (F)
Cols (F) and (M): Appendix A, Exhibit I          Col (N): Col (K) x Col (M)

*March, 2007*



Table 3c
Coastal

Workers Compensation
State of California
*Estimated Ultimate Losses - Loss Development Methods*

**A.  Paid Losses**

| (A) | (B) | (C) | (D) | (E) | (F) | (G) | (H) |
|---|---|---|---|---|---|---|---|
| | | Medical | | Indemnity | | Combined | |
| Division | Policy Period | Paid Losses & ALAE | Fully Developed Losses & ALAE | Paid Losses & ALAE | Fully Developed Losses & ALAE | Paid Losses & ALAE | Estimated Ultimate Losses & ALAE |
| Coastal - CA | 5/1/05-5/1/06 | 313,292 | $991,749 | 3,814,539 | $13,531,882 | 4,127,831 | $14,523,631 |
| Coastal - NY | 5/1/05-5/1/06 | 95,697 | $302,935 | 1,481,142 | $5,254,275 | 1,576,839 | $5,557,210 |
| Total | 5/1/05-5/1/06 | 408,989 | $1,294,684 | 5,295,680 | $18,786,157 | 5,704,669 | $20,080,841 |

**B.  Incurred Losses**

| (I) | (J) | (K) | (L) | (M) | (N) | (O) | (P) |
|---|---|---|---|---|---|---|---|
| | | Medical | | Indemnity | | Combined | |
| Division | Policy Period | Incurred Losses & ALAE | Fully Developed Losses & ALAE | Incurred Losses & ALAE | Fully Developed Losses & ALAE | Incurred Losses & ALAE | Estimated Ultimate Losses & ALAE |
| Coastal - CA | 5/1/05-5/1/06 | 315,662 | $513,408 | 5,493,601 | $7,731,335 | 5,809,264 | $8,244,743 |
| Coastal - NY | 5/1/05-5/1/06 | 96,622 | $157,151 | 2,188,766 | $3,080,326 | 2,285,388 | $3,237,477 |
| Total | 5/1/05-5/1/06 | 412,285 | $670,558 | 7,682,367 | $10,811,661 | 8,094,651 | $11,482,219 |

Cols (C) & (D): Table 3a
Cols (E) & (F): Table 3b
Col (G):  Col (C) + Col (E)
Col (H):  {Col (D) + Col (F)}

Cols (K) & (L): Table 3a
Cols (M) & (N): Table 3b
Col (O):  Col (K) + Col (M)
Col (P):  {Col (L) + Col (N)}

*March, 2007*

||| BARTLETT
ACTUARIAL GROUP, LTD

Table 4
Coastal

**Workers Compensation**
*State of California*
*Calculation of Estimated Ultimate Losses*
*Based Upon Exposure Extension*

| Calculation of Ultimate Losses<br>Payroll Extension | | | | |
|---|---|---|---|---|
| (A)<br><br>Division | (B)<br>Total<br>Payroll | (C)<br>Average<br>Pure<br>Premium | (D)<br>Adjusted<br>Pure<br>Premium | (E)<br>Expected<br>Losses |
| Coastal - CA | 160,780,018 | 3.009 | 2.680 | 4,308,285 |
| Coastal - NY | 74,451,255 | 6.258 | 5.573 | 4,149,060 |
| Total | 235,231,273 | 4.048 | 3.605 | 8,479,009 |

Col (B):  Provided by CEMS
Col (C):  Based Upon WCIRB of CA Rates, Effective 1/1/07
Col (D):  Col (C) x Pure Premium Deflation Factor (Trend Exhibit)
Col (E):  {Col (B) x Col (D)} / 100

BARTLETT
ACTUARIAL GROUP, LTD

**Table 5**
Coastal

**Workers Compensation**
*State of California*

*Calculation of % of Losses In Excess of*
*$1,000,000 per Occurrence*

| (A) Division | (B) Hazard Group | (C) Expected Losses | (D) Loss Elimination Ratio |
|---|---|---|---|
| Coastal - CA | | | |
| | I | 60,673 | 9.5% |
| | II | 3,964,433 | 10.2% |
| | III | 275,874 | 7.6% |
| | IV | 601 | 10.3% |
| | | $4,301,581 | 10.0% |
| | | | |
| Coastal - NY | | | |
| | I | 2,364 | 9.5% |
| | II | 1,713,708 | 10.2% |
| | III | 2,415,050 | 7.6% |
| | IV | 17,939 | 10.3% |
| | | $4,149,060 | 8.7% |
| | | | |
| Total | I | 63,037 | 9.5% |
| | II | 5,678,142 | 10.2% |
| | III | 2,690,924 | 7.6% |
| | IV | 18,540 | 10.3% |
| | | $8,450,642 | 9.4% |

Col (D):  CA Large Risk Deductible Plan, Effective 7/1/03
          WCIRB of CA

*March, 2007*

||| BARTLETT
||| ACTUARIAL GROUP, LTD

Table 6
Coastal

Workers Compensation
*State of California*
*Loss Projections, Policy Year*

**Bornhuetter - Ferguson Technique**
**Based Upon Paid Losses**

| (A)<br><br><br><br>Division | (B)<br><br><br>Paid<br>Losses | (C)<br><br><br>Expected<br>Losses | (D)<br>Cumulative<br>Paid<br>Loss<br>Development | (E)<br>%<br>of<br>Ultimates<br>Unpaid | (F)<br><br>Estimated<br>Ultimate<br>Losses |
|---|---|---|---|---|---|
| Coastal - CA | 4,127,831 | 4,308,285 | 2.286 | 56.26% | 6,551,477 |
| Coastal - NY | 1,576,839 | 4,149,060 | 2.286 | 56.26% | 3,910,912 |
| Total | 5,704,669 | 8,479,009 | 2.286 | 56.26% | 10,474,576 |

**Bornhuetter - Ferguson Technique**
**Based Upon Incurred Losses**

| (G)<br><br><br><br>Policy<br>Year | (H)<br><br><br>Reported<br>Losses | (I)<br><br><br>Expected<br>Losses | (J)<br>Cumulative<br>Incurred<br>Loss<br>Development | (K)<br>%<br>of<br>Ultimates<br>Unreported | (L)<br><br>Estimated<br>Ultimate<br>Losses |
|---|---|---|---|---|---|
| Coastal - CA | 5,809,264 | 4,308,285 | 1.542 | 35.15% | 7,323,590 |
| Coastal - NY | 2,285,388 | 4,149,060 | 1.542 | 35.15% | 3,743,747 |
| Total | 8,094,651 | 8,479,009 | 1.542 | 35.15% | 11,074,952 |

Col (B): Table 1                                Col (H): Table 1
Col (C): Table 4                                Col (I): Table 4
Col (D): Appendix A, Exhibit II                 Col (J): Appendix A, Exhibit I
Col (E): 1.00 - {1 / Col (D)}                    Col (K): 1.00 - {1 / Col (J)}
Col (F): Col (B) + {Col (C) x Col (E)}           Col (L): Col (H) + {Col (I) x Col (K)}

III BARTLETT
ACTUARIAL GROUP, LTD

Table 7
Coastal

*Workers Compensation*
*State of California*
*Selection of Accident Year Ultimate Losses*

| (A) | (B) | (C) | (D) | (E) | (F) | (G) |
|-----|-----|-----|-----|-----|-----|-----|
|  |  |  | Insurance Industry | | State of California | |
|  | Paid | Incurred | Paid Loss | Incurred Loss | Paid Loss | Incurred Loss |
|  | Losses | Losses | Development | Development | Development | Development |
| Division | & ALAE | & ALAE | Method | Method | Method | Method |
| Coastal - CA | $4,127,831 | $5,809,264 | $9,436,221 | $8,957,885 | 14,523,631 | 8,244,743 |
| Coastal - NY | $1,576,839 | $2,285,388 | $3,604,653 | $3,524,068 | 5,557,210 | 3,237,477 |
| Total | $5,704,669 | $8,094,651 | $13,040,874 | $12,481,953 | 20,080,841 | 11,482,219 |

| | (H) | (I) | (J) | (K) | (L) |
|-----|-----|-----|-----|-----|-----|
|  |  |  | Paid Bornhuetter | Incurred Bornhuetter | Selected |
|  |  | Expected | Ferguson | Ferguson | Ultimate |
|  | Division | Losses | Method | Losses | Losses |
|  | Coastal - CA | $4,308,285 | $6,551,477 | $7,323,590 | $8,102,783 |
|  | Coastal - NY | $4,149,060 | $3,910,912 | $3,743,747 | $3,604,171 |
|  | Total | $8,479,009 | $10,474,576 | $11,074,952 | $11,706,955 |

Col (B): Table 1, Col (M)                  Col (G): Table 3c, Col (P)
Col (C): Table 1, Col (N)                  Col (I): Table 4, Col (E)
Col (D): Table 2, Col (G)                  Col (J): Table 6, Col (F)
Col (E): Table 2, Col (N)                  Col (K): Table 6, Col (L)
Col (F): Table 3c, Col (H)                 Col (L): Average of Cols (D), (E), (G), (J) & Col (K)

||| BARTLETT
ACTUARIAL GROUP, LTD

**Table 8**
Coastal

Workers Compensation
*State of California*
*Calculation of Estimated Losses within $1,000,000 retention*

| (A)<br>Division | (B)<br>Estimated<br>Ultimate<br>Losses | (C)<br>%<br>of Losses<br>Excess of<br>$1,000,000 | (D)<br>Estimated<br>Losses<br>Within<br>$1,000,000<br>Deductible | (E)<br>Estimated<br>Losses<br>Excess of<br>$1,000,000<br>Deductible |
|---|---|---|---|---|
| Coastal - CA | 8,102,783 | 10.0% | 7,290,609 | 812,174 |
| Coastal - NY | 3,604,171 | 8.7% | 3,291,090 | 313,082 |
| Total | 11,706,955 | 9.4% | 10,610,354 | 1,096,600 |

Col (B):  Table 7, Col (L)
Col (C):  Table 5, Col (D)
Col (D):  Col (B) x (1 - Col (C))
Col (E):  Col (B) - Col (D)

‖‖‖ BARLETT
ACTUARIAL GROUP. LTD

# *Technical Appendix A*

**|||BARTLETT**
||| ACTUARIAL GROUP, LTD

Appendix A
Exhibit I
Coastal

*Workers Compensation*
State of California
Analysis of Historical Development Patterns

| (A) | (B) | | (C) | (D) | (E) |
|---|---|---|---|---|---|
| | | | Medical | | |
| Selected Age-to-Age Development | | | Fitted Cumulative Development | | |
| Maturity (months) | Paid Age-to-Age Factors | Incurred Age-to-Age Factors | Maturity (months) | Paid Cumulative Factors | Incurred Cumulative Factors |
| 126 | 1.025 | 1.016 | 117 | 1.178 | 1.131 |
| 114 | 1.031 | 1.016 | 105 | 1.214 | 1.153 |
| 102 | 1.036 | 1.019 | 93 | 1.261 | 1.178 |
| 90 | 1.043 | 1.030 | 81 | 1.322 | 1.208 |
| 78 | 1.054 | 1.028 | 69 | 1.407 | 1.246 |
| 66 | 1.074 | 1.031 | 57 | 1.532 | 1.293 |
| 54 | 1.102 | 1.044 | 45 | 1.735 | 1.358 |
| 42 | 1.163 | 1.041 | 33 | 2.127 | 1.454 |
| 30 | 1.261 | 1.063 | 21 | 3.166 | 1.626 |
| 18 | 1.540 | 1.182 | 9 | 9.745 | 2.129 |

| (F) | (G) | | (H) | (I) | (J) |
|---|---|---|---|---|---|
| | | | Indemnity | | |
| Selected Age-to-Age Development | | | Fitted Cumulative Development | | |
| Maturity (months) | Paid Age-to-Age Factors | Incurred Age-to-Age Factors | Maturity (months) | Paid Cumulative Factors | Incurred Cumulative Factors |
| 126 | 1.011 | | 117 | 1.080 | 1.021 |
| 114 | 1.017 | 1.004 | 105 | 1.101 | 1.026 |
| 102 | 1.023 | 1.005 | 93 | 1.130 | 1.033 |
| 90 | 1.031 | 1.006 | 81 | 1.170 | 1.043 |
| 78 | 1.043 | 1.012 | 69 | 1.231 | 1.056 |
| 66 | 1.065 | 1.015 | 57 | 1.331 | 1.077 |
| 54 | 1.102 | 1.026 | 45 | 1.516 | 1.114 |
| 42 | 1.220 | 1.039 | 33 | 1.951 | 1.189 |
| 30 | 1.217 | 1.095 | 21 | 3.547 | 1.407 |
| 18 | 2.227 | 1.218 | 9 | 24.247 | 3.117 |

\* WCIRB of CA Filing, dated 9/14/06

*March, 2007*

|||BARTLETT
ACTUARIAL GROUP, LTD

Appendix A
Exhibit II
Coastal
Workers Compensation

*Analysis of Historical Development Patterns*
(Insurance Industry)

**A. Reported Losses ($,000's)**

| Accident Year | As Of (months) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 12 | 24 | 36 | 48 | 60 | 72 | 84 | 96 | 108 | 120 |
| 1996 | 10,495,310 | 14,220,448 | 16,048,119 | 17,050,633 | 17,671,927 | 18,154,245 | 18,581,632 | 18,907,125 | 19,093,367 | 19,296,002 |
| 1997 | 10,526,654 | 15,052,621 | 16,987,605 | 17,977,215 | 18,739,987 | 19,468,055 | 19,868,072 | 20,254,379 | 20,495,142 | |
| 1998 | 11,446,269 | 16,846,909 | 18,151,436 | 19,453,790 | 20,451,552 | 21,151,001 | 21,645,694 | 22,051,841 | | |
| 1999 | 11,135,134 | 15,881,275 | 18,287,935 | 19,785,641 | 20,720,722 | 21,306,308 | 21,869,010 | | | |
| 2000 | 11,792,057 | 17,527,941 | 20,028,393 | 21,483,984 | 22,519,475 | 23,048,493 | | | | |
| 2001 | 12,935,813 | 18,846,234 | 21,866,949 | 23,253,813 | 23,536,072 | | | | | |
| 2002 | 12,770,171 | 18,956,360 | 21,706,627 | 22,791,946 | | | | | | |
| 2003 | 13,450,382 | 19,139,740 | 21,402,096 | | | | | | | |
| 2004 | 13,377,404 | 18,270,661 | | | | | | | | |
| 2005 | 13,687,655 | | | | | | | | | |

**B. Age-To-Age Factors**

| Accident Year | Interval (months) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 12 to 24 | 24 to 36 | 36 to 48 | 48 to 60 | 60 to 72 | 72 to 84 | 84 to 96 | 96 to 108 | 108 to 120 | 120 to 132 |
| 1996 | 1.355 | 1.129 | 1.062 | 1.036 | 1.027 | 1.024 | 1.018 | 1.010 | 1.011 | |
| 1997 | 1.430 | 1.129 | 1.058 | 1.042 | 1.039 | 1.021 | 1.019 | 1.012 | | |
| 1998 | 1.402 | 1.131 | 1.072 | 1.051 | 1.034 | 1.023 | 1.019 | | | |
| 1999 | 1.426 | 1.152 | 1.082 | 1.047 | 1.028 | 1.026 | | | | |
| 2000 | 1.486 | 1.143 | 1.073 | 1.048 | 1.023 | | | | | |
| 2001 | 1.457 | 1.160 | 1.063 | 1.013 | | | | | | |
| 2002 | 1.484 | 1.145 | 1.050 | | | | | | | |
| 2003 | 1.423 | 1.118 | | | | | | | | |
| 2004 | 1.366 | | | | | | | | | |
| Average | 1.426 | 1.138 | 1.066 | 1.040 | 1.030 | 1.023 | 1.019 | 1.011 | 1.011 | |
| Mid Average | 1.427 | 1.138 | 1.066 | 1.044 | 1.030 | 1.023 | 1.019 | | | |
| Median | 1.426 | 1.137 | 1.063 | 1.045 | 1.028 | 1.023 | 1.019 | 1.011 | 1.011 | |
| 3-Yr Avg. | 1.424 | 1.141 | 1.062 | 1.036 | 1.029 | 1.023 | 1.019 | 1.011 | 1.011 | |
| 5-Yr Avg. | 1.443 | 1.144 | 1.068 | 1.040 | 1.030 | 1.023 | 1.019 | 1.011 | 1.011 | |
| 5-Yr Wted Avg. | 1.426 | 1.139 | 1.066 | 1.039 | 1.030 | 1.024 | 1.019 | 1.011 | 1.011 | |
| 5-Yr $ Wted Av | 1.442 | 1.143 | 1.067 | 1.040 | 1.030 | 1.024 | 1.019 | 1.011 | 1.011 | |
| 3-Yr Wted Avg | 1.407 | 1.135 | 1.059 | 1.030 | 1.027 | 1.024 | 1.019 | | | |
| 5-Yr Sum of Dif | 1.425 | 1.139 | 1.064 | 1.036 | 1.029 | | | | | |
| Selected | 1.426 | 1.138 | 1.066 | 1.040 | 1.030 | 1.023 | 1.019 | 1.011 | 1.011 | 1.058 |

BARTLETT ACTUARIAL GROUP, LTD.

Appendix A
Exhibit III
Coastal
Workers Compensation

**Analysis of Historical Development Patterns**
(Insurance Industry)

**A. Paid Losses ($,000's)**

| Accident Year | As Of (months) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 12 | 24 | 36 | 48 | 60 | 72 | 84 | 96 | 108 | 120 |
| 1996 | 4,248,376 | 9,086,603 | 12,068,384 | 13,790,606 | 14,974,623 | 15,709,886 | 16,294,383 | 16,680,763 | 17,006,892 | 17,314,617 |
| 1997 | 4,355,560 | 9,883,884 | 12,813,239 | 14,661,981 | 15,784,511 | 16,623,593 | 17,206,519 | 17,735,534 | 18,109,217 | |
| 1998 | 4,949,641 | 10,474,329 | 13,873,568 | 15,656,632 | 17,017,512 | 17,956,752 | 18,671,734 | 19,233,008 | | |
| 1999 | 4,573,634 | 10,494,901 | 13,987,872 | 16,143,122 | 17,361,453 | 18,127,440 | 18,797,552 | | | |
| 2000 | 4,877,840 | 11,339,152 | 15,213,741 | 17,426,201 | 18,850,495 | 19,704,635 | | | | |
| 2001 | 5,092,733 | 11,935,451 | 16,248,604 | 18,746,018 | 19,822,819 | | | | | |
| 2002 | 4,958,160 | 11,566,592 | 15,628,369 | 17,942,541 | | | | | | |
| 2003 | 5,039,573 | 11,526,318 | 15,371,108 | | | | | | | |
| 2004 | 5,318,239 | 11,421,320 | | | | | | | | |
| 2005 | 5,455,631 | | | | | | | | | |

**B. Age-To-Age Factors**

| Accident Year | Interval (months) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 12 to 24 | 24 to 36 | 36 to 48 | 48 to 60 | 60 to 72 | 72 to 84 | 84 to 96 | 96 to 108 | 108 to 120 | 120 to 132 |
| 1996 | 2.139 | 1.328 | 1.143 | 1.086 | 1.049 | 1.037 | 1.024 | 1.020 | 1.018 | |
| 1997 | 2.269 | 1.296 | 1.144 | 1.077 | 1.053 | 1.035 | 1.031 | 1.021 | | |
| 1998 | 2.116 | 1.325 | 1.129 | 1.087 | 1.055 | 1.040 | 1.030 | | | |
| 1999 | 2.295 | 1.333 | 1.154 | 1.075 | 1.044 | 1.037 | | | | |
| 2000 | 2.325 | 1.342 | 1.145 | 1.082 | 1.045 | | | | | |
| 2001 | 2.344 | 1.361 | 1.154 | 1.057 | | | | | | |
| 2002 | 2.333 | 1.351 | 1.148 | | | | | | | |
| 2003 | 2.287 | 1.334 | | | | | | | | |
| 2004 | 2.148 | | | | | | | | | |
| | | | | | | | | | | |
| Average | 2.251 | 1.334 | 1.145 | 1.077 | 1.049 | 1.037 | 1.028 | 1.020 | 1.018 | |
| Mid Average | 2.256 | 1.335 | 1.147 | 1.080 | 1.049 | 1.037 | 1.030 | | | |
| Median | 2.287 | 1.333 | 1.145 | 1.079 | 1.049 | 1.037 | 1.030 | 1.020 | 1.018 | |
| 3-Yr Avg. | 2.256 | 1.349 | 1.149 | 1.072 | 1.048 | 1.037 | 1.028 | 1.020 | 1.018 | |
| 5-Yr Avg. | 2.287 | 1.344 | 1.146 | 1.076 | 1.049 | 1.037 | 1.028 | 1.020 | 1.018 | |
| $ Wtd Avg. | 2.251 | 1.335 | 1.146 | 1.077 | 1.049 | 1.037 | 1.028 | 1.020 | 1.018 | |
| 5-Yr $ Wtd Av | 2.285 | 1.344 | 1.146 | 1.075 | 1.049 | 1.037 | 1.028 | 1.020 | 1.018 | |
| 3-Yr Wtd Avg | 2.227 | 1.344 | 1.149 | 1.068 | 1.047 | 1.037 | 1.029 | | | |
| 5-Yr Sum of Di | 2.260 | 1.345 | 1.149 | 1.073 | 1.048 | | | | | |
| Selected | 2.251 | 1.334 | 1.145 | 1.077 | 1.049 | 1.037 | 1.028 | 1.020 | 1.018 | 1.079 |

**C. Age-To-Ultimate Factors**

| | 12 To Ultimate | 24 To Ultimate | 36 To Ultimate | 48 To Ultimate | 60 To Ultimate | 72 To Ultimate | 84 To Ultimate | 96 To Ultimate | 108 To Ultimate | 120 To Ultimate |
|---|---|---|---|---|---|---|---|---|---|---|
| Factor | 4.646 | 2.064 | 1.547 | 1.351 | 1.254 | 1.195 | 1.152 | 1.121 | 1.099 | 1.079 |
| % Paid | 21.52% | 48.45% | 64.64% | 74.02% | 79.74% | 83.68% | 86.81% | 89.21% | 90.99% | 92.64% |

**D. Interpolated Age to Ultimate**

| | 9 To Ultimate | 21 To Ultimate | 33 To Ultimate | 45 To Ultimate | 57 To Ultimate | 69 To Ultimate | 81 To Ultimate | 93 To Ultimate | 105 To Ultimate | 117 To Ultimate |
|---|---|---|---|---|---|---|---|---|---|---|
| Factor | 6.367 | 2.286 | 1.618 | 1.383 | 1.273 | 1.208 | 1.161 | 1.127 | 1.105 | 1.079 |
| % Reported | 15.71% | 43.74% | 61.80% | 72.31% | 78.55% | 82.78% | 86.13% | 88.73% | 90.50% | 92.64% |

BARTLETT
ACTUARIAL GROUP, LTD

**Appendix A**
**Exhibit IV**

*Calculation of Inflation Trend Factors*

| (A) | (B) | (C) | (D) | (E) | (F) | (G) |
|---|---|---|---|---|---|---|
| | | Payroll | Interpolated Payroll Trend | Medical Expense Trend | Severity | Interpolated Severity Trend |
| Index Year | Average Hrly Earning | Trend Factor | Factor | Factor | Trend Factor | Factor |
| 1997 | 12.51 | 1.421 | | 2.159 | 1.790 | |
| 1998 | 13.01 | 1.367 | 1.403 | 1.999 | 1.683 | 1.754 |
| 1999 | 13.49 | 1.318 | 1.351 | 1.851 | 1.584 | 1.650 |
| 2000 | 14.02 | 1.268 | 1.301 | 1.714 | 1.491 | 1.553 |
| 2001 | 14.54 | 1.223 | 1.253 | 1.587 | 1.405 | 1.462 |
| 2002 | 14.97 | 1.188 | 1.211 | 1.469 | 1.329 | 1.380 |
| 2003 | 15.37 | 1.157 | 1.178 | 1.360 | 1.259 | 1.306 |
| 2004 | 15.69 | 1.133 | 1.149 | 1.260 | 1.196 | 1.238 |
| 2005 | 16.13 | 1.102 | 1.123 | 1.166 | 1.134 | 1.175 |
| 2006 | 16.76 | 1.061 | 1.088 | 1.080 | 1.071 | 1.113 |
| 2007 | 17.78 | 1.000 | 1.041 | 1.000 | 1.000 | 1.047 |
| | | **Annual Trend** | 1.036 | | | 1.055 |
| | | **Pure Premium Deflation \*:** | | | | 0.891 |

Col (B): 1997-2006 indices are from the Department of Labor Statistics, U.S. Department of Labor;
　　　　Production and Nonsupervisory Personnel - Total Private
　　　　2007 forecast by Bartlett Actuarial Group, Ltd.

Col (C):  (Col (B), 2007)/ Col (B)

Cols (D) and (F): Assumes 5/1 - 5/1 Program Periods

Column (E):  Assumed Annual Medical Inflation of 8.0%

Col (G):  Weighted 50% Medical and 50% Payroll (Indemnity)

\* Assumes 26 Months from Midpoint of Self - Insurance to Midpoint of Rate Level Policy Year

‖‖‖ BARTLETT
ACTUARIAL GROUP, LTD

1

2

## PROOF OF SERVICE

3

4
STATE OF CALIFORNIA     )
                             ) ss.

5
COUNTY OF ORANGE       )

6
       I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action; my business address is 660 Newport Center Drive, Suite 320, Newport Beach,
7
California 92660.

8
       On **October 8, 2007**, I served the foregoing documents described as **DEBTORS' REPLY TO OPPOSITION OF NATIONAL UNION FIRE INSURANCE COMPANY OF**
9
**PITTSBURGH, PA AND CERTAIN OF ITS AFFILIATES OT COASTAL'S OBJECTION TO PROOF OF CLAIM OF AIG; DECLARATION OF ROBERT J. ANDERSON, JR IN**
10
**SUPPORT THEREOF** on the interested parties in this action by placing a true copy thereof in sealed envelopes addressed as follows:

11

12

### SEE ATTACHED LIST

13
<u>XXX</u>   (by Mail) As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U. S.
14
Postal Service on that same day with postage thereon fully prepaid at Newport Beach, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed
15
invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.  I caused the above-referenced document(s) to be transmitted to the parties
16
indicated above.

17
_____   (By Facsimile) As follows:  I caused the above-referenced document(s) to be transmitted to
18
the parties indicated above.

19
_____   (By Overnight Mail) As follows:  I caused the above-referenced document(s) to be
20
transmitted via Overnite Express/Federal Express to the office of the parties indicated above.

21
<u>XXX</u> (By Electronic Mail) As follows:  I caused the above-referenced document(s) to be
transmitted via electronic mail to the parties indicated above.
22

23
       Executed on **October 8, 2007** at Newport Beach, California.

24
<u>XXX</u>   (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and under penalty of perjury under the laws of the United States of America
25
that the foregoing is true and correct.

26

27
KERRY A. MURPHY

28

1

2

## SERVICE LIST

*IN RE: Consolidated Employer Management Solutions, a California corporation*
USBC, Central District of California, Case No. 8:07-bk-10992 RK

3

**Office of the United States Trustee**
United States Trustee
411 West Fourth Street, Suite 9041
Santa Ana, CA 92701-8000
Fax: (714) 338-3421
Nancy.godenberg@usdog.gov
Frank.cadigan@usdoj.gov

**Counsel for National Union Fire Insurance**
Sara L. Chenetz, Esq.
DLA Piper US LLP
1999 Avenue of the Stars, Suite 400
Los Angeles, CA 90067-6023
Fax: (310) 595-3300
sara.chenetz@dlapiper.com

4

5

6

7

8

**Counsel for ACE American Ins. Co.**
Kathryn M. S. Catherwood
Duane Morris LLP
101 West Broadway, Suite 900
San Diego, CA 92101
Fax: 619) 744-2201
kmcatherwood@duanemorris.com

**Counsel for Koosharem Corp.**
Evan Borges, Esq.
Irell & Manella, LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Fax (949) 760-5200
eborges@irell.com

9

10

11

12

13

**Office the Internal Revenue Service**
Edwin Herrera
Hans F. Famularo, Esq.
Internal Revenue Service
Office of Chief Counsel – SBSE
24000 Avila Road #4404, Mailstop 8800
Laguna Niguel, CA 92677
Fax: (949) 360-2675
edwin.a.herrera@irscounsel.treas.gov
hans.f.famularo@irscounsel.treas.gov

**Counsel to Real Time Staffing**
Drew E. Pomerance, Esq.
Michael H. Raichelson, Esq.
Roxborough Pomerance & Nye, LLP
5820 Canoga Avenue Suite 250
Woodland Hills, CA 91367
Fax: (818) 992-9991
dep@rpnlaw.com
mhr@rpnlaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**PROOF OF SERVICE**

STATE OF CALIFORNIA                )
                                                    ) ss.
COUNTY OF LOS ANGELES        )

3

4

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 5820 Canoga Avenue, Suite 250, Woodland Hills, California 91367.

5

6

On August 4, 2011, I served the foregoing document described as **PLAINTIFFS' AND COUNTER-DEFENDANTS' NOTICE OF MOTION AND MOTION IN LIMINE NO. 3 TO PRECLUDE EVIDENCE REGARDING ANY CLAIM THAT SELECT OWES FURTHER MONIES AS COLLATERAL AND/OR PRECLUDE RECOVERY OF DAMAGES ON A CLAIM COLLATERAL IS OWED** on the interested parties in this action who are identified on the attached service list, using the following means of service:

7

8

9

10    ☒    **BY PERSONAL SERVICE:** I placed a true copy of the foregoing document in sealed envelopes to be hand delivered to the following persons on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service. The foregoing document was personally served on the following parties:

11

12

13    RICHARD P GERBER                         D. EDWARD HAYS
        Hart King & Coldren LLP                   CYNTHIA S. CONNERS
        200 Sandpointe Dr 4th Fl                   Marshack Hays LLP
        Santa Ana, CA 92707                        5410 Trabuco Road, Suite 130
        **Attorneys for Defendant,**               Irvine, California 92620-5749
        **ROBERT J. ANDERSON, JR.**           **Attorneys for Defendant and Counterclaimant,**
                                                              **KAREN S. NAYLOR, Chapter 7 Trustee**

14

15

16    ☒    **BY EMAIL:** I caused such documents listed above to be transmitted via e-mail to the following persons on whom it is to be served at the email address as last given by that person on any document which he or she filed in this action and served upon this office or otherwise last used to transmit email to this office.

17

18    *Counsel for serving party is not registered with this Court's ECF, which would serve these entities, as such this document is being e-mailed to:*

19

20    ▪Evan C Borges eborges@irell.com; bblythe@irell.com
        ▪Evan C Borges bblythe@irell.com
21    ▪Rebecca J Callahan rcallahan@callahanlaw.biz
        ▪Robert P Goe kmurphy@goeforlaw.com; rgoe@goeforlaw.com; rmforsythe@goeforlaw.com
22    ▪D Edward Hays ehays@marshackhays.com
        ▪Karen S Naylor (TR) acanzone@burd-naylor.com; knaylor@ecf.epiqsystems.com
23    ▪United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

24    *Via Email Pursuant to Written Agreement:*
        ▪Richard Gerber rgerber@hkclaw.com

25

26    ☒    **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on August 4, 2011, at Woodland Hills, California.

27

28

                                         LOURDES CASAS

5