1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  CYNTHIA S. CONNERS, 117460
   cconners@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt Avenue
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Defendant and CounterClaimant,
   KAREN S. NAYLOR, Chapter 7 Trustee
7
   William R. Hart, Esq., Bar No. 71127
8  Richard P. Gerber, Esq., Bar No. 59395
   rgerber@hkclaw.com
9  HART, KING & COLDREN
   A PROFESSIONAL LAW CORPORATION
10 200 Sandpointe, Fourth Floor
   Santa Ana, California 92707
11 Telephone: (714) 432-8700
   Facsimile: (714) 546-7457
12
   Attorneys for Defendant,
13 ROBERT J. ANDERSON, JR.

14              UNITED STATES BANKRUPTCY COURT

15        CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| 16 In re | Case No. 8:07-bk-10992-RK |
| 17 CONSOLIDATED EMPLOYER MANAGEMENT SOLUTIONS, a California corporation, | (Jointly administered with Case Nos.: 8:07-bk-10994 and 8:07-bk-10995) |
| 18 | Chapter 7 |
| 19 Debtor and Debtor-in-Possession. | Adv. No. 8:07-ap-01105-RK |
| 20 | |
| 21 REAL TIME STAFFING, INC., a California corporation, KOOSHAREM CORPORATION, a California corporation, NEW STAFF, INC., a California corporation, KT, INC., a California corporation, PAY SERVICES, INC., a California corporation, PBT, INC. a California corporation, and D. STEPHEN SORENSEN, an individual, | OPPOSITION OF TRUSTEE AND ANDERSON'S OPPOSITION TO PLAINTIFFS' AND COUNTERDEFENDANTS' MOTION IN LIMINE NO. 3 TO PRECLUDE EVIDENCE REGARDING ANY CLAIM THAT SELECT OWES FURTHER MONEYS AS COLLATERAL AND/OR PRECLUDE RECOVERY OF DAMAGES ON A CLAIM |
| 22 | |
| 23 | |
| 24 | |
| 25 Plaintiffs, | |
| 26 vs. | Trial Date<br>Date: August 25, 2011<br>Time: 9:00 a.m.<br>Ctrm: 5D |
| 27 COASTAL EMPLOYERS, INC. a California corporation, ROBERT J. ANDERSON, an | |
| 28 | |

1

OPPOSITION TO MOTION IN LIMINE NO. 3 TO PRECLUDE EVIDENCE

56379v1/1005-001.1

| | |
|---|---|
| 1 | individual, and Does 1 through 100, inclusive, |
| 2 | Defendants. |
| 3 | KAREN S. NAYLOR, Chapter 7 Trustee (In Place of COASTAL EMPLOYERS, INC., a California corporation), |
| 4 | |
| 5 | Counter-Claimant, |
| 6 | vs. |
| 7 | KOOSHAREM CORPORATION, PROFESSIONAL BUSINESS TECHNOLOGIES, INC., aka PBT, INC.; NEW STAFF, INC., K.T., INC., PAY SERVICES CORP., and REAL TIME STAFFING SERVICES, INC., |
| 8 | |
| 9 | |
| 10 | D. STEPHEN SORENSEN, an individual, and ROES 1 through 100, inclusive, |
| 11 | |
| 12 | Counter-Defendants. |

Defendant/Counterclaimant Coastal CA by Trustee KAREN S NAYLOR and Defendant ROBERT J. ANDERSON, JR. jointly oppose Plaintiffs' and Counterdefendants' Motion in Limine No. 3 regarding claims for collateral.

1. <u>PRELIMINARY STATEMENT</u>

Plaintiffs and Counterdefendants (collectively "Select") seek to preclude the Trustee and Anderson (collectively "Coastal") from submitting any evidence or seeking recovery of any monies allegedly owed as collateral on unresolved Workers' Compensation claims.

Select relies on two theories in its effort to preclude this evidence. The first theory is based on the false, unsubstantiated premise that "There is no evidence that Coastal has ever paid or ever intends to pay any monies as collateral to any of the insurance carriers, nor is there any evidence that any collateral is owed at all." The second theory is based on the premise that "since the conditions for requiring collateral have not occurred, no claim for such can be made." It should be noted that this attempted evidentiary preclusion relates only to "evidence or seeking recovery of any monies allegedly owed as collateral *on the unresolved Workers' Compensation claims.*" (emphasis added). This motion does not address Coastal's claims for additional contractual fees related to workers compensation class codes.

Since most of the Workers' Compensation claims have been resolved, closed or substantially paid, the Motion addresses a small percentage of the claims. Besides misstatements and/or misinterpretations of the relevant portions of the three Agreements between Select and Coastal, there is virtually no authority to support Select's Motion other than the Code of California Civil Code §2778 (2) which relates to a claim for indemnity, and is not relevant to the facts in the action. In seeking collateral, the Trustee is not seeking legal or equitable indemnity, but is rather seeking contract damages provided for in the Agreements.

2. <u>THE TRUSTEE IS ENTITLED TO UNPAID COLLATERAL, AND MORE IMPORTANTLY FOR PURPOSES OF THE MOTION, IS ENTITLED TO PRESENT EVIDENCE IN SUPPORT OF HER CLAIM</u>

As Select points out in the Motion, each of the Agreements address the payment of collateral. Select concedes that the collateral in question represents money to fund losses for Workers' Compensation claims. More specifically however, as per the Declaration of Robert J. Anderson, Jr. ("Anderson"), the collateral obligations as between Select and Coastal were created to give Coastal a fund from which to pay its deductible obligation [the first $500,000 per claim to RCA under the 2004 policy, and the first $1,000,000 per claim to AIG under the 2005 and 2006 policies]. Since most of the claims have now been closed, the collateral obligations of Select to Coastal can more accurately be described as deductible reimbursement claims. Coastal agrees any unused collateral should be returned to Select. However, as more particularly stated in the Anderson declaration, there is no unused collateral, since the paid and otherwise known deductible obligations of Select exceed the collateral already paid by Select to Coastal. As stated in the Anderson declaration, Paragraph 11, these funds were passed through to the carrier by Coastal immediately upon receipt from Select.

Select's failure to conduct discovery to determine payment of collateral by Coastal to the carriers is no reason to exclude that evidence at trial.

Since the Motion is totally lacking in any substantive analysis of Select's deductible and/or collateral obligations to Coastal, a reading thereof in a vacuum would not educate the reader as to whether or not any collateral [or unpaid deductible obligation] was in play. The Anderson

declaration demonstrates that the paid collateral to date by Select for each of the three contract years is insufficient to pay the deductible amounts generated by the Select produced payroll and claims under each of the Agreements. Moreover, the Anderson declaration reveals that contrary to the naked and unsubstantiated assertions of Select's motion, substantial amounts of collateral have been paid by Coastal to RCA and AIG. [See Paragraphs 8, 9, & 10 of the Anderson declaration].

The argument that evidence of Select's collateral obligation to Coastal should be precluded on the grounds of nonpayment of collateral by Coastal to the carriers is groundless. In fact, the owner, president, CEO and/or controlling person of Select, Stephen Sorensen, stated in his testimonial declaration [see Paragraphs 7 and 8 ] that he did not know whether the collateral Select paid Coastal was ever paid over to the respective carriers. Merely because Select doesn't know of the payments of collateral doesn't mean the payments were not made, and has no bearing on whether the Trustee can introduce evidence that payments were made. Coastal and Anderson know of the payments, and can provide valid and admissible evidence of such payments. Select claims that the collateral was not paid, but provides no substantiation for his assertion. Contrasting this unsubstantiated denial is the very specific Anderson declaration at paragraphs 8 & 9, in which he emphatically and unequivocally states that Coastal paid $4,699,488.15 in collateral to RCA for the 2004 policy year, and $21,212,000 to AIG for the 2005 and 2006 policy years.

Coastal's obligation to pay its carriers was separate and apart and not contingent on Select's obligation to pay Coastal its deductible amounts for Workers' Compensation claims filed by Select employees under the programs. Nothing in any of the Agreements requires payment of collateral to the carriers by Coastal as a condition precedent for Select paying its collateral obligations to Coastal.

3.  ALL OF CONDITIONS UNDER WHICH SELECT IS REQUIRED TO PAY
    COLLATERAL HAVE BEEN MET

Under the Agreements, collateral was initially to be paid on a percentage of payroll. Each contract had a minimum payroll usage for which Select was required to prepay collateral. Once that minimum usage was exceeded, Select continued to produce payroll without paying their contractually mandated share of their collateral burden for the overage (and other obligations not

germane to this Motion). It is not surprising that when Select exceeded its estimated payroll by 50%, that its claims also exceeded anticipated claims, and additional collateral was required. Coastal paid the additional collateral to the carriers, but Select never made the corresponding payments to Coastal.

It is true that the Agreements all provided for actuarial review. (For example, paragraph 3.c of the 2005 and 2006 Agreements contain a provision for periodic actuarial review to determine if additional collateral is required and/or if there is an excess of collateral to be returned. There is a similar provision in the 2004 Agreement.) None of the parties ever requested actuarial review. In fact, from the Select standpoint there was no detriment because Select had never paid any percentage collateral after exceeding its estimated annual payroll. Therefore, Select received a windfall as the collateral account was always short during the contract years.

Nothing in the Agreements in any way permits or forgives Select of its obligation to pay the collateral portion of the payroll production over the minimum. Moreover, pursuant to paragraph 14 of the Anderson declaration and the Agreements, there is no condition precedent requiring an actuarial review before Select is obligated to pay its percentage share of collateral proportionate to payroll usage. Moreover, the payment of collateral is largely moot, since Select's obligation to pay the deductible amounts associated with the claims has already been fixed as a result of the passage of time and the claims having been paid. See paragraphs 15 through 19 of the Anderson declaration. The deductible obligations for which the collateral funding was merely a tool have now been determined. The shortfall in collateral [deductible] can now be precisely determined on the basis of existing claims that have been paid and closed and the few that remain open without resort to any actuarial prognostication.

4. **COASTAL's OPPOSITION TO AIG's BANKRUPTCY CLAIM FOR ADDITIONAL COLLATERAL HAS NO BEARING ON SELECT'S INDEPENDENT COLLATERAL OBLIGATION TO COASTAL**

The Anderson declaration (para. 22) explains why Coastal objected to AIG's claim for additional collateral. Anderson on behalf of Coastal had paid over $20,000,000 in collateral to AIG at the time he submitted his declaration in 2007. In 2007, Anderson was relying on an actuarial

1  opinion, which the passage of time has revealed was not accurate. The claims settled out at a higher
2  value than was originally anticipated. In any event, as pointed out in paragraph 22 of Anderson's
3  declaration, actual performance of the claims is more accurate in determining exposure retroactively,
4  instead of through actuarial projections, in that historical perspective is more accurate than
5  prospective actuarial analysis. Select's exposure on its claims has been determined and the amount
6  of deductible on its portion of the Coastal business has been substantially fixed. The claim for
7  collateral is at this point really a claim to reimburse Coastal for the collateral/deductible it already
8  paid to the carriers, which was used to pay Select's underfunded deductible obligation.

9  5.    CONCLUSION

10       The court should deny Select's motion to preclude evidence regarding collateral. The
11 word collateral is mentioned 57 times in the Joint Pretrial Order. In the Undisputed Facts section,
12 the parties cite specifically to the sections of the contracts specific to the collateral payment
13 obligations. The obligation to pay additional collateral is an agreed issue before the Court. It is
14 ludicrous for Select to attempt to preclude evidence on collateral in what is essentially an
15 unsupported, improper Motion for Summary Adjudication on the issue of collateral disguised as a
16 Motion in Limine. The motion should be denied.

18 Dated: August 11, 2011          MARSHACK HAYS LLP

20                                 By: /s/ Cynthia S. Conners
                                       D. EDWARD HAYS
21                                     CYNTHIA S. CONNERS
                                       Attorneys for Counter-Claimant,
                                       KAREN S. NAYLOR, Chapter 7 Trustee

23 Dated: August 11, 2011          HART, KING & COLDREN

24                                 By: [signature]
                                       WILLIAM R. HART
25                                     RICHARD P. GERBER
                                       Attorneys for Defendant
26                                     ROBERT J. ANDERSON, JR.

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 870 Roosevelt Avenue, Irvine, CA 92620

A true and correct copy of the foregoing document described as **OPPOSITION OF TRUSTEE AND ANDERSON'S OPPOSITION TO PLAINTIFFS' AND COUNTERDEFENDANTS' MOTION IN LIMINE NO. 3 TO PRECLUDE EVIDENCE REGARDING ANY CLAIM THAT SELECT OWES FURTHER MONEYS AS COLLATERAL AND/OR PRECLUDE RECOVERY OF DAMAGES ON A CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **August 11, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Evan C Borges    eborges@irell.com, bblythe@irell.com
- Evan C Borges    , bblythe@irell.com
- Rebecca J Callahan    rcallahan@callahanlaw.biz
- Cynthia S Conners    cconners@marshackhays.com
- Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
- D Edward Hays    ehays@marshackhays.com
- Karen S Naylor (TR)    acanzone@burd-naylor.com, knaylor@ecf.epiqsystems.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **August 11, 2011**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Via Personal Delivery:
Honorable Robert N. Kwan
United States Bankruptcy Court
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

Via Email Pursuant to Written Agreement:
John W. Hurney    jwh@rpnalaw.com
Drew Pomerance    dep@rpnalaw.com
Richard Gerber    rgerber@hkclaw.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| August 11, 2011 | Chanel Mendoza | */s/ Chanel Mendoza* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                                    **F 9013-3.1.PROOF.SERVICE**
56381v1/1005-001.1